UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID A. JOFFE,<br><br>            Plaintiff,<br><br>v.<br><br>KING & SPALDING LLP,<br><br>            Defendants. | Case No. 17-cv-3392 (VEC) |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

JAVERBAUM WURGAFT HICKS KAHN
WIKSTROM & SININS, P.C.

505 Morris Ave.            589 Eighth Ave.-21st Floor
Springfield, NJ 07081   New York, NY 10018
(973) 379-4200            (212) 596-7656

Attorneys for Plaintiff David A. Joffe

*Of Counsel and On the Brief:*
Andrew M. Moskowitz, Esq.

**A.     K&S's belated "supplemental" evidence in reply does not defeat the ERISA claim**

With its reply brief, K&S produces new evidence explaining the timing of Mr. Joffe's termination.  However, "it is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden."  Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010).  K&S should therefore not have the benefit of the out-of-time Supplemental Tetrick Declaration (Doc. No. 66).  See Aurora Loan Servs. v. Posner, Posner & Assocs., P.C., 513 F. Supp. 2d 18, 20 (S.D.N.Y. 2007) ("[N]ew materials to meet [movant's] burden would inappropriately allow [movant] a second bite at the summary judgment apple.").

Even if considered, the supplemental declaration does not entitle K&S to summary judgment on the ERISA claim.  Mr. Tetrick states that he discharged Mr. Joffe on December 7, 2016 because that "was the earliest date … [he] would otherwise be in New York."  See Supp. Decl. ¶ 10.  This statement confirms that K&S did not give any additional consideration to its initial termination decision made three months prior.  See Supp. Decl. ¶ 4.  Because, for the reasons set forth in Plaintiff's opposition, there is at best an issue of fact as to the credence of K&S's purported reasons for that decision, summary judgment on the ERISA claim must be denied.  See Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1113 (2d Cir. 1988) (holding that "[w]hen the employer's nondiscriminatory reason is shown to be unworthy of belief, and could not therefore have been the real cause, the employer has in substance failed to articulate a valid explanation for discharging an employee and, moreover, has placed its credibility into question ... a plaintiff may prevail at trial if, in addition to establishing *a prima facie* case, he persuades a

reasonable jury that the reason advanced for his discharge … was unworthy of credence..").[1]

Indeed, Mr. Tetrick's supplemental declaration only further calls Defendant's purported reasons into question.  Mr. Tetrick states that, after he decided to discharge Mr. Joffe in September 2016—citing a purported lack of "internal demand" for Plaintiff's work and a purported unwillingness of "partners in his practice group" to "staff him on important matters," see Def.'s Mem. at 6—Mr. Tetrick delayed the termination because a K&S partner in Plaintiff's practice group deemed Mr. Joffe "essential" to defending a deposition scheduled to take place over a month away.  See Supp. Decl. ¶¶ 6-7.  Despite this seemingly obvious evidence of internal demand for Mr. Joffe's work, however, after this deposition defense Mr. Tetrick nevertheless continued to seek Plaintiff's discharge on the "earliest date" possible.

**B.     Defendant has asserted contradictory claims regarding the Red Flags Email**

K&S argues in reply that Mr. Joffe's July 2016 Red Flags Email, see Moskowitz Decl., Ex. 16 at 6, did not, as a matter of law, involve ethics reporting because Plaintiff "made clear what he was requesting[—]money … [this] was Joffe's brief in support of his request for higher compensation." Def.'s Reply Mem. at 7.  Nine days before that reply, however, Defendant wrote to this Court to request that Mr. Joffe's colloquy with Mr. Thornton concerning this email be redacted on the basis of privilege, "since Mr. Joffe was communicating with Mr. Thornton in

---

[1] In addition to Plaintiff's prima facie case, other record evidence also amply permits a reasonable factfinder to determine that the termination date was motivated by a desire to prevent vesting of Mr. Joffe's pension. Mr. Tetrick testified that he determined the precise terms of Mr. Joffe's severance offer ($132,500) over the course of several meetings with HR and in-house counsel both at the time of the original termination decision, see Tetrick Tr. 81:7-82:21, 121:4-124:2 (Moskowitz Decl., Exhibit 7), and again after that decision was delayed, id. 188:14-190:6. A factfinder can reasonably infer that: (i) the amount K&S budgeted for its severance offer ($132,500) necessarily reflected an offsetting $20,000 clawback from Plaintiff's pension, given the timing that K&S was contemplating; and (ii) after Plaintiff's termination was delayed, to avoid being $20,000 "over budget," K&S forced the issue by racing against the clock to discharge Mr. Joffe no later than December 2016.  Such a purpose—which constitutes improper interference with ERISA rights, see 29 U.S.C. § 1140—is perfectly consistent with Mr. Tetrick's professed desire to discharge Plaintiff on the "earliest date [he] would otherwise be in New York." (emphasis added).

2

**Mr. Thornton's capacity as General Counsel**." Def.'s Endorsed Letter (Feb. 6, 2018) (Doc. No. 59) at 1 (emphasis added). These statements cannot be reconciled.

As K&S averred in its moving papers: "Bob Thornton … had no involvement in employment decisions concerning Joffe." Def.'s Mem. at 24 n.13. Mr. Thornton's own testimony is similarly unambiguous: "[A]s to [Plaintiff's] compensation, I don't have any role in that. ***It's not my job***." Thornton Tr. 81:7-9 (Moskowitz Sur-Reply Decl., Exhibit A) (emphasis added); id. at 81:22 ("compensation was not my responsibility…"). Accordingly, if, as it claims in reply, Defendant believed Plaintiff's July 2016 email was a mere request for compensation (notwithstanding, e.g., K&S HR Chief Chris Jackson's testimony that he recognized the correspondence raised "ethical issues"), then Defendant would have no basis to represent—as it did in its letter nine days prior—that Mr. Thornton's communications about that email were in his capacity as General Counsel.[2]

Plaintiff respectfully submits that K&S's contradictory position, taken for the first time in in reply, should be disregarded.

Dated: February 28, 2018

**JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, P.C.**


By: /s/ Andrew M. Moskowitz
      Andrew M. Moskowitz

Attorneys for Plaintiff David A. Joffe

---

[2] In its privilege log, K&S also lists several follow-up emails in the same chain between Mr. Thornton and Mr. Tetrick, written at the time K&S decided to discharge Plaintiff. See Moskowitz Decl., Ex. 5 at 2. For the same reason, if these were follow-up communications to what K&S viewed as a compensation request, K&S could not claim they were in Mr. Thornton's GC capacity. Thus, accepting K&S's newly-raised position that Plaintiff's July 2016 email was only a compensation request would, necessarily, also require re-opening the evidentiary record.