UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID A. JOFFE,<br><br>      Plaintiff,<br><br>v.<br><br><br>KING & SPALDING LLP,<br><br><br><br>      Defendants. | Case No. 17-cv-3392 (VEC) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF
DAVID JOFFE'S MOTION TO VACATE THE
OCTOBER 2, 2018 OPINION AND ORDER ISSUED
BY HON. STEWART D. AARON, U.S.M.J.**

JAVERBAUM WURGAFT HICKS KAHN
WIKSTROM & SININS, P.C.
505 Morris Ave.
Springfield, NJ 07081
(973) 379-4200

589 Eighth Avenue, 21st Floor
New York, NY 10018
(212) 596-7657

*Of Counsel and On the Brief:*
Andrew M. Moskowitz, Esq.

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ..................................................................................................1

**STATEMENT OF FACTS** .........................................................................................................2

I.      Judge Aaron's opinion ........................................................................................................2

A.     Mr. Joffe's inappropriate conduct ......................................................................................2

B.     Hostile emails and threat to retain another law firm .........................................................4

C.     Additional conflicts ............................................................................................................5

1.      Staffing ..............................................................................................................................6
2.      Experts ...............................................................................................................................6
3.      Disagreements regarding settlement and more threats......................................................7

D.     June 26, 2018 and July 6, 2018 email exchanges...............................................................8

**LEGAL ARGUMENT**.................................................................................................................9

I.      Standard of review of Judge Aaron's decision..................................................................9

II.     Judge Aaron's holding was not contrary to law and his factual
       findings were not clearly erroneous .................................................................................10

III.    Judge Aaron did not allocate the burden of proof to Mr. Joffe .......................................13

IV.    Judge Aaron did not "reverse" the roles of the attorney and the client .....................14

**CONCLUSION** .........................................................................................................................15

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                 **Page**

Ashker v. IBM Corp.,
201 A.D.2d 765, 607 N.Y.S.2d 488 (3d Dep't 1994) ...................................................................13

Hunkins v. Lake Placid Vacation Corp.,
120 A.D.2d 199, 508 N.Y.S.2d 335 (3d Dep't 1986) ...........................................................11, 14

Joseph Brenner Assocs. v. Starmaker Entm't, Inc.,
82 F.3d 55 (2d Cir. 1996) ...............................................................................................................12

Khaldei v. Kaspiev,
961 F. Supp. 2d 572 (S.D.N.Y. 2013) .........................................................................................10

Kiernan v. Kiernan,
233 A.D.2d 867, 649 N.Y.S.2d 612 (4th Dep't 1996).............................................................11, 14

Lake v. M.P.C. Trucking Inc.,
279 A.D.2d 813, 718 N.Y.S.2d 903 (3d Dep't 2001) ............................................................11, 14

Matarrese v. Wilson,
202 Misc. 994, 118 N.Y.S.2d 5 (Sup. Ct., Bronx Cty. 1952) ......................................10, 11, 12, 14

Peterson v. Katonah Lewisboro Sch. Dist.,
13 CV 51 (VB), 2014 WL 3891253, 2014 U.S. Dist. LEXIS
112338 (S.D.N.Y. June 27, 2014) .................................................................................................10

Raji v. Societe Generale Ams. Sec. LLC,
15-CV-1144 (AT)(JLC), 2016 U.S. Dist. LEXIS 175919
(S.D.N.Y. Dec. 19, 2016) ...............................................................................................................12

Ramgoolie v. Ramgoolie,
16-CV-3345 (VEC)(SN), 2018 U.S. Dist.
LEXIS 152156, 2018 WL 4266015 (S.D.N.Y. Sept. 6, 2018) .....................................................9

Stair v. Calhoun,
722 F. Supp. 2d 258 (E.D.N.Y. 2010) .........................................................................................13

Tenney v. Berger,
93 N.Y. 524 (1883) .........................................................................................................................10

Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic,
924 F. Supp. 2d 508 (S.D.N.Y. 2013) ...........................................................................................9

**Statutes and Rules**

Federal Rule of Civil Procedure 72 ................................................................................................9

New York Rule of Professional Conduct 1.16 ........................................................................11, 12

28 U.S.C. § 636 ................................................................................................................................9

**PRELIMINARY STATEMENT**

In seeking to set aside Magistrate Judge Aaron's Opinion and Order, Plaintiff David Joffe carries a heavy burden. Specifically, he must demonstrate that Judge Aaron's ruling was clearly erroneous or contrary to law. Mr. Joffe has failed to satisfy either prong of this test.

