**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**DAVID A. JOFFE,**

       **Plaintiff,**

**v.**

**KING & SPALDING LLP**,

       **Defendant.**

Case No. 17-cv-3392 (VEC) (SDA)

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO VACATE AND OBJECTIONS TO THE MAGISTRATE JUDGE'S OPINION AND ORDER

---

David A. Joffe, Esq. (pro se)
155 Christopher Columbus Drive
Jersey City, NJ 07302
516-695-7086
davidajoffe@gmail.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………..……………1

ARGUMENT…………………………………………………………………......2

I.    Counsel Fails To Reconcile the Opinion With the **Actual** Reason He Quit……...……2

II.   Counsel Asserts Grounds for Good Cause Not Credited in the Opinion…...…………6

III.  Counsel Ignores the Incorrect Legal Standards Applied in the Opinion……...……...9

CONCLUSION……………………………………………………...…………10

# TABLE OF AUTHORITIES

**Cases**

Bode & Grenier, LLP v. Knight,
808 F.3d 852 (D.C. Cir. 2015) .......................................................................... 6

Karimian v. Time Equities, Inc.,
No. 10 Civ. 3773 (AKH) (JCF), 2011 U.S. Dist. LEXIS 51916 (S.D.N.Y. May 11, 2011) ...... 2, 3

Kovach v. CUNY,
No. 13 Civ. 7198 (LGS), 2015 U.S. Dist. LEXIS 73176 (S.D.N.Y. June 4, 2015)................... 6, 9

Manzo v. Sovereign Motor Cars, Ltd.,
No. 08-CV-1229 (JG)(SMG), 2010 U.S. Dist. LEXIS 46036 (E.D.N.Y. May 11, 2012)............. 8

Matarrese v. Wilson,
118 N.Y.S.2d 5 (Bronx Cnty. 1952) .................................................................. 3

Naguib v. Public Health Solutions,
No. 12 CV 2561 (ENV)(LB), 2014 U.S. Dist. LEXIS 67125 (E.D.N.Y. May 15, 2014) ............. 7

Sellick v. ConEd of New York, Inc.,
No. 15-cv-9082 (RJS), 2017 U.S. Dist. LEXIS 43554 (S.D.N.Y. Mar. 23, 2006)........................ 8

Serricchio v. Wachovia Securities, LLC,
706 F. Supp. 2d 237 (D. Conn. 2010), aff'd, 658 F.3d 169 (2d Cir. 2011) .................................. 8

Suffolk Roadways, Inc. v. Minuse,
287 N.Y.S.2d 965 (Suffolk Cnty. 1968) ............................................................ 4

Tenney v. Berger,
93 N.Y. 524 (1883) ......................................................................................... 10

**Statutes & Rules**

Federal Rule of Evidence 201 ........................................................................... 7

New York Rule of Professional Conduct 1.16........................................................ 5, 8

## PRELIMINARY STATEMENT

Terminated counsel Andrew M. Moskowitz, Esq. devotes his opposition to reciting, ad nauseum, his carefully-curated collection of the undersigned's "unprofessional and inappropriate remarks" identified in the Opinion below as constituting good cause to quit out of impugned honor.  Presenting these remarks in a temporal and contextual vacuum, Mr. Moskowitz ignores the unambiguous record evidence that he actually quit because the undersigned was unwilling to accept a hypothetical settlement offer while counsel was unwilling to risk going to trial.

Mr. Moskowitz's collection of the client's unguarded remarks—which counsel quietly gathered even as he continued to rely on the undersigned to supplement the 330 hours of attorney time in which he successfully prosecuted the case over seventeen months—is also telling for what it does not reflect.  As the Opinion below recognized, counsel's collection does not reflect the presence of irreconcilable differences between attorney and client (and there were none).  Nor does it reflect any allegations by the client about Mr. Moskowitz's "loyalty, integrity or competence"—something the undersigned, emphatically, never once challenged during the representation.  And counsel's communications with the client in the lead-up to withdrawal also, curiously, are entirely devoid of any sense of the kind of pique or umbrage with which Mr. Moskowitz was generously, but erroneously, credited by the Magistrate Judge.

