```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
DAVID A. JOFFE,                                               :
                                                              :
                              Plaintiff,                      :
                                                              :
              -against-                                       :
                                                              :
                                                              :
KING & SPALDING LLP,                                          :
                                                              :
                              Defendant.                      :
------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 09/25/2019

17-CV-3392 (VEC)

<u>OPINION AND ORDER</u>

VALERIE CAPRONI, United States District Judge:

Plaintiff David Joffe and his former counsel, Javerbaum Wurgaft Hicks Kahn Wilkstrom & Sinins (JW), dispute whether the latter is entitled to a share of any recovery that may eventually be awarded to Joffe in his underlying employment dispute with Defendant King & Spalding LLP. After finding that JW had good cause to terminate the attorney-client relationship, Magistrate Judge Stewart Aaron granted JW's motion to affix a charging lien. Joffe objects to the decision, claiming that Judge Aaron misplaced the burden of proof and erred in finding that JW withdrew for good cause. Because Joffe's objections rely on a misreading of both Judge Aaron's opinion and the record, his motion to vacate is DENIED.

**I.     Background[1]**

Sometime after being terminated by King & Spalding in December 2016, Joffe retained JW[2] to initiate this case against King & Spalding, alleging wrongful termination under ERISA

---

[1] Out of concern for the confidentiality of Joffe's attorney-client relationship, the Court will avoid, where possible, disclosing aspects of the relationship that are not already in the public record. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). The Court, however, notes that Joffe's selective disclosures of and references to his conversations with JW in his public filings have lessened his interest in confidentiality.

[2] The Court uses JW interchangeably with Andrew Moskowitz, who was Joffe's primary attorney and point of contact during Joffe's engagement with JW.

and breach of contract under state common law. Dkt. 1. By late-2017, their relationship had begun to fray over non-payment of expenses. *See* Moskowitz Decl. (Dkt. 80) at 2.

By February 2018, the honeymoon phase was over. Joffe began to send personally disparaging texts and emails to JW, accusing the latter (both Moskowitz and his firm) of being inadequate. Moskowitz Decl. (Dkt. 80), Exs. G, H. In response, JW expressed doubt about the future of the attorney-client relationship. Moskowitz Decl. (Dkt. 80), Ex. H. JW also confronted Joffe about overdue payments and unnecessary expenses, at which point Joffe himself suggested the possibility of termination. Moskowitz Decl. (Dkt. 80), Ex. F. Joffe concedes that his remarks were "uncivil" but contends that he had apologized contemporaneously, his apology was accepted, and he and JW continued to work amicably on unrelated matters while the motion for summary judgment in this case was pending. Joffe Br. (Dkt. 125) at 5.

In May 2018, after litigation resumed following this Court's denial of Defendant's motion for summary judgment, any hatchet that Joffe and JW may have buried immediately resurfaced. *See* Joffe Br. (Dkt. 125) at 5 (admitting to series of disagreements with JW). During the weeks after this Court's decision on the summary judgment motion, Joffe repeatedly issued ultimatums and threatened to leave JW for another firm, questioning JW's competence and reliability. *E.g.*, Moskowitz Decl. (Dkt. 80), Exs. J, L, M, N, Q. Joffe also resumed lobbing insults at JW that were often demeaning and sometimes profane. Moskowitz Decl. (Dkt. 80), Exs. J, O, P.

As late as June 21, 2018, JW appeared open to salvaging the strained relationship and keeping Joffe as a client, explaining to Joffe that it was in his best interest to stay with JW. *See* Joffe Br. at 8 (quoting Moskowitz Decl. (Dkt. 80), Ex. O); Moskowitz Decl. (Dkt. 80), Ex. R. On June 22, however, Joffe again threatened to replace JW with another firm. Moskowitz Decl. (Dkt. 80), Ex. T. In doing so, Joffe again questioned JW's performance and commitment. *Id.*

Joffe's obsessive demand for constant and immediate attention apparently opened up old wounds, as JW responded by pointing out Joffe's lapsed payments. *Id.* Joffe responded by emphasizing that he had other options besides JW. *Id.*

On June 27, 2018, JW informed the Court that it intended to withdraw as Joffe's counsel. Dkt. 75. This Court granted the motion to withdraw, finding "satisfactory reasons" for JW to do so, and referred JW's motion to affix a charging lien to Magistrate Judge Aaron. Dkt. 90. The Magistrate Judge held an evidentiary hearing and granted JW's motion. *See Joffe v. King & Spalding LLP*, 337 F. Supp. 3d 366, 367–68 (S.D.N.Y. 2018). Because JW provided competent representation in litigating the case past summary judgment and because the firm suffered significant verbal abuse from Joffe, who had behaved inappropriately and made numerous threats to terminate JW, Judge Aaron decided that JW had good cause to withdraw and is entitled to a charging lien. *Id.* at 369–70.