The law in New York is clear that a lawyer may withdraw from representing a client who fails to cooperate, who challenges his or her attorney's loyalty, integrity or competence, or who otherwise makes the representation unreasonably difficult. The record demonstrates that Mr. Joffe engaged in such conduct and, in so doing, behaved in an inappropriate, abusive manner. On multiple occasions, he personally attacked the attorneys of Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins and accused them of incompetence and unprofessionalism. Although the undersigned raised his objections the following day after this conduct first occurred, Mr. Joffe continued to engage in this behavior. Subsequently, in an effort to extract certain concessions, Mr. Joffe began threatening to retain another law firm.

Mr. Joffe's actions, coupled with a number of disagreements that arose regarding litigation strategy, staffing and the value of his damages, rendered the continued representation of Mr. Joffe unreasonably difficult. On June 6, 2018, the undersigned asked Mr. Joffe "███████████████████████████████████████████████████████████████████████████████████████████. Three weeks later, the law firm notified the Court of its intent to withdraw.

Judge Aaron correctly held that the law firm had good cause to withdraw and was entitled to affix a charging lien. Mr. Joffe has failed to provide the Court with a basis to set aside Judge Aaron's ruling.

1

**STATEMENT OF FACTS**

**I.     Judge Aaron's opinion[1]**

Judge Aaron found that "the record reflects, and Joffe admits, that he directed unprofessional and inappropriate remarks at Moskowitz." Opn. at 3; id. at 6 (referring to "unprofessional conduct by Joffe."). Judge Aaron noted further that, "in the lead-up to the decision by Javerbaum Wurgaft to seek to withdraw as counsel … several hostile emails [were] sent by Joffe to Moskowitz, including threats made by Joffe to himself retain other counsel." Opn. at 3; id. at 6 (referring to "Joffe's hostility and his threats to terminate the attorney-client relationship…"). As set forth infra, the evidence amply support these findings.

**A.     Mr. Joffe's inappropriate conduct**

The record demonstrates that Mr. Joffe engaged in a pattern of abusive behavior for which he has failed to provide any real explanation. With regard to the string of insulting comments he made on February 1, 2018, see 7/13 Moskowitz Decl., Ex. G, he attributes these "uncivil remarks" to "exhausting and stressful circumstances…" 10/16 Joffe Mem. at 5. The following day, on February 2, 2018, Mr. Joffe made additional disparaging remarks for which he has provided no explanation. ███████ ████████████████ █████████████████ ████████████████████████████

---

[1] Mr. Joffe devotes the first portion of his memorandum of law to describing his relationship with Javerbaum Wurgaft *prior* to February 2018. See Joffe 10/16 Mem. at 2-4. It is unclear what relevance this discussion has to the Court's review of Magistrate Judge Aaron's determination. Nevertheless, in response, the undersigned will reiterate that, during this period, Mr. Joffe sought to and did exert an inordinate amount of control over every aspect of this matter. See Moskowitz 8/6 Reply Decl., Ex.'s C-J, Ex. I. Nevertheless, prior to February 2018, the undersigned and Mr. Joffe developed a professional working relationship which involved assisting one another. Id., Ex.'s L-M. Mr. Joffe acknowledges that "Mr. Moskowitz's work in this time period was 'diligent' and 'well above minimum standards.'" Joffe 10/16 Mem. at 4 (quoting Opn. at 5); Opn. at 5 n. 6 (noting that, "at the hearing, Joffe agreed that Javerbaum Wurgaft had provided valuable services to him.").

From February 2 until May 22, 2018, which was the period in which defendant's summary judgment motion was pending, the undersigned and Mr. Joffe "had very little contact."  7/13 Moskowitz Decl. ¶ 9.  Within days of the Court's announcement that it was denying defendant's motion, Mr. Joffe resumed his vituperative behavior.  Specifically, on May 31, 2018, he referred to the undersigned as a ███████████████████████████████████████████████████████████ ██ ██████████████████████████████████ That same day, he stated to the undersigned, ██ ████████████████████████████████ ████████████ Eleven days later, on June 11, he said, ██████████████████████████ ██████████████████████ ███████████████████████████ On June 19, he stated that he ██████████████████████████████████████████████████████ ██████████████ ████████████████████████████████