In short, counsel's cherry-picked email excerpts do not reveal any legal basis for an attorney to abruptly abandon the client's case in the middle of litigation and still get paid.   The undersigned respectfully submits that, instead, they reveal the cynical calculations of a lawyer who would go to any length to pressure his own client to settle rather than commit to a jury trial[1] against a well-resourced, unflinching adversary.

---

[1] At the time of counsel's withdrawal motion, a status conference to set the final trial date had been scheduled for August 10, 2018, less than a month away.  (See Doc. No. 74.)

**ARGUMENT**

**I.    Counsel Fails To Reconcile the Opinion With the *Actual* Reason He Quit**

Mr. Moskowitz acknowledges that the Opinion below failed to consider, and now asks

this Court to also ignore, the timeline and context of the attorney-client relationship.[2]  Instead,

counsel repeatedly points the Court to his curated selection of inflammatory excerpts from the

undersigned's emails.  The blinkered approach counsel suggests, however, is plainly at odds with

the applicable legal standard, which requires that the attorney-client relationship be considered in

its entirety.  See, e.g., Karimian v. Time Equities, Inc., No. 10 Civ. 3773 (AKH) (JCF), 2011

U.S. Dist. LEXIS 51916, at *13-14 (S.D.N.Y. May 11, 2011).  In its entirety, the record

shows—and counsel does not dispute—that Mr. Moskowitz willingly handed the laboring oar to

the undersigned and relied on the undersigned's work as a junior colleague for nearly a year

before any alleged deterioration in the attorney-client relationship began, see Mot. to Vacate 2-3;

that Mr. Moskowitz's reliance on the undersigned's work did not diminish notwithstanding any

"inappropriate and unprofessional" remarks directed at counsel;[3] and that this arrangement

permitted counsel to prosecute the case through a successful defense of summary judgment in a

mere 330 hours of attorney time over seventeen months.  See id. at 3-4.  This background of a

---

[2] Mr. Moskowitz acknowledges that extensive relevant evidence prior to February 2018, including materials
submitted by counsel himself, played no role in the Magistrate Judge's findings.  See JW Opp'n at 2 n.1.  As counsel
also notes, however, on review this Court considers the findings below "on the entire evidence."  Id. at 10 (emphasis
added) (citations omitted).

[3] Mr. Moskowitz's opposition deliberately blurs the sequence of events, asserting several times that he and the
undersigned had "very little contact … after this [unprofessional] conduct first occurred" on February 1, 2018.  See
JW Opp'n at 3.  As the undersigned testified before the Magistrate Judge, however, and as counsel did not dispute,
Mr. Moskowitz and the undersigned in fact resumed their active close work together *less than two weeks later*,
"without any bickering, any arguments.  So we were clearly just demonstrably able to put past us the problems or
the argument that we had."  Mot. to Vacate, Ex. A ("Transcript") at 23:9-11.  Indeed, the record shows that Mr.
Moskowitz continued to avail himself of the undersigned's assistance in a junior-colleague capacity through the end
of the representation. ███████

███████████████████

more-than-yearlong "successful collaboration," during which counsel unceasingly "relied on [the client] … [for] tasks properly performed by an attorney"—even as he quietly collected uncivil remarks used as ammunition later—strongly militates against a finding of good cause on the basis of these cherry-picked remarks.  See Karimian, 2011 U.S. Dist. LEXIS 51916, at *13.

Moreover, while the sole legal basis for good cause cited in the Opinion was offense to "[any] honorable member of the Bar," Op. at 6 (quoting Matarrese v. Wilson, 118 N.Y.S.2d 5, 8 (Bronx Cnty. 1952)), Mr. Moskowitz's brief in support of the Opinion does not address why such basis was never mentioned by counsel at the time of withdrawal.  Instead, counsel reaches back nearly **_four months prior_** to his withdrawal to find a single, meager source of support for the proposition that he quit due to impugned honor, citing an email he sent on February 2, 2018, on the morning after the summary-judgment opposition was filed, see Mot. to Vacate at 4-5, in which he stated to the undersigned that "[w]e need to have a meeting to discuss whether I can continue to represent you," JW Opp'n at 3.  Even assuming this email reflects counsel's then-umbrage at the undersigned's remarks, cf. Matarrese, 118 N.Y.S.2d at 7 ("I do not care to further act as your attorney … **_in view of [your] loss of respect and confidence[.]_**") (emphasis added), counsel's own actions dispel any connection between his February 2, 2018 email and his withdrawal **_four months later_**.  When counsel and the undersigned conferred promptly after his email was sent, as the undersigned testified, the undersigned "unequivocally apologized for his remarks," and Mr. Moskowitz "unequivocally accepted the client's apology."  Mot. to Vacate at 5.  And, as set forth supra, see n.3, counsel's repeated claim that he and the undersigned had "very little contact" for months thereafter is false; attorney and client in fact resumed their substantial collaborative work together **_less than two weeks later_** on the summary-judgment sur-reply, and did so without further bickering or arguments.  As the undersigned stated before the