Joffe timely objected to Judge Aaron's decision.[3]

## II. Discussion

### A. Standard of Review

When a party timely objects to a magistrate judge's order on a non-dispositive matter, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). As Joffe himself acknowledges, *see* Joffe Br. (Dkt. 125) at 5, this Court is limited to a

---

[3] On October 16, 2018, Joffe filed unredacted versions of his briefing in error, which the Court struck from the record to preserve Joffe's interest in confidentiality. Redacted versions were later re-filed as docket entries 123 to 127.

"deferential standard" of review. *See NIKE, Inc. v. Wu*, 349 F. Supp. 3d 346, 352 (S.D.N.Y. 2018).

Indeed, "[t]o be clearly erroneous, a decision must strike [the reviewing court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *In re Papio Keno Club, Inc.*, 262 F.3d 725, 729 (8th Cir. 2001) (citing *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)). A finding of fact, including a credibility determination, may be overturned for clear error if it is "against the clear weight of the evidence or the [reviewing] court otherwise reaches a definite and firm conviction that a mistake has been made." *See Wu Lin v. Lynch*, 813 F.3d 122, 128 (2d Cir. 2016) (internal citation and quotation marks omitted); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575–76 (1985) ("But when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."). "An order is 'contrary to law' when it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *NIKE*, 349 F. Supp. 3d at 353 (quoting *Thompson v. Keane*, No. 95-CV-2442, 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996)).

### B. Joffe's Objections

Joffe argues that Judge Aaron misapplied the law by shifting JW's burden to prove good cause. Second, according to Joffe, Judge Aaron imposed on Joffe a standard of conduct only applicable to an attorney, not a client, and Joffe's behavior as a client was not so extreme as to create good cause for JW to withdraw. And finally, Joffe claims that Judge Aaron's decision failed to consider JW's real reason for withdrawing as counsel, which was, in Joffe's view, disagreement over litigation strategy. The Court finds no merit to any of Joffe's arguments.

*1. Burden-Shifting*

As Judge Aaron articulated in his decision, under New York law, an attorney may be entitled to a lien on any monetary recovery obtained by a former client in any case in which the attorney has appeared and rendered legal services. *Joffe*, 337 F. Supp. 3d at 368 (citing N.Y. Judiciary Law § 475); *Stair v. Calhoun*, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010) ("Under New York law, an attorney who is discharged is statutorily entitled to a charging lien on any monetary recoveries obtained by the former client in the proceedings in which the attorney had rendered legal services."). Such a lien may attach if the client discharges the attorney without just cause or if the attorney terminates the client with just cause. *Id.* at 369. The burden of proof falls on the party terminating the relationship. *See Allen v. Rivera*, 125 A.D.2d 278, 280 (2d Dep't 1986) ("[T]he withdrawing attorney must show such a condition as clearly justifies his withdrawal." (citation omitted)); *see also Casper v. Lew Lieberbaum & Co.*, No. 97-CV-3016, 1999 WL 335334, at *6 (S.D.N.Y. May 26, 1999) ("The burden rests with plaintiffs to demonstrate that they had cause to terminate the attorney-client relationship."). Thus, to be entitled to an attorney's lien on Joffe's causes of action, JW had the burden to show that it had just cause to withdraw as counsel. *See id.* Judge Aaron's decision correctly applied this standard, and Joffe's objection to the contrary is baseless.