Mr. Joffe states that, prior to filing its motion to withdraw, Javerbaum Wurgaft did not object to his inappropriate conduct.   Assuming that such an inquiry is even relevant, **the contemporaneous communications between the undersigned and Mr. Joffe reflect that the former raised his objections <u>the following day</u> after this conduct first occurred.**  ██████████████████ ███████ ██████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ As noted <u>supra</u>, from February 2 until May 22, 2018, the undersigned and Mr. Joffe "had very little contact."  7/13 Moskowitz Decl. ¶ 9.  On May 22, 2018, the Court announced that it was denying defendant's summary judgment motion.  <u>Id.</u>  A little over a month later, on June 26, 2018, the undersigned informed Mr. Joffe that Javerbaum Wurgaft no longer wanted to represent him in this matter.  <u>Id.</u> ¶ 21.

Mr. Joffe attempts to make much hay out of a single line in a June 18, 2018 email, in which the undersigned stated, "I do like **the case** [and] would like to continue to work on it."  Joffe Ltr. Attachment 5 (emphasis added).  Notwithstanding Mr. Joffe's assertions to the contrary, this statement does not represent an unambiguous reassurance that no conflicts existed.  Rather, it is entirely consistent with the undersigned's testimony. ▮



**B.    Hostile emails and threat to retain another law firm**

Mr. Joffe describes his reference on June 18, 2018 to discussions with another law firm as simply "get[ting] a second opinion, as he believed was his right." Joffe 10/16 Mem. at 8.  In fact, Mr. Joffe had been threatening since the end of May 2018 to retain another law firm.  He first made this threat in an effort to prevent the involvement of a particular Javerbaum Wurgaft partner in his case. ▮

On June 18, 2018, when the undersigned asked Mr. Joffe if he was retaining the law firm of ▮, he responded, "That's what I wanted to discuss." ▮.  Three days later, on June 21, Mr. Joffe demanded that the undersigned schedule a

4

meeting with ███████████████████████████████████████ ████████
████████████████

███████████████████████████████████████

████████████████████████████████████████████
████████████████████████████

███████████████████████████████████████

██████████
████

███████████████████████████ ███████████████████████████

███████████████████████████████████ █████████

██████████████ █████████████████████████████████████

██████████████████████████████████████████████

The following day, June 22, Mr. Joffe and the undersigned had an exchange regarding his failure to pay his fees and expenses. 7/13 Moskowitz Decl. ¶ 20. During the course of this exchange, he made additional insulting comments, ████████████████████████████████████

████████████████████████ ███████████████████████████

██████████ ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████ Four days later, on June 26, 2018, the undersigned informed Mr. Joffe that Javerbaum Wurgaft no longer wanted to represent him in this matter. 7/13 Moskowitz Decl. ¶ 21.

**C.    Additional conflicts**

Judge Aaron further found that "there were conflicts between Joffe and Moskowitz, as well as differences in strategy…" Id. at 5. Again, the evidence clearly supports this finding. Specifically, there

were a number of disagreements regarding litigation strategy and the value of Mr. Joffe's damages, all of which contributed to an irreconcilable deterioration in the parties' relationship.

**1.      Staffing**

Mr. Joffe acknowledges that a disagreement developed concerning the staffing of the case. 10/16 Joffe Mem. at 6-7.  In fact, he states that characterizing this issue as a disagreement "radically understates the matter…" Id. at 6.  Most of Mr. Joffe's argument on this issue involves assigning blame concerning why this issue arose, as well as mischaracterizing the actual role that the particular Javerbaum Wurgaft partner would have played.  Id.[2]

Mr. Joffe claims that the parties "agree[d] to disagree and respect the other's opinion."  10/16 Joffe Mem. at 7.  In fact, one week after this alleged "agreement," the undersigned informed Mr. Joffe that the law firm no longer wanted to represent him in this matter.  7/13 Moskowitz Decl. ¶ 21.

**2.      Experts**

Again, Mr. Joffe does not dispute that a disagreement arose.  See 10/16 Joffe Mem. at 6; id. at 8 (referring to the "disagreement over experts…").  Rather, he seeks to assign blame to the undersigned. With regard to the substance of the disagreement, Mr. Joffe provides an inaccurate account which is devoid of citation to *any* documents or other evidence.  Id. at 6.[3]  Nevertheless, Mr. Joffe does not

---

[2] At no time was it contemplated that this partner would serve as "lead trial counsel."  Rather, on June 2, 2018, the undersigned proposed the following role for him ▮

[3] ▮

6

dispute that, on June 6, 2018, he sent the undersigned twenty-nine (29) emails. Moskowitz Decl. ¶ 15.