3

Magistrate Judge, if Mr. Moskowitz felt that he should have withdrawn on the morning after the

summary-judgment opposition was filed, "he should have told [the undersigned] then."  Tr. at

22:2-4.  Instead, counsel accepted the undersigned's apology and never raised the issue again.

"[B]y not acting swiftly … [counsel] has waived any objection that the alleged [remarks] were

just cause[.]"  <u>Suffolk Roadways, Inc. v. Minuse</u>, 287 N.Y.S.2d 965, 968 (Suffolk Cnty. 1968).

 Having worked closely with the undersigned in the period following the summary-

judgment opposition submitted February 1, 2018, counsel also does not address in his opposition

why, in the lead-up to withdrawal, far from "rais[ing] his objections" to continued representation,

JW Opp'n at 3, counsel reassured the client of the exact opposite, stating: "I would like to

continue to work on [the case]."  Counsel asserts that this statement to the client, made one week

before he sought to withdraw, was not "unambiguous reassurance," but rather was "entirely

consistent" with Mr. Moskowitz's testimony that he and the undersigned ████████████

████████████████   JW Opp'n at 4.  It is, in the first place, unfathomable that Mr.

Moskowitz expected the undersigned to have guessed that his statement "I would like to

continue" in fact meant "I would like to continue [… but just can't]."  But, even assuming this

statement conveyed only "[]ambiguous reassurance," Mr. Moskowitz's follow-up email the next

day was categorical and clear: "***[I]t is in your interest to stay with me because I will get you the***

***best result.***"  Mot. to Withdraw, Ex. O.  This latter statement, which counsel ignores in his

opposition, is impossible to reconcile with his decision to seek withdrawal one week later on the

purported basis of high dudgeon and impugned honor.  If Mr. Moskowitz truly felt at the time

that there was an "irreversible deterioration in the parties' relationship," JW Opp'n at 12-13, then

he could not in good faith have represented to the client that it was in the client's "interest to

stay," with the further assurance that current counsel would achieve "the best result."  Simply

4

put, either Mr. Moskowitz misled the client then, or he misleads the Court now.

Finally, counsel does not even attempt to explain his own written ultimatum to the client on the eve of withdrawal, which unequivocally conditioned continued representation on the client's settlement posture,[4] which made no mention whatsoever of any other issues affecting the attorney-client relationship, and which (as Mr. Moskowitz does not deny) counsel concealed from the Court. Instead, Mr. Moskowitz argues against his own words, insisting that he "did not issue an ultimatum" after all. JW Opp'n at 8.[5] But counsel's email is susceptible to no other interpretation: after describing his disagreement with the undersigned over settlement posture (*and only settlement posture*)—including the client's insistence on a "requirement that K&S adopt an ethics program"[6]—counsel stated: "*Unless that [i.e., the client's settlement posture] changes, you will need to find new counsel.*" Id. (quoting Pl.'s Opp'n, Attach. 1) (emphasis

---

[4] The New York Rules of Professional Conduct permit withdrawal due to "fundamental disagreement" over settlement "only when no reasonable person in the client's position, having regard for the hazards of litigation, would have declined the settlement" on offer. See N.Y. R. of Prof'l Conduct 1.16, cmt. 7A. Since, as is undisputed, there was no settlement offer for the client to decline at the time Mr. Moskowitz sought to withdraw, this provision is inapplicable here.