Joffe's objection rests on a misreading of Judge Aaron's opinion. Specifically, Joffe is apoplectic over Judge Aaron's citation to a case that involved the termination of an attorney by a client who failed to show just cause. *See* Joffe Br. (Dkt. 125) at 17. The relevant portion of the opinion, however, was merely surveying the various ways in which an attorney-client relationship can be terminated and the standard that would apply in each scenario. *See Joffe*, 337 F. Supp. 3d at 369 (citing *Kovach v. City Univ. of New York*, No. 13-CV-7198, 2015 WL 3540798, at *6 (S.D.N.Y. June 4, 2015)). In other words, Judge Aaron never purported to apply

5

*Kovach* directly to the facts of this case. Although Joffe claims that Judge Aaron's decision was "baffling[]," what is actually baffling is Joffe's pearl-clutching. Immediately following the citation to *Kovach* is a citation to a case in which the attorney withdrew from representation and had to demonstrate good cause to assert a charging lien. *See Joffe*, 337 F. Supp. 3d at 369 (citing *Stair*, 722 F. Supp. 2d at 267).

Joffe also takes issue with Judge Aaron's passing statement that none of JW's actions constituted a significant breach of legal duty, a consideration that Joffe claims is irrelevant and is evidence of a misallocated burden. Joffe Br. (Dkt. 125) at 17. As indicated by the associated footnote in Judge Aaron's decision, that statement appeared to be aimed at refuting Joffe's suggestion of wrongdoing by JW. *See Joffe*, 337 F. Supp. 3d at 369 n.5 ("In his response, Joffe suggests that Javerbaum Wurgaft failed to act properly in publicly filing certain information about him, rather than redacting such information. Such information does not appear to the Court to be of a privileged nature. In any event, any failures by Javerbaum Wurgaft in its redactions were *de minimis*."). Because charging liens are a form of equitable relief rooted in fairness, any misconduct or incompetence on the part of the attorney that has significantly harmed the client's interests or reduced the client's ability to win a favorable award may be relevant to the overall analysis. *See Sutton v. New York City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006). Again, the Court sees no indication of improper burden-shifting.

Critically, Judge Aaron's opinion definitively concluded that "Javerbaum Wurgaft had good cause to withdraw as counsel for Joffe." *See Joffe*, 337 F. Supp. 3d at 369–70. Had Judge Aaron applied the incorrect standard, his opinion would have concluded that Joffe failed to prove that JW withdrew without good cause. In sum, this Court finds Joffe's objection on burden-shifting baseless.

*2. Good Cause*

Nor did Judge Aaron err in finding that JW had good cause to withdraw. Specifically, Joffe claims that he, as a client, was not required to behave with civility or professionalism towards his counsel, except to refrain from "relatively extreme" behavior. Joffe Br. (Dkt. 125) at 20 (quoting *Karimian v. Time Equities, Inc.*, No. 10-CV-3773, 2011 WL 1900092, at *4 (S.D.N.Y. May 11, 2011)). Joffe acknowledges, however, that attorneys have just cause to terminate their clients for being "unreasonably difficult." *See id.* Even assuming that Joffe is correct that he is not bound by professional standards despite being an attorney and having insisted on participating in his own litigation as a *de facto* associate or co-counsel, the Court finds no clear error because Joffe was, indeed, an "unreasonably difficult" client.

Although Joffe claims that he has found no case in which a NY court concluded that an attorney can establish good cause based on inappropriate remarks by the client, there are, in fact, analogous cases. In *Kiernan v. Kiernan*, for instance, the Appellate Division awarded a charging lien because "the questioning by plaintiff of her attorneys' competence, strategy and ethics [] rendered it unreasonably difficult for the firm to carry out its employment effectively." 233 A.D.2d 867, 867 (4th Dep't 1996); *see also Raff & Becker LLP v. Kaiser Saurborn & Mair, P.C.*, 160 A.D.3d 479, 479 (1st Dep't 2018) ("The irreconcilable differences between client and counsel as to litigation strategies and choices to be made, as well as [the client's] placing of restrictions on petitioner's communications with her and her expressed lack of trust and confidence that petitioner would represent her interests competently, establish a deterioration of the attorney/client relationship that significantly undermined petitioner's ability to represent [the client] effectively. Petitioner is therefore entitled to recover for services rendered on the basis of quantum meruit."). Joffe contends that his fights with JW were more akin to "personality conflicts," "misunderstandings, or "differences of opinion" that did not undermine the

relationship. Joffe Br. (Dkt. 125) at 18 (internal citations and quotation marks omitted). The Court cannot agree. The record contains ample examples of what Judge Aaron justifiably viewed as "unprofessional" and "hostile" comments, including about JW's competence, and conduct that went well beyond misunderstandings, respectful disagreement, or somewhat irksome personalities. *Joffe,* 337 F. Supp. 3d at 368. The Court agrees with Judge Aaron that Joffe's behavior, either as a client or a *de facto* co-counsel, went beyond what an attorney could be fairly expected to tolerate.