### 3. Disagreements regarding settlement and more threats

Throughout the case, Mr. Joffe refused to accept his attorneys' recommendations regarding settlement. 7/13 Moskowitz Decl. ¶ 10. In addition, at the end of May 2018, in connection with his proposed settlement demand, Mr. Joffe engaged in additional unreasonable behavior and made more

7

threats. Id. ¶ 11. ████████████

████████████

████████████

████████████

████████████

████████████

████████████

████████████ Id.

**D.      June 26, 2018 and July 6, 2018 email exchanges**

As he did in his opposition to this law firm's motion to withdraw, Mr. Joffe has inaccurately described the June 26, 2018 email exchange. The undersigned did not issue an ultimatum. Rather, **Mr. Joffe initiated the exchange** to confirm the parties' discussion earlier that day. Mr. Joffe wrote, ████

████████████

████████████

████████████

████████████

Id. (emphasis added).

Notwithstanding Mr. Joffe's assertions to the contrary, the June 26 email does not "flatly contradict[] the substance of [the law firm's] motion [to withdraw]." Joffe 10/16 Mem. at 6. Rather, it

8

represented another instance in which he made representing him unreasonably difficult and prevented Javerbaum Wurgaft from satisfying its duties.

Mr. Joffe also makes a rather outrageous misrepresentation of an email exchange between him and the undersigned on July 6, 2018. Specifically, he represents to this Court that the undersigned "encouraged [Mr. Joffe] to take the ethics-reporting program off the table and, instead, allow counsel to negotiate a monetary payout…" Joffe 10/16 Mem. at 10 n. 3; id. at 1 (stating that while the motion to withdraw was pending, "Mr. Moskowitz expressed no qualms whatsoever about representing the undersigned—so long as the topic of discussion was settlement, and the ethics program was off the table."). In fact, what occurred was that, while the undersigned's motion to withdraw was pending, defendant's counsel made a written settlement offer. As was his ethical duty, the undersigned forwarded defendant's counsel's letter to Mr. Joffe. In response, **Mr. Joffe asked**, ███████████ ███████████ ███████████ ███████████ **The Court will note that the email exchange contains absolutely no reference to the "ethics-reporting program."**

## LEGAL ARGUMENT

I. **Standard of review of Judge Aaron's decision**

As acknowledged by Mr. Joffe, "review of the Magistrate Judge's Opinion under Federal Rule of Civil Procedure 72(a) is a demanding standard." 10/16 Joffe Mem. at 2. For nondispositive matters, a district judge may only modify or set aside a part of an order "that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); Ramgoolie v. Ramgoolie, 16-CV-3345 (VEC)(SN), 2018 WL 4266015, 2018 U.S. Dist. LEXIS 152156, at *10 (S.D.N.Y. Sept. 6, 2018) (noting that a magistrate judge's ruling on a nondispositive matter "'may be set aside only if the district court determines the ruling to be clearly

9

erroneous or contrary to law.'") (quoting Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013) (citing 28 U.S.C. § 636(b)(1)(A)).

"The 'clearly erroneous or contrary to law' test 'is a highly deferential standard, and the objector thus carries a heavy burden.'" Peterson v. Katonah Lewisboro Sch. Dist., 13 CV 51 (VB), 2014 WL 3891253, 2014 U.S. Dist. LEXIS 112338, at *2 (S.D.N.Y. June 27, 2014) (quoting Khaldei v. Kaspiev, 961 F. Supp. 2d 572, 575 (S.D.N.Y. 2013)). "The 'clearly erroneous' prong of the test focuses on the magistrate judge's factual findings, which are 'clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Id.; Joffe 10/2 Mem. at 12 (acknowledging this standard). In turn, an order is contrary to law if "it fails to apply or misapplies relevant statutes, case law or rules of procedure." Khaldei, 961 F. Supp. 2d at 575 (citations omitted); Joffe 10/2 Mem. at 12 (acknowledging this standard).