[5] As counsel would have it, his email did not set forth an ultimatum because it simply "confirm[ed] the parties' discussion earlier that day," i.e., June 26, 2018, or the day before withdrawal. See JW Opp'n at 8. As such, counsel also confirms that his other assertion to the Court about the parties' meeting on June 26—that "[he] informed Mr. Joffe that [he] *no longer wanted to represent him*," see id. at 3 (emphasis added)—is false. In fact, counsel told the undersigned at their meeting on the day before withdrawal the same thing that he confirmed in his email later that same day—that he did want to continue to represent the client, provided that the client's settlement posture changed. In any case, whether counsel's ultimatum was initially issued by email, or instead issued initially at an in-person meeting and merely confirmed by email, would seem to be a distinction without a difference.

[6] Mr. Moskowitz finds "rather outrageous" the contention that, while his withdrawal was pending, counsel wanted the client "to take the ethics-reporting program off the table and, instead, allow counsel to negotiate a monetary payout." JW Opp'n at 9 (quoting Mot. to Vacate at 10 n.3). But counsel does not dispute that, far beyond issuing a grudging opinion on the value of the client's case, he did in fact express a positive willingness to negotiate a monetary payout on behalf of the client while his withdrawal motion was pending, despite allegedly having already concluded that further representation was "impossible." If further representation was truly "impossible," outgoing counsel's opinion on the value of the case would naturally have been accompanied by a note encouraging the client to obtain such value with the aid of new counsel; it would not have been followed with an expression of counsel's willingness to negotiate for such a settlement. Needless to say, counsel's willingness could only have extended to negotiating a settlement that conformed with his ultimatum: as Mr. Moskowitz notes, his recommendation made "absolutely no reference to the 'ethics-reporting program,'" id. (emphasis in original), that he had required the client to disavow as a condition of continued representation.

added).  Under any commonly-understood meaning of the term, that is an ultimatum.  See, e.g., Bode & Grenier, LLP v. Knight, 808 F.3d 852, 856 (D.C. Cir. 2015) ("[Counsel] issued an ultimatum: unless [client] agreed to pay overdue legal fees … the firm would immediately withdraw. … [Client] capitulated.") (emphasis added).[7]  Further confirming the categorical, take-it-or-leave it nature of counsel's ultimatum, when the client did not immediately capitulate with respect to settlement posture, counsel sought to withdraw the very next day.

## II.   Counsel Asserts Grounds for Good Cause Not Credited in the Opinion

Unable to accord the Opinion's finding that he felt honor-bound to quit with the contemporaneous record evidence that he withdrew because the client failed to relent to a settlement ultimatum that he concealed from the Court, Mr. Moskowitz attempts in opposition to resurrect other bases for withdrawal that were not credited in the Opinion, that are in fact flatly inconsistent with the Opinion, and that, again, are directly contradicted by the record evidence.

Thus, counsel claims, as he did in his initial motion, that his withdrawal was prompted by irreconcilable "conflicts" and "differences" with the undersigned.  See JW Opp'n at 5-6 (quoting Op. at 5 (quoting Kovach v. CUNY, No. 13 Civ. 7198 (LGS), 2015 U.S. Dist. LEXIS 73176, at *18 (S.D.N.Y. June 4, 2015))).  But, as set forth in the undersigned's motion, the Opinion actually found the opposite: that the "conflicts" and "differences" here were not irreconcilable such as to amount to good cause.  Indeed, counsel does not dispute that the specific disagreements at issue—which concerned counsel's abrupt reversals of course on staffing- and expert-related matters that had already been fully agreed upon months prior—were escalated

---

[7] Because, unlike in Bode & Grenier, Mr. Moskowitz's written ultimatum also made no mention of any purportedly unpaid legal fees—or, here, de minimis contingency advances—the client's "capitulat[ion]" in the form of full payment (of an unbilled, then-unknown-to-him sum) would not have prevented counsel's withdrawal.  See Mot. to Vacate at 25 n.10; Pl.'s Sur-Reply at 2-3.  Counsel's opposition does not argue otherwise.

6

internally within Mr. Moskowitz's firm, and, thereafter, resolved.[8]  As the Opinion found, ***none***

of these purportedly "irreconcilable" conflicts detracted in any way from the "diligent work by

[counsel] on this case, including in defeating King & Spalding's summary judgment motion,

which work was well above minimum standards."  Op. at 5.  Counsel's claim of good cause

based on irreconcilable differences was considered and rejected in the Opinion below, and, as the

prevailing party, counsel has no basis to urge this Court to revisit that finding.