Joffe also severely misrepresents Judge Aaron's opinion, repeatedly. In his brief, he contends that Judge Aaron's "Opinion finds that, like in *Kovach*, the 'conflicts' and 'differences of opinion' here were akin to the kinds of mere 'personality conflicts, misunderstandings [and] differences of opinion' that do not create irreconcilable differences and, for that reason, 'do[] not amount to discharge for cause.'" Joffe Br. (Dkt. 125) at 18 (quoting *Joffe*, 337 F. Supp. 3d at 369 (quoting *Kovach*, 2015 WL 3540798, at \*6)). Joffe may as well have been reading an entirely different opinion because Judge Aaron made no such finding. Rather, Judge Aaron found that "Joffe's hostility and his threats to terminate the attorney-client relationship, taken alone, served as ample good cause for Javerbaum Wurgaft to withdraw." *Id.* at 370. Moreover, contrary to Joffe's insistence that Judge Aaron found no "conflicts" or "differences in strategy" between Joffe and JW, Joffe Br. at 12, Judge Aaron expressly concluded otherwise. *Joffe,* 337 F. Supp. 3d at 369 ("While there were conflicts between Joffe and Moskowitz, as well as differences in strategy, there was no significant breach of a legal duty by Javerbaum Wurgaft."). Judge Aaron further quoted, with approval, a state-court opinion holding that "[n]o honorable member of the Bar—sensitive to the esteem which a great, noble and learned profession deserves—could, under circumstances such as these, have continued to maintain the relationship

8

of attorney and counsellor to this client." *Id.* (quoting *Matarrese v. Wilson*, 202 Misc. 994, 997 (Sup. Ct., Bronx Cty. 1952)).

Joffe also claims that Judge Aaron's opinion "vitiates the client's right to choose counsel" by holding that any threat to retain other counsel would constitute good cause to withdraw. Joffe Br. (Dkt. 125) at 22. Judge Aaron did no such thing. While a client always has the right to seek new counsel, he or she is not entitled to taunt and manipulate his current attorney with that possibility or to verbally abuse their current attorney in the process. *See Joffe*, 337 F. Supp. 3d at 370 ("[T]he client surely is the master. However, that role does not mean that a client may run roughshod over his attorney and engage in inappropriate behavior."). Nor did Judge Aaron hold that every threat or hostile comment constitutes good cause—he made a case-specific determination that Joffe's behavior, as a whole, was severe enough to justify finding good cause and granting a lien. *See id.* Out of apparent regard for the confidentiality of Joffe's communications with his former attorney, Judge Aaron did not recite Joffe's specific juvenile comments—yet Joffe continues to push his dirty laundry to the fore.

In sum, JW had good cause to withdraw based on Joffe being an unreasonably difficult client, who repeatedly fired off demeaning remarks, failed to make timely payments, questioned JW's competence, disagreed on strategy while doggedly micromanaging the case, and dangled termination as a threat to win arguments. The Court finds no error in the standard applied by Judge Aaron, nor does the Court see any error in Judge Aaron's application of that standard to find just cause for JW's withdrawal.

### 3. *Actual Cause of Withdrawal*

Lastly, Joffe contends that Judge Aaron erred by failing to consider JW's "actual cause" for withdrawing, Joffe Br. (Dkt. 125) at 12–15, even if the circumstances were objectively sufficient cause for withdrawal. Joffe's argument is, in essence, that JW used Joffe's offensive

9

behavior as a pretext to withdraw and assert a charging lien, and that Judge Aaron failed to consider that possibility.  In Joffe's view, JW's one true reason for withdrawing was a disagreement over Joffe's settlement demands, which he believes to be an inadequate basis on which to withdraw.  Joffe Br. at 15.  Assuming without deciding that Judge Aaron erred in failing to consider JW's true reason for withdrawal, the Court concludes that JW *did* withdraw for reasons that constitute good cause.  *See City of New York v. Beretta U.S.A. Corp.*, No. 00-CV-3641, 2005 WL 1279183, at *1 (E.D.N.Y. May 26, 2005) ("The court 'may affirm on any basis supported by the record, including grounds upon which the [Magistrate Judge] did not rely.'" (quoting *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993))).