## II. Judge Aaron's holding was not contrary to law and his factual findings were not clearly erroneous

Judge Aaron found that "Joffe's hostility and his threats to terminate the attorney-client relationship, taken alone, served as ample good cause for Javerbaum Wurgaft to withdraw." Opn. at 6 (citing Matarrese v. Wilson, 202 Misc. 994, 997, 118 N.Y.S.2d 5, 8 (Sup. Ct., Bronx Cty. 1952)). This statement represents an accurate application of the facts of this case to the applicable legal standard.

Mr. Joffe states that, while a client is entitled to expect that the attorney will act with "professionalism and civility," the attorney is not entitled to expect a similar level of courtesy and respect. Joffe Mem. at 19, 20. In fact, New York courts have long held that "[t]he relations between attorney and counsel, too, are of a delicate and confidential nature. They should have faith in each other, and their relations should be such that they can cordially co-operate." Tenney v. Berger, 93 N.Y. 524, 530 (1883); see also Joffe 10/16 Mem. at 23 (citing Tenney). Accordingly, where a "client bec[o]me[s] angry and abusive" and belittles and insults his attorney, "an attorney may deem himself as effectively

10

discharged by being falsely accused of a breach of his trust as if he were bluntly dismissed without cause." Matarrese, 202 Misc. at 997, 118 N.Y.S.2d at 7 (noting that "[t]he petitioner here did not willfully abandon his retainer.  He was not a willing emigre from its service, but rather a saddened refugee.").

Subsequent to Matarrese, a number of New York appellate courts have held that, where a client directly challenges his or her attorney's loyalty, integrity and/or competence, these actions provide the attorney with good cause to voluntarily withdraw from the case. See Lake v. M.P.C. Trucking Inc., 279 A.D.2d 813, 814, 718 N.Y.S.2d 903, 904 (3d Dep't 2001) (where plaintiffs had questioned counsel's competence, veracity, loyalty and professional integrity, reversing lower court order denying plaintiffs' counsel's motion to withdraw; court found that "[g]ood and sufficient cause" existed due to irreconcilable differences between the attorney and the client with respect to the proper course to be pursued in the litigation); Kiernan v. Kiernan, 233 A.D.2d 867, 868, 649 N.Y.S.2d 612, 613 (4th Dep't 1996) (where party had failed to pay fees and questioned "her attorneys' competence, strategy and ethics," reversing lower court order denying law firm's motion to withdraw as counsel); Hunkins v. Lake Placid Vacation Corp., 120 A.D.2d 199, 201, 508 N.Y.S.2d 335, 337 (3d Dep't 1986) (affirming order granting attorney's motion to withdraw where client challenged attorney's "loyalty and professional integrity … such an accusation … [was] as serious a charge as can be made against a member of the Bar and surely provides the good and sufficient cause necessary for the grant of withdrawal…").

Moreover, even in instances where the client has not levied such accusations, "a lawyer may withdraw from representing a client when ...  the client fails to cooperate in the representation or otherwise renders the representation unreasonably difficult for the lawyer to carry out employment effectively." N.Y. Rule of Professional Conduct 1.16 (c)(7).  For example, where a client insisted on

11

having his son and another attorney participate in the case and stopped "making his previously regular, monthly installment payments," the Second Circuit agreed that the attorney "was no longer able to represent [the client] effectively and her request to withdraw was appropriate." Joseph Brenner Assocs. v. Starmaker Entm't, Inc., 82 F.3d 55, 57 (2d Cir. 1996) (affirming order granting leave to withdraw for cause as counsel for plaintiff and awarding fees and a retaining lien) (citing predecessor to Rule 1.16 (c)(7)). Similarly, courts have found good cause for withdrawal where there were "'fundamental disagreements', "a 'mutual lack of trust'", disagreements "about litigation strategy and the value of [plaintiff's] damages" and a general deterioration in the parties' relationship. Raji v. Societe Generale Ams. Sec. LLC, 15-CV-1144 (AT)(JLC), 2016 U.S. Dist. LEXIS 175919, at *4, *11-12 (S.D.N.Y. Dec. 19, 2016) (noting that plaintiff's opposition to his attorney's motion to withdraw "further attest[ed] to the acrimonious relationship he now ha[d] with" withdrawing counsel and determining the latter "ha[d] withdrawn for good cause, which entitles him to a charging lien."); Lasser v. Nassau Community College, 91 A.D.2d 973, 457 N.Y.S.2d 343 (2d Dep't 1983) (reversing order denying application for leave to withdraw where attorney "was required to seek approval, as to all future actions regarding the case, of another attorney who was representing plaintiff in a closely related matter").