Counsel also re-raises the foundationless claims that he had good cause to withdraw

because the undersigned "fail[ed] to cooperate" with counsel and "challenge[d] his … attorney's

loyalty, integrity or competence."  JW Opp'n at 1, 11.  With respect to good cause for failure to

cooperate, New York courts have cited to this ground only where, quite unlike here, the client

made representation impossible by outright ceasing all communications.  E.g., Naguib v. Pub.

Health Solutions, No. 12 CV 2561 (ENV)(LB), 2014 U.S. Dist. LEXIS 67125, at *1 (E.D.N.Y.

May 15, 2014) (client refused to "communicate with counsel … [and], against her counsel's

---

[8] Mr. Moskowitz denies that his sudden "disagreement" with the client over ███████████ was a manufactured rehash of an issue already "determined as of November 2017," arguing that, many months later, he and the undersigned were "still discussing this issue."  JW Opp'n at 6 n.3.  But, as this Court is aware, at the November 3, 2017 pre-trial conference, Mr. Moskowitz took the position that expert discovery should commence immediately, rather than being delayed until after dispositive-motion practice.  (While counsel claims the undersigned's account of this is "devoid of citation," this Court is entitled to take judicial notice of the content of its own public hearings.  See Fed. R. Evid. 201(b).)  It is simply inconceivable that counsel would have urged conducting expert discovery between November 3, 2017 and the then-deadline of December 31, 2017 if, as he claims now, fundamental issues concerning ███████████ had still been up in the air.  In truth, counsel did not commit that particular act of foolhardiness—he did not attempt to commence expert discovery in November 2017 without having a well-settled ██████████ in hand at that time.

With respect to the disagreement over staffing, Mr. Moskowitz again does not contest that the issue concerned the client's objection to a single attorney from Mr. Moskowitz's firm ██████████████████████ ██████████████████████████████████████.  The undersigned did not object to any other attorney at the firm taking this role, and, in fact, welcomed the involvement of every other attorney Mr. Moskowitz suggested.  Arguing the precise title of this role, see JW Opp'n at 6 n.2, would seem to miss the point.

In his preliminary statement, counsel also makes the ipse dixit claim that the parties disagreed over "the value of [the undersigned's] damages" as well as "certain [unidentified] concessions" that the undersigned sought to "extract."  JW Opp'n at 1.  Nowhere in his papers, however, does Mr. Moskowitz actually identify what these purported disagreements were, much less explain why they were irreconcilable.

advice, failed to appear for her deposition").  Here, to the contrary, there is no dispute that the client was responsive and involved.  <u>See</u> JW Opp'n at 2 n.1.  And, with respect to counsel's claim that the client "challenged" the attorney, the evidence shows that **the undersigned _never once_ "directly challenged [Mr. Moskowitz's] loyalty, integrity, and/or competence."**[9]  In fact, as late as three days prior to counsel's withdrawal motion (which the undersigned saw only after it was filed), the undersigned stated to Mr. Moskowitz that the latter "remain[s] my top preference and counsel of choice going forward."  <u>See</u> JW Reply Br. at 5.

Finally, Mr. Moskowitz claims, unblushingly, that the undersigned "render[ed] the representation unreasonably difficult for the lawyer to carry out employment effectively."  JW Opp'n at 11 (quoting N.Y. R. of Prof'l Conduct 1.16(c)(7)).  But the course of the litigation attests otherwise.  As the Opinion found, Mr. Moskowitz performed "diligent" work "well above minimum standards," "including in defeating King & Spalding's summary judgment motion," Op. at 5, as well as in submitting pleadings, taking and defending ten depositions in two states, completing extensive document discovery, and preparing for and participating in numerous conferences with the Court and the opposing side.  Yet, with the client's involvement, Mr. Moskowitz was able to diligently and efficaciously perform all of this work—while recording an **_extraordinarily efficient 330 hours of attorney time over seventeen months_**.  <u>Cf.</u>, <u>e.g.</u>, <u>Serricchio v. Wachovia Secs., LLC</u>, 706 F. Supp. 2d 237, 258 (D. Conn. 2010), <u>aff'd</u>, 658 F.3d 169 (2d Cir. 2011) (294.25 hours of attorney time opposing summary judgment was reasonable); <u>Manzo v. Sovereign Motor Cars, Ltd.</u>, No. 08-CV-1229 (JG)(SMG), 2010 U.S. Dist. LEXIS 46036, at *33 (E.D.N.Y. May 11, 2012) (in Title VII case, crediting time spent "opposing