JW filed its motion to withdraw and enforce a charging lien on the basis of irreconcilable differences—specifically that Joffe's personal attacks and demands over litigation strategy and management rendered representation "unreasonably difficult."  JW Mot. Br. (Dkt. 81) at 1.  The record amply supports JW's stated rationale for withdrawal, and the Court sees no basis to find that rationale incredible or pretextual.  In the days and weeks leading up to JW's motion to withdraw, Joffe repeatedly threatened to terminate JW to get his way on staffing issues and other points of disagreement, demanded JW's immediate attention on what appeared to be non-time-sensitive matters, disparaged both Moskowitz and his co-worker's quality of work and approach to the case, and directly insulted Moskowitz.  *See* Moskowitz Decl. (Dkt. 80), Exs. I, J, K, L, M, N, O, P, Q, R, T.  Although Joffe contends that JW failed to mention "any affront to his honor or any umbrage taken," Joffe. Br. at 15, that claim is completely belied by the record.[4]  First, it

---

[4] Joffe acknowledges that he insulted Moskowitz's co-worker, but he contends that the Court should ignore that offending statement.  Joffe Reply Br. (Dkt. 127) at 8 n.9.  While it is true that a charging lien inures to the benefit of attorneys of record, the Court sees no reason why Moskowitz, as attorney of record, must tolerate disrespect towards his co-workers or members of his team.  In any event, the record contains much more than the one offense that Joffe is willing to admit.

bears mentioning that any even moderately self-aware person would know that Joffe's messages (on occasion in excess of twenty-five emails per day) were offensive, obnoxious, and likely to be poorly received—even if the recipient did not expressly state as much.  Moreover, throughout the month of June 2018, JW did, in fact, express offense and frustration in response to Joffe's dispatches, specifically calling out Joffe's conduct and noting his failure to pay his bills.  *See* Moskowitz Decl. (Dkt. 80), Exs. N, O, T.  Indeed, Joffe himself expressed concern that Moskowitz may harbor animosity towards him.  *See id.*, Ex. Q.

Joffe pins his hopes on JW's June 26 email, in which Moskowitz told Joffe that he would need to hire new counsel unless he was willing to at least entertain realistic settlement outcomes.  *See* Joffe Br. (Dkt. 125) at 9.  The mere fact that the June 26 email did not recite the self-evident state of the attorney-client relationship does not establish pretext.  While that email shows that Joffe's settlement posture was at least one reason why JW wished to withdraw, it by no means indicates that JW had no other reason to withdraw.  Rather, considering the record as a whole, Joffe's purportedly unrealistic settlement demand was the straw that broke the camel's back—not only was Joffe not paying his bills on time; and not only was Joffe an extremely difficult client; but there was no foreseeable prospect of resolving either the case or the differences between JW and Joffe.[5]  *See Klein v. Eubank*, 87 N.Y.2d 459, 464 (1996) (holding client's "unreasonable demands" could constitute just cause for withdrawal).

The Court therefore finds that JW actually withdrew for just cause and sees no basis to disturb Judge Aaron's conclusion that JW is entitled to enforce a charging lien.

---

[5]     Joffe also appears to contend that JW could not have withdrawn due to difficulties working with Joffe because they once had a productive working relationship, and JW had accepted his apology on occasion.  *See* Joffe Reply (Dkt. 127) at 8–9.  Whatever working relationship Joffe and JW had in the months preceding this Court's summary judgment decision, that prior relationship is not particularly probative of the state of their relationship in mid-2018.  Moreover, as this case well demonstrates, when a once-happy relationship sours badly enough (and this one did curdle), all the apologies in the world cannot fully restore the status quo *ante*.

### III. Conclusion

For those reasons, Joffe's motion to vacate the Magistrate Judge's opinion and order is DENIED. The Clerk of Court is respectfully directed to terminate docket entry 123.

**SO ORDERED.**

**Date: September 25, 2019**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**