Mr. Joffe acknowledges that Matarrese and its progeny are good law but challenges the Court's factual findings on whether counsel "actually withdrew out of honor or self-respect." Joffe Mem. at 13. In so doing, he has failed to satisfy his heavy burden of demonstrating that Judge Aaron's findings are clearly erroneous. Rather, as set forth in Section I(A)-(C) of the Statement of Facts, the record demonstrates a number of disagreements between Javerbaum Wurgaft and Mr. Joffe regarding litigation strategy and the value of Mr. Joffe's damages, as well as multiple instances in which Mr. Joffe personally attacked the law firm's attorneys, accused them of incompetence and unprofessionalism, and threatened to retain another law firm. All of the above contributed to an ultimately irreversible

deterioration in the parties' relationship.  The record further reflects that, as early as February 2, 2018, the undersigned raised the issue of whether, in light of this conduct, the law firm could continue to represent Mr. Joffe.  In addition, although, on June 6, 2018, the undersigned asked Mr. Joffe █████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████ Three weeks later, the law firm notified the Court of its intent to withdraw.

Mr. Joffe's opposition fails to demonstrate that Judge Aaron's findings were clearly erroneous.  Rather, his opposition represents "a litany of vague criticisms of the attorney's conduct and the manner in which the action was being prosecuted."  Ashker v. IBM Corp., 201 A.D.2d 765, 766, 607 N.Y.S.2d 488, 489 (3d Dep't 1994).  "Rather than supporting a finding of misconduct, plaintiff's papers graphically illustrated the extent to which h[is] threats, accusations and refusal to accept h[is] counsel's advice had rendered it unreasonably difficult to effectively carry out the legal employment."  Id.

**III.    Judge Aaron did not allocate the burden of proof to Mr. Joffe**

Mr. Joffe asserts that Judge Aaron "incorrectly allocate[d] the burden of proof to the client, the non-severing party…"  Joffe 10/16 Mem. at 16.  Mr. Joffe is incorrect.  To the contrary, Judge Aaron specifically stated that "[a]n attorney who himself terminates his representation of a client still is entitled to enforce his charging liens, so long as the attorney does not withdraw without 'good cause.'"  Opn. at 4 (citing Stair v. Calhoun, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010)).  As discussed in detail supra, Judge Aaron properly found that "Javerbaum Wurgaft had good cause to withdraw as counsel for Joffe."  Id. at 6.

**IV.     Judge Aaron did not "reverse" the roles of the attorney and the client**

Mr. Joffe argues that Judge Aaron inappropriately held the former to standards of behavior that are applied to attorneys only.  See Joffe Mem. at 19-25.  He devotes a majority of his argument on this issue to unremarkable (and at best tangentially relevant) legal principles such as that an attorney must treat the client with courtesy and respect, id. at 20-22, and that the client has an absolute right to change counsel.  Id. at 22-25.  He professes to be unaware of precedent which holds that "an attorney can establish good cause [for withdrawal] because of instances where inappropriate remarks were made by the client."  Id. at 21 (emphasis in original).

In fact, as set forth in Section II, supra, there is ample authority for this proposition, particularly where, as here, the client couples these remarks with i) accusations of disloyalty, dishonesty, and/or incompetence on the part of the attorney, see Matarrese, 202 Misc. at 997, 118 N.Y.S.2d at 7; Lake, 279 A.D.2d at 814, 718 N.Y.S.2d at 904; Kiernan, 233 A.D.2d at 867, 649 N.Y.S.2d at 612; Hunkins, 120 A.D.2d at 201, 508 N.Y.S.2d at 337; and/or ii) a failure to adhere to his or her obligations under the retainer agreement.  See Kiernan, supra.

## CONCLUSION

Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C. requests that the Court deny Plaintiff David Joffe's motion to vacate the October 2, 2018 Opinion and Order issued by Hon. Stewart D. Aaron, U.S.M.J., and that it grant such other relief as the Court deems proper.

Dated: October 30, 2018
          **JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, P.C.**

          By: /s/ Andrew M. Moskowitz
             Andrew M. Moskowitz

          505 Morris Ave.
          Springfield, NJ 07081
          (973) 379-4200

          589 Eighth Avenue-21st Floor
          New York, NY 10018
          (212) 596-7656