---

[9] The undersigned's statement to Mr. Moskowitz about a <u>different</u> attorney, <u>see</u> JW Opp'n at 1, is irrelevant to the good-cause inquiry.  "As the Second Circuit and other courts applying New York law have made clear, a charging lien is for the benefit of [the] 'attorney of record' only."  <u>Sellick v. ConEd of N.Y., Inc.</u>, No. 15-cv-9082 (RJS), 2017 U.S. Dist. LEXIS 43554, at *6 (S.D.N.Y. Mar. 23, 2006) (citations omitted).

defendants' motion for summary judgment (144 hours); preparing for [supervisor's] deposition (31 hours); preparing for [employer's vice president's] deposition (33.5 hours)"). Clearly, counsel's job here was made unusually easy, not unreasonably hard.

## III.   Counsel Ignores the Incorrect Legal Standards Applied in the Opinion

As the undersigned set forth in his motion, the Opinion below applies the incorrect legal standards by misallocating the burden of proving good cause to the non-severing party and reversing the benefits and burdens of the attorney-client relationship. See Mot. to Vacate at 1-2, 16-25. Beyond the conclusory assertion that "Mr. Joffe is incorrect," JW Opp'n at 13, however, counsel's brief does not substantively address either legal standard.

With respect to the burden of proof, counsel ignores the block quote in the Opinion (in the section captioned "Legal Standards") from Kovach, 2015 U.S. Dist. LEXIS 73176, at *18, quoted in Op. at 4 (emphasis added), which sets forth the test for a "***discharge for [good] cause***" of the attorney by the client, under which the client, to avoid a charging lien when firing his lawyer, must "demonstrat[e]" that "conflicts" and "differences" in the attorney-client relationship reflect "a significant breach of legal duty" by the lawyer. On the following page (in the section captioned "Application"), the Opinion plainly misapplies this very test to find "***good cause to withdraw***" by the lawyer when he quits of his own accord. See Op. at 5 (emphasis added). The Opinion's finding that Mr. Moskowitz had good cause to withdraw based on a test that does not allocate to counsel the burden of proving good cause was clearly in error.

Mr. Moskowitz also effectively concedes that the Opinion creates new law by binding the client to the attorney's standards of conduct. As counsel notes, "inappropriate remarks" by the client do not amount to good cause unless "couple[d] with accusations of disloyalty, dishonestly, and/or incompetence on the part of the attorney." JW Opp'n at 14. As set forth above, **no such**

9

**accusations were ever made by the undersigned against Mr. Moskowitz.**  Moreover,

counsel's opposition itself appears to confuse the attorney-client relationship in this case,

interchangeably treating the undersigned as both.  Most egregiously, Mr. Moskowitz cites to

Tenney v. Berger, 93 N.Y. 524, 530 (1883), which states: "**[R]elations between attorney and**

**_counsel_**, too, are of a delicate and confidential nature.  They should have faith in each other ...

[and] cordially cooperate."  See JW Opp'n at 10 (emphasis added); see also id. at 11 (citing cases

where client hired "another attorney [to] participate in the case").  But that is the point.  The

relation here was not between attorney and co-counsel, it was between attorney and client.  As

set forth in the undersigned's motion, while Tenney does in fact encourage cordial and

cooperative relations between attorney and co-counsel (for the ultimate benefit of the client),

such relations here were never in the works.  As counsel saw it at the time—and as the Opinion

later, erroneously, made the law of the case—any nod by the client to a "smooth[] transition to

new counsel" or to "cordial[] cooperat[ion]" between Mr. Moskowitz and potential co-counsel

was an improper "threat" permitting the attorney to preemptively abandon the representation,

leave the client with no counsel at all, and still get paid.

## CONCLUSION

        For the reasons set forth herein and in the undersigned's moving brief, the Opinion and

Order below should be vacated and terminated counsel's motion to affix a charging lien should

be denied by this Court.


Dated: November 6, 2018                    By:     _/s/ David A. Joffe_
                                                   David A. Joffe, Esq. (pro se)
                                                   155 Christopher Columbus Drive
                                                   Jersey City, NJ 07302
                                                   516-695-7086
                                                   davidajoffe@gmail.com