**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**DAVID A. JOFFE,**

       **Plaintiff,**

**v.**

**KING & SPALDING LLP**,

       **Defendant.**

**Case No. 17-cv-3392 (VEC) (SDA)**

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY CONCERNING MEDIA COVERAGE SURROUNDING FORMER COUNSEL AND THE MAGISTRATE JUDGE'S OPINION, OR, IN THE ALTERNATIVE, TO SET BRIEFING ON PARTIAL RECUSAL ON EVIDENTIARY QUESTIONS RELATING TO MEDIA COVERAGE SURROUDING THIS COURT'S SEPTEMBER 25, 2019 OPINION AND THE UNDERSIGNED'S COLLATERAL APPEAL**

---

David A. Joffe, Esq. (pro se)
155 Christopher Columbus Drive
Jersey City, NJ 07302
516-695-7086
davidajoffe@gmail.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………..…………….1

BACKGROUND & PROCEDURAL HISTORY………………………..…..…..……………...2

I.    The Undersigned's Appearance *Pro Se*..………………………………………........2

II.   Expert Testimony Related to Employability………..……………………….............3

III.  Expert Opinion; Vacatur Opinion; and the Undersigned's Collateral Appeal ….....5

ARGUMENT……………………………………………………………………….....6

I.    The Instant Motion Addresses New Facts on the Ground………………….……...7

II.   Testimony on the Media Coverage Surrounding Former Counsel and the Magistrate Judge's Opinion is No Longer Relevant………….………………………….…....8

A.    Mr. Kamisar's Testimony Concerning the <u>Pro Se</u> Period is Withdrawn………..….9

B.    The Undersigned Could Not Feasibly Have Mitigated During the <u>Pro Se</u> Period…...9

C.    Full-Time Employment the <u>Pro Se</u> Period is Stipulated-To In the Damages Calculation………………………………….…………………………….......12

D.    Ms. Sweeney's Rebuttal Testimony About the Effect of Media Coverage Surrounding Former Counsel and the Magistrate Judge's Opinion Does Not Relate to the Post-Trial Period, For Which, in Any Case, the Undersigned's Full-Time Employment is Also Stipulated-To…………………….…………………….....14

III.  To the Extent This Court Admits Testimony on the Media Coverage Surrounding Former Counsel and the Magistrate Judge's Opinion, Evidentiary Questions Relating to Media Coverage Surrounding This Court's Opinion and the Undersigned's Collateral Appeal Would Raise the Issue of Partial Recusal……………………...…………..,,……………………...…………16

CONCLUSION………………………………………………………...………..21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Brushton-Moira Central School District v. Fred H. Thomas Associates, P.C.,
   91 N.Y.2d 256 (1998)........................................................................................... 8

Calabrese v. CSC Holdings, Inc.,
   No. CV 02-5171 (DLI) (JO), 2009 U.S. Dist. LEXIS 134944, 2009 WL 425879 (S.D.N.Y.
   Feb. 2, 2009)..................................................................................................... 7

DeWeerth v. Baldinger,
   38 F.3d 1266 (2d Cir. 1994) ................................................................................ 7

Eastman Kodak Co. v. Westway Motor Freight, Inc.,
   949 F.2d 317 (10th Cir. 1991) ..................................................................... 10, 11

Gil Enterprises v. Delvy,
   79 F.3d 241 (2d Cir. 1996) ................................................................................ 18

Hurst v. Conopco, Inc.,
   No. 3:08-cv-1422 (CFD), 2011 U.S. Dist. LEXIS 71584, 2011 WL 2633630 (D. Conn. July 5,
   2011)............................................................................................................. 9

In re Moody,
   755 F.3d 891 (11th Cir. 2014) ............................................................................ 20

In re WorldCom, Inc.,
   361 B.R. 675 (Bankr. S.D.N.Y. 2007) .................................................................. 10

Nichols v. Alley,
   71 F.3d 347 (10th Cir. 1995) ............................................................................. 20

Novelty Textile Mills, Inc. v. C.T. Eastern, Inc.,
   743 F. Supp. 212 (S.D.N.Y. 1990) ....................................................................... 10

Pashaian v. Eccelston Properties, Ltd.,
   88 F.3d 77 (2d Cir. 1996) .................................................................................. 19

Rice v. McKenzie,
   581 F.2d 1114 (4th Cir. 1978) ............................................................................ 19

Russell v. Lane,
   890 F.2d 947 (7th Cir. 1989) ........................................................................ 19, 20

Soley v. Wasserman,

No. 08 Civ. 9262 (KMW) (FM), 2013 U.S. Dist. LEXIS 170398 (S.D.N.Y. Dec. 2, 2013) ...... 6

United States v. Jordan,
  49 F.3d 152 (5th Cir. 1995) ........................................................................................ 19

Washington National Life Insurance Co. v. Morgan Stanley & Co.,
  974 F. Supp. 214 (S.D.N.Y. 1997) ............................................................................... 7

Young v. Calhoun,
  No. 85 Civ 7584 (SWK), 1995 U.S. Dist. LEXIS 4555, 1995 WL 169020 (S.D.N.Y. Apr. 7,
  1995) ......................................................................................................................... 7

## Statutes & Rules

28 U.S.C. § 455 .................................................................................................. 17, 19, 20

New York Rule of Professional Conduct 1.1 ................................................................. 10

## Other Authorities

Restatement (Second) of Contracts § 350 (1981) ..................................................... 8, 9

12 Alan W. Perry & Martin H. Redish, Moore's Federal Practice - Civil § 63.63 (3d ed. & 2019
  supp.) ...................................................................................................................... 19

Braden Campbell, Ex-King & Spalding Atty Can't Nix Former Counsel's Payout, Law360 (Sept.
  26, 2019) ................................................................................................................. 17

Emma Cueto, Ex-King & Spalding Atty To Appeal Order On Counsel Payout, Law360 (Oct. 25,
  2019) ...................................................................................................................... 17

## PRELIMINARY STATEMENT

In its September 24, 2019 opinion ("Expert Opinion"), this Court held that testimony about media coverage surrounding the undersigned's former counsel and the related opinion of Magistrate Judge Stewart D. Aaron is relevant and admissible as an alternative cause of the undersigned's sustained difficulty in finding employment during the pendency of this suit, and that the evidentiary value of this testimony outweighs its potential to prejudice the jury.  That holding is the law of the case, and the undersigned does not ask the Court to reconsider it.

Rather, the undersigned brings this motion in limine to exclude that same testimony due to new facts on the ground.  Specifically, in the period after former counsel's withdrawal and, as has become clear, through trial, the undersigned has proceeded as sole counsel of record on his own behalf.  The undersigned's continuous pro se status means that he did ***not*** experience difficulty finding employment as a litigator—because he did not seek and could not have sought such employment.  To state the obvious, prosecuting a complex action against Proskauer Rose is employment enough.  Accordingly, testimony about media coverage surrounding former counsel and the Magistrate Judge's opinion, which overlaps with the undersigned's continuous pro se status and suspension of job-search activities, is no longer relevant as an alternative cause of the undersigned's job-search difficulties and should therefore be excluded.

In the alternative, if this Court finds that media coverage surrounding former counsel and the Magistrate Judge's opinion remains relevant and admissible, evidentiary issues relating to media coverage surrounding this Court's opinion upholding the Magistrate Judge and the undersigned's collateral appeal of that opinion would raise colorable issues of partial recusal, on which the undersigned would respectfully request the Court set briefing in advance of the final pretrial conference.

## BACKGROUND & PROCEDURAL HISTORY

### I.      The Undersigned's Appearance *Pro Se*

From the filing of this action on May 8, 2017, until September 11, 2018, the undersigned

was represented by attorney Andrew M. Moskowitz.  On May 22, 2018, this Court denied

Defendant's motion for summary judgment and gave the parties until August 3, 2018 to

complete expert discovery  See Doc. No. 72 at 36-39.  On July 13, 2018, Mr. Moskowitz filed

his motion to withdraw and retain a charging lien.  See Doc. Nos. 79-81.  In a letter submitted

three days later, K&S informed the Court that, at the time of counsel's motion, "the parties had

agreed to jointly request an extension of time to complete expert discovery … to September 7,

2018," but that none of Plaintiff's expert reports had yet been served.  See Doc. No. 72 at 1.  The

following day, this Court stayed expert discovery *sine die*, pending resolution of Mr.

Moskowitz's motion.  See Doc. No. 73.

In a letter dated July 24, 2018, the undersigned informed the Court that he did not oppose

Mr. Moskowitz's withdrawal.  See Doc. No. 84 at 1.  However, in that letter and also at a

conference held on August 29, 2018, the undersigned expressed to the Court that Mr.

Moskowitz's insistence on a charging lien in an indeterminate amount—together with his refusal

of offers of full compensation for his time from potential replacement counsel—would make it

more difficult for the undersigned to retain a new attorney.  See Doc. No. 84 at 2 n.2; Doc. No.

96 at 6-7.

On September 11, 2018, this Court granted Mr. Moskowitz's motion to withdraw;

referred Mr. Moskowitz's claim for a charging lien to Magistrate Judge Stewart D. Aaron; and

extended expert discovery until November 23, 2018.  On September 12, 2018, this Court ordered

the undersigned "to promptly register with the ECF office as a pro se litigant," Doc. No. 93,

which the undersigned did five days later, <u>see</u> Doc. No. 98 (notice of appearance).

On October 2, 2018, the Magistrate Judge issued an opinion and order awarding Mr. Moskowitz a charging lien in an indeterminate amount.  <u>See</u> Doc. No. 113.  Two weeks later, on October 16, 2018, the undersigned filed with this Court his motion to vacate the Magistrate Judge's opinion, which was entered, together with Mr. Moskowitz's opposition and the undersigned's reply, on November 6, 2018.  <u>See</u> Doc. Nos. 125-127.

As the undersigned has previously represented to the Court, <u>see</u> Doc. No. 81 (July 2, 2019 letter), after his appearance <u>pro se</u> in this action, the undersigned concluded that he could no longer commit to taking on additional employment, explaining that:

> As a practicing attorney proceeding <u>pro se</u>, the undersigned does not have the capacity to singlehandedly prosecute this action while simultaneously also representing other clients in unrelated matters. Thus—and as K&S knows from documents produced by the undersigned in supplemental discovery—[] the undersigned previously took on a paid engagement for a client in Summer 2018, [but] the undersigned was regrettably required to withdraw from this engagement after … [he appeared] as a <u>pro se</u> litigant.

<u>Id.</u> at 3.

## II.   <u>**Expert Testimony Related to the Employability**</u>

Proceeding <u>pro se</u> following counsel's withdrawal, the undersigned independently engaged vocational expert Gordon A. Kamisar, as well as damages expert Kristin K. Kucsma, whose respective reports were served on Defendant on October 10, 2018.  <u>See</u> Doc. No. 163-2 ("Kamisar Report"); Doc. No. 155-6 ("Kucsma Report").  In his report, Mr. Kamisar opined that K&S's termination of the undersigned—standing alone—made obtaining a position similar the position the undersigned had at K&S "nearly impossible."  <u>See</u> Kamisar Report at 3. Specifically, (i) in the period after the undersigned was terminated and before this lawsuit was filed (the "**Pre-Suit Period**"), as a result solely of K&S's termination, the undersigned's

3

prospects were permanently reduced to positions with law firms offering "much lower compensation," such as with insurance-defense firms; id. at 5-6; (ii) in the period "while [this] case is pending," due to the effects of ongoing trial-related publicity, "it is extremely unlikely that any employer will hire Mr. Joffe;" id. at 6-7; and, (iii), in the period after the undersigned "prevails in the litigation" (the "**Post-Trial Period**"),[1] the undersigned's prospects would revert to where they were in the Pre-Suit Period—i.e., "Mr. Joffe is more likely than not to ultimately secure employment with a lower-paying firm," id. at 11, but it would nevertheless be "virtually impossible for him to obtain an attorney position at one of the elite AmLaw 100 or 200 [or similar] law firms," id. at 10.  In Ms. Kucsma's accompanying damages appraisal, the lower-paying-law-firm compensation that the undersigned would be expected to obtain in the Pre-Suit Period and Post-Trial Period is approximated as the median regionwide attorney salary, or $160,370 in 2017 dollars,  See Kucsma Report at 8.  The Kucsma Report assumes the undersigned will earn this lower-paying-law-firm salary "beginning on or about January 1, 2019."  See id.[2]

On November 9, 2018, K&S produced the report of its rebuttal vocational expert, Carlynn Magliano Sweeney.  See Doc. No. 144-4 ("Sweeney Report").  In her report, Ms. Sweeney rebuts Mr. Kamisar's conclusion that K&S's termination narrowed the undersigned's job prospects to "low paying insurance defense work."  Id. at 5.  Ms. Sweeney opines that, "In fact, Mr. Joffe would have had serious challenges finding a comparable job even if he had not

---

[1] Mr. Kamisar's testimony is limited to the eventuality where the undersigned prevails at trial because, if K&S is the party that prevails on the merits or if the case settles beforehand, then the issue of damages would not be considered by the jury in the first place.

[2] In accordance with this Court's November 18, 2019 Order, the Kucsma Report was revised to remove fringe benefits, and this revision was furnished to Defendant on December 6, 2019.  See Doc. No. 190.  The current version of the Kucsma Report retains the above-referenced $160,370 regionwide salary figure, which this Court endorsed in its September 24, 2019 opinion admitting Ms. Kucsma's testimony.  See Doc. No. 183 (Expert Op.) at 20.

been terminated at all," id. at 3, due to the difficult lateral market for senior litigators as well as the undersigned's lack of specialization, see id. at 4-5.  Elaborating on this opinion further at her deposition, Ms. Sweeney explained that, whether job-hunting while still employed at K&S or job-hunting post-termination, in her experience the undersigned "should expect" to find employment paying "in the low twos."  See Doc. No. 155-4 (Sweeney Dep.) at 75-78.

In turn, with respect to Mr. Kamisar's conclusion that ongoing publicity makes it is "extremely unlikely" that any employer will hire the undersigned while this suit is pending, Ms. Sweeney opines—as the Court stated in its September 24, 2019 opinion—that Mr. Kamisar failed to consider "an obvious alternative cause of Plaintiff's unemployment"—namely, "the impact of media coverage of Plaintiff's toxic relationship with his former counsel on Plaintiff's difficulty of finding employment to-date."  See Expert Op. at 11, 14.  In particular, Ms. Sweeney's analysis of media coverage in her rebuttal opinion focuses on "the perception of Plaintiff that law firms would have upon seeing Judge Aaron's sharp criticism [in his October 2, 2018 opinion] and related media coverage."  See id. at 25.

On January 16, 2019, the undersigned moved this Court to preclude, on the basis of Federal Rule of Evidence 403, Ms. Sweeney's testimony on media coverage surrounding former counsel and the Magistrate Judge's opinion.  The undersigned argued that the temporally highly-circumscribed probative value of testimony about the undersigned's unemployment while this suit is pending was substantially outweighed by the risk of undue prejudice and confusion from the jury learning about the parallel proceedings involving former counsel.  See Doc. No. 143 at 20-22; see also Doc. No. 169 (reply brief) at 2, 9.

### III.    Expert Opinion; Vacatur Opinion; and the Undersigned's Collateral Appeal

In its September 24, 2018 Expert Opinion, this Court admitted Ms. Sweeney's testimony

concerning media coverage surrounding former counsel and the Magistrate Judge's opinion, finding: "The idea that public criticism by a judge makes an attorney less employable is not likely to confuse the jury."  Expert Op. at 25-26.

On September 25, 2019, this Court issued its opinion denying the undersigned's motion to vacate the Magistrate Judge's opinion and upholding Mr. Moskowitz's claim to an charging lien.  See Doc. No. 184 ("Vacatur Opinion").  The Court affirmed the Magistrate Judge's conclusion that Mr. Moskowitz had objectively sufficient cause to enforce a lien, and, in the alternative, found that the actual cause-in-fact of Mr. Moskowitz's withdrawal under the circumstances also constituted just cause for an attorney to withdraw and receive compensation. See id. at 9-11.  On October 25, 2019, the undersigned filed a collateral appeal of the Vacatur Opinion.  See Doc. No. 187 (Notice of Appeal).  The undersigned's collateral appeal is currently pending before the Second Circuit.  See Case No. 19-3516 (2d Cir.).

After the undersigned's notice of appearance on September 27, 2018 and through the present, the undersigned has remained sole counsel of record on his own behalf.  At a hearing on November 15, 2019, this Court scheduled jury selection and trial in this action for April 20, 2020.  See Doc. No. 190.

## ARGUMENT

### I.    The Instant Motion Addresses New Facts on the Ground

As a threshold matter, the instant motion in limine does not seek to disturb the law of the case as set forth in this Court's Expert Opinion admitting testimony about media coverage surrounding former counsel and the Magistrate Judge's opinion.  It is a "well-established principle that the doctrine of the law of the case applies to issues that have been decided either expressly or by necessary implication."  See Soley v. Wasserman, No. 08 Civ. 9262 (KMW)

(FM), 2013 U.S. Dist. LEXIS 170398, at *8 (S.D.N.Y. Dec. 2, 2013) (quoting DeWeerth v. Baldinger, 38 F.3d 1266, 1271 (2d Cir. 1994)).  The issues raised below, however, concern new circumstances that arose subsequent to the parties' Daubert briefing and the resulting Expert Opinion and, have therefore not been expressly or implicitly considered by this Court.  See, e.g., Young v. Calhoun, No. 85 Civ 7584 (SWK), 1995 U.S. Dist. LEXIS 4555, at *22, 1995 WL 169020 (S.D.N.Y. Apr. 7, 1995) ("the law of the case doctrine does not preclude either party from offering additional evidence"); see also Calabrese v. CSC Holdings, Inc., No. CV 02-5171 (DLI) (JO), 2009 U.S. Dist. LEXIS 134944, at *18, 2009 WL 425879 (S.D.N.Y. Feb. 2, 2009) ("an earlier ruling that is distinguishable on the basis of an intervening change of facts … is not binding").  Alternatively, to the extent this Court finds that the relief requested herein is inconsistent with its prior legal rulings, "where new evidence has surfaced or a more complete record has developed," "[a] court may revisit the law of the case."  See Washington Nat'l Life Ins. Co. v. Morgan Stanley & Co., 974 F. Supp. 214, 219 (S.D.N.Y. 1997).

Specifically, the instant motion in limine addresses the following new facts: (i) this Court's Vacatur Opinion affirming the Magistrate Judge; (ii) the collateral appeal of the Vacatur Opinion; and (iii) the undersigned's singlehanded pro se status throughout the period between counsel's withdrawal and trial ("**Pro Se Period**").[3]

---

[3] At the time briefing on the Expert Opinion was submitted in January and February 2018, it was unknown whether the undersigned (i) would engage replacement counsel for Mr. Moskowitz, in which case he could resume his search for comparable employment prior to trial; or (ii) would remain pro se until trial, in which case he could not.  Thus, at that time, the basis for the instant motion (i.e., the continuous nature of the undersigned's pro se status after counsel's withdrawal) would have been uncertain, and the grounds for the instant motion therefore premature.  Now that trial has been scheduled for April 2020 and the undersigned remains pro se, however, it has become clear that eventuality (ii) prevailed and, accordingly, that the issues raised in the instant motion are ripe for this Court's resolution.

## II.    Testimony on Media Coverage Surrounding Former Counsel and the Magistrate Judge's Opinion is No Longer Relevant

In the Expert Opinion, this Court found that Ms. Sweeney's proffered rebuttal testimony concerning media coverage surrounding former counsel and the Magistrate Judge's opinion is admissible on the issue of mitigation, specifically as an alternative cause of the undersigned's "sustained difficulty in finding employment."  Expert Op. at 11.  New York law on mitigation of damages follows § 350 of the Restatement (Second) of Contracts ("Avoidability as a Limitation on Damages").  See Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C., 91 N.Y.2d 256, 263 (1998).  Section 350 (emphasis added) provides:

> (1) Except as stated in Subsection (2), damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation.

> (2) The injured party is not precluded from recovery by the rule stated in Subsection (1) to the extent that he has made reasonable but unsuccessful efforts to avoid loss.

For the reasons set forth below, because testimony concerning the effect of media coverage surrounding former counsel and the Magistrate Judge's opinion on the undersigned's job search fully overlaps with the Pro Se Period, and because the undersigned could not "without undue risk" have held—and therefore did not seek—comparable employment during the Pro Se Period, Ms. Sweeney's opinion on this subject is no longer relevant.  Alternatively, even if this Court finds the undersigned did have a duty to make mitigation efforts during the Pro Se Period, testimony concerning media coverage surrounding former counsel and the Magistrate Judge's opinion during this period is _still_ no longer relevant: because the undersigned did not in fact hold down (or search for) comparable employment during that period, any such failure to mitigate would be stipulated-to—the jury would not have to determine _why_ the undersigned did not find a job during this period.  In fact, such a stipulation is effectively already reflected in the Kucsma

Report, which imputes to the undersigned, starting in 2019, the aforementioned lower-paying-law-firm salary that the undersigned did not in fact earn, but which approximates what—both experts agree—the undersigned would stand to earn after his termination and in the absence of this lawsuit.

### A.  Mr. Kamisar's Testimony Concerning the <u>Pro Se</u> Period is Withdrawn

As this Court noted in the Expert Opinion, the Kamisar Report—which was signed on October 10, 2018, and, thus, overlapped in time with media coverage surrounding former counsel and the Magistrate Judge's opinion—discusses "how difficult [the] undersigned's job search has been and will continue to be [going forward]."  <u>See</u> Expert Op. at 13-14.  For the same reasons as set forth below, however, to the extent Mr. Kamisar's proffered testimony covers the undersigned's employability in the <u>Pro Se</u> Period, such proffered testimony is hereby respectfully withdrawn—a course of action previously endorsed by this Court.  <u>See</u> Expert Op. at 21 (crediting K&S's agreement not to offer a specific previously-submitted opinion of Ms. Sweeney).

### B.  The Undersigned Could Not Feasibly Have Mitigated During the <u>Pro Se</u> Period

Section 350 of the Restatement, as set forth above, provides that the scope of the injured party's duty to mitigate depends on "the balancing of [the injured party's] reasonable effort and undue risk, burden, or expense."  <u>Hurst v. Conopco, Inc.</u>, No. 3:08-cv-1422 (CFD), 2011 U.S. Dist. LEXIS 71584, *29, 2011 WL 2633630 (D. Conn. July 5, 2011) (applying New York law). "[I]f the course of conduct chosen by the plaintiff was reasonable, the plaintiff can recover despite the existence of another reasonable course of action that would have further lessened plaintiff's damages."  <u>Novelty Textile Mills, Inc. v. C.T. Eastern, Inc.</u>, 743 F. Supp. 212, 219 (S.D.N.Y. 1990) (citation omitted).  In turn, with respect to undue risk, "harm to reputation" is

9

recognized as one of the factors "that will excuse a party's duty to mitigate." In re WorldCom, Inc., 361 B.R. 675, 693 (Bankr. S.D.N.Y. 2007) (citing Eastman Kodak Co. v. Westway Motor Freight, Inc., 949 F.2d 317, 320 (10th Cir. 1991) (injured party should not be "required to sell damaged merchandise in order to mitigate damages")).

The undersigned respectfully submits for this Court's determination that, as a matter of law, the undersigned's suspension of mitigation efforts during the Pro Se Period was a reasonable decision.[4]  Upon appearing pro se, the undersigned became responsible for moving forward a complex case with short deadlines and an overwhelmingly better-resourced adversary represented by Proskauer Rose.  As reflected by the undersigned's withdrawal from his attorney engagement entered into in Summer 2018, the undersigned believed that these responsibilities made it impossible to commit to the ethically-requisite "thoroughness and preparation reasonably necessary for the representation" of other clients in unrelated matters.  See N.Y. R. of Prof'l Conduct 1.1(a).  Such circumstances are the quintessence of "undue risk:" had the undersigned sought and obtained full-time work as a litigator, but without the ability to commit sufficient time and resources to such work, the undersigned would have courted disciplinary sanctions and/or malpractice liability.  Indeed, even setting aside such consequences as sanctions or malpractice, ***any*** legal employment the undersigned took on without the "thoroughness and preparation reasonably necessary" would, by definition, create undue reputational risk—namely, the risk of being (justifiably) perceived as a careless and unprepared lawyer.  If one of the necessary elements of the services an attorney sells to clients is the attorney's thoroughness and

---

[4] To the extent the Court finds that the reasonableness of the undersigned's decision to suspend job-search efforts during the Pro Se Period is a question for the jury, as set forth supra, the undersigned would not dispute and would stipulate that such efforts were in fact suspended.  Thus, Ms. Sweeney's testimony about media coverage surrounding former counsel and the Magistrate Judge's opinion in the Pro Se Period on a hypothetical job search that the undersigned stipulates he did not undertake would nevertheless be irrelevant to the question before the jury.

preparation, the undersigned should not be "required to sell damaged merchandise in order to mitigate damages." <u>Eastman Kodak</u>, 949 F.2d at 320.[5]

The course of this litigation during the <u>Pro Se</u> Period has fully borne out the reasonableness of the undersigned's decision. Within three months of the undersigned's appearance, the undersigned engaged experts and served two affirmative reports, received two rebuttal reports from Defendant, and, in the span of two weeks, took or defended five expert depositions. And, within three months after that, the parties submitted a total of fifteen <u>Daubert</u> briefs that covered the vast cornucopia of issues addressed in this Court's thirty-eight-page Expert Opinion. While the result of those fifteen <u>Daubert</u> briefs, as reflected in the Expert Opinion was, broadly, that both sides won some and lost some, the undersigned respectfully submits that that is precisely <u>because</u> the undersigned devoted his full time and energy to parrying K&S's counsel's extremely rigorous and meticulous motion practice. Had the undersigned attempted to balance other comparable employment, however, it would not have been a fair fight. (And, to state the obvious, the undersigned expects preparation for the quickly-approaching jury trial in this case to be no less demanding.) Accordingly, because the undersigned acted reasonably in suspending his job search during the <u>Pro Se</u> Period, Ms. Sweeney's testimony on the undersigned's employment prospects during this period is irrelevant—whatever the effect on employers of media coverage surrounding former counsel and the Magistrate Judge's opinion, that effect did not make it more or less likely that the

---

[5] The undersigned recognizes that he found the time, while prosecuting the action against K&S <u>pro se</u>, to also represent himself in Mr. Moskowitz's collateral fee action before the Magistrate Judge, this Court, and, now, the Court of Appeals. But this does not raise the risk of professional liability that would be present in a client engagement. Moreover, since, by the time the undersigned appeared <u>pro se</u>, he had already become familiar with the facts and legal principles applicable to the collateral fee action, that action did not and does require the same extent of preparation as would full-time work for other clients on unrelated matters.

undersigned would obtain a job that the undersigned reasonably chose not to seek.[6]

Because the undersigned could not have sought comparable employment during the <u>Pro Se</u> Period without undue risk, expert testimony concerning the causes of the undersigned's difficulty in finding comparable during the <u>Pro Se</u> Period should be excluded.

### C.  Full-Time Employment the <u>Pro Se</u> Period is Stipulated-To In the Damages Calculation

Ms. Kucsma's damages calculation, relying on the report of Mr. Kamisar, assumes that the undersigned will obtain employment in the Post-Trial Period similar to what the undersigned could have obtained in the Pre-Suit Period before the circumstances of his termination became publicly known—<u>i.e.</u>, at a "lower paying" firm, approximated as the median attorney salary in the New York area.  <u>See</u> Expert Op. at 20 (citing Kucsma Report at 8).  The Kucsma Report imputes this median attorney salary to the undersigned starting on January 1, 2019, which covers virtually the entire <u>Pro Se</u> Period.  <u>See</u> Kucsma Report at 8.  This means that the undersigned's current damages calculation, rather than assuming the undersigned would have "difficulty in finding a job, post-dating Plaintiff's conflict with his former counsel becoming the subject of media attention," <u>see</u> Expert Op. at 14, in fact makes a simplifying assumption which effectively stipulates the opposite: that the undersigned would <u>not</u> remain unemployed while this suit was still pending and post-former counsel's withdrawal, but would obtain employment at the ***<u>same salary</u>*** as the undersigned would have obtained had there been no suit and no associated media coverage (whether relating to allegations made by K&S, or relating to former counsel and the Magistrate Judge's opinion) in the first place.  To the extent Ms. Sweeney disagrees with the

---

[6] If this Court agrees that the time necessary to prosecute this action <u>pro se</u> made comparable employment infeasible, then Ms. Sweeney's testimony, in addition to not being relevant, would also be highly misleading, since it would suggest the opposite—that the undersigned could have found the time to commit to full-time work while managing a litigation against Proskauer Rose, but was too lazy or inert to do so (when, in fact, doing so would have been certainly irresponsible and likely impossible).

precise figure of this same salary—her opinion, as set forth above, is that the undersigned should expect a salary in the "low two's," where the regionwide median used by Ms. Kucsma is in the "mid one's"—K&S "can make the case to the jury for what is a slight adjustment." See id. at 20 n.8.[7]  But, because the only question that would be before the jury is whether the undersigned's full-time employment beginning January 1, 2019 is in the "low two's" or the "mid one's," Ms. Sweeney's testimony about media coverage surrounding former counsel and the Magistrate Judge's opinion as an "obvious alternative cause of Plaintiff's unemployment," see Expert Op. at 11, in the Pro Se Period would bear no relevance to the inquiry.

Accordingly, even if this Court finds that the undersigned had a duty to mitigate damages during the Pro Se Period, Ms. Sweeney's rebuttal testimony concerning media coverage surrounding former counsel and the Magistrate Judge's opinion as an alternative cause of the undersigned's unemployment during the Pro Se Period should nevertheless be excluded as irrelevant and moot.  By assuming the undersigned's full-time employment throughout this period at approximately the salary that Ms. Sweeney believes the undersigned would have stood to earn prior to filing suit, Ms. Kucsma's damages calculation substantially attributes (and, with a "slight adjustment," would fully attribute) any incremented impact from this alternative cause to the undersigned.  In effect, the result K&S seeks through Ms. Sweeney's testimony is already baked into the current Kucsma Report.

---

[7] The date as of which Kucsma Report assumes the undersigned would maintain full-time employment, January 1, 2019, also slightly postdates counsel's withdrawal and the Magistrate Judge's opinion, which was issued on October 2, 2018.  But this less-than-three-month mismatch too can be remedied with a "slight adjustment," to which the undersigned would stipulate.

**D. Ms. Sweeney's Rebuttal Testimony About the Effect of Media Coverage Surrounding Former Counsel and the Magistrate Judge's Opinion Does Not Relate to the Post-Trial Period, For Which, in Any Case, the Undersigned's Full-Time Employment is Also Stipulated-To**

As set forth above, Mr. Kamisar opines that the undersigned would be expected to find the same lower-paying-law-firm employment, at the same salary, in the Pre-Suit Period and in the Post-Trial Period.  Accordingly, Mr. Kamisar's analysis of the effect of lawsuit-related media coverage on the undersigned's sustained unemployment, see Expert Op. at 14, relates only to the period while this action is pending.[8]

Ms. Sweeney rebuts Mr. Kamisar's opinion by proffering an alternative cause of "Plaintiff's difficulty in finding a job"—i.e., media coverage surrounding former counsel and the Magistrate Judge's opinion.  See Expert Op. at 14.  Importantly, while Ms. Sweeney was fully aware of the media coverage surrounding former counsel and the Magistrate Judge's opinion at the time she proffered her testimony, and while Ms. Sweeney could have opined that the effect of this "alternative cause" extended into the Post-Trial Period as well, ***Ms. Sweeney's views on the undersigned's long-term prospects in the Post-Trial Period assign no weight*** to media coverage surrounding former counsel and the Magistrate Judge's opinion.  Thus, Ms. Sweeney ***does not opine*** (i) that media coverage surrounding former counsel and the Magistrate Judge's opinion will cause the undersigned to remain unemployed even after the undersigned prevails at trial.  And Ms. Sweeney also ***does not opine*** (ii) that media coverage surrounding former counsel and the Magistrate Judge's opinion will cause the undersigned to earn less in the Post-Trial Period than he otherwise would have, since she holds that the undersigned's expected long-term salary ***is exactly the same*** lower-paying-law-firm salary (i.e., "low-200's") that the undersigned would

---

[8] As set forth supra, Mr. Kamisar's analysis of the effect of ongoing publicity on the undersigned's sustained unemployment in the Pro Se Period—i.e., when the undersigned did not look for employment—is respectfully withdrawn.

be expected to obtain "even if he had not been terminated at all."  In other words, while Ms.

Sweeney **could have opined** that media coverage surrounding former counsel and the Magistrate

Judge's opinion is an "alternative cause" of why the undersigned's salary in the Post-Trial Period

will be limited to a lower-paying-law-firm salary, **she does not do so**—rather, the only causes of

the undersigned's expected lower-paying-law-firm salary in the long term on which she opines

are the undersigned's senior-litigator status and lack of specialization, factors that would exist

"even if [the undersigned] had not been terminated at all."[9]  Thus, for the Post-Trial Period, Ms.

Sweeney's only dispute with Mr. Kamisar relates to the precise quantum of that lower-paying-

law-firm salary: Ms. Sweeney believes the undersigned should expect a salary in the "low two's"

rather than, per Mr. Kamisar (as reflected in the Kucsma Report), the "mid one's."

    Accordingly, if testimony on the effects of media coverage surrounding former counsel

and the Magistrate Judge's opinion is excluded with respect to the Pro Se Period, it would be

excluded in toto, because neither expert has opined that media coverage surrounding former

counsel and the Magistrate Judge's opinion is either a first-order cause or an alternative cause of

any limitations on the undersigned's expected career prospects in the Post-Trial Period.

    Alternatively, even if this Court finds that Ms. Sweeney's proffered testimony concerning

the effects of media coverage surrounding former counsel and the Magistrate Judge's opinion as

an "alternative cause of Plaintiff's unemployment" includes the Post-Trial Period (which it does

---

[9] In contrast, Mr. Kamisar does opine that ongoing reputational effects from the undersigned's
lawsuit against King & Spalding, including the media record it generated, will be a factor
contributing to the undersigned's post-trial restriction to a lower-paying-law-firm job pool, and,
moreover, that it will be it "virtually impossible" for the undersigned to obtain a position with an
AmLaw 100 or 200 firm despite the presumably-positive media coverage that would accrue to the
undersigned if he prevails at trial.  See Kamisar Report at 10.  Here again, while Ms. Sweeney
could have rebutted this opinion by suggesting that media coverage surrounding former counsel
and the Magistrate Judge's opinion are an alternative cause for any limitation on the undersigned
long-term restriction to jobs paying "in the low two's," she did not do so.

not), this testimony should nevertheless be excluded.  As with the <u>Pro Se</u> Period, for the Post-Trial Period (<u>i.e.</u>, 2020 going forward) the damages calculation in the Kuscma Report again imputes to the undersigned approximately the same salary that, according both to the undersigned's experts ("mid 100s") <u>and</u> according to Ms. Sweeney ("low 200s"), the undersigned would have stood to earn before any publicity became a factor.  Thus, here again, testimony on whether media coverage surrounding former counsel and the Magistrate Judge's opinion would make the undersigned's salary lower in the Post-Trial Period than it otherwise would have been is beside the point: by offsetting damages for each year post-trial by the same amount that the undersigned could have expected to obtain <u>before</u> this lawsuit was commenced, the Kucsma Report already effectively imputes the effect of <u>any</u> "alternative cause of Plaintiff's unemployment"—whether from media coverage surrounding K&S's allegations, media coverage surrounding former counsel and the Magistrate Judge's opinion, or something else—to the undersigned.

Because no testimony on the effects of media coverage surrounding former counsel and the Magistrate Judge's opinion in the Post-Trial Period has been proffered by either side's experts, and because, for purposes of the damages calculation, any "alternative cause of Plaintiff's unemployment" in the Post-Trial Period is already imputed to the undersigned in the current Kucsma Report, testimony on the effects of media coverage surrounding former counsel and the Magistrate Judge's opinion in the Post-Trial Period suit should not be heard at trial.

III. **To the Extent This Court Admits Testimony on the Media Coverage Surrounding Former Counsel and the Magistrate Judge's Opinion, Evidentiary Questions Relating to Media Coverage Surrounding This Court's Opinion and the <u>Undersigned's Collateral Appeal Would Raise the Issue of Partial Recusal</u>**

Subsequent to admitting Ms. Sweeney's testimony on the effects of media coverage surrounding former counsel and the Magistrate Judge's opinion, additional media coverage has

been generated by (i) this Court's Vacatur Opinion upholding the Magistrate Judge's opinion, see, e.g., Braden Campbell, <u>Ex-King & Spalding Atty Can't Nix Former Counsel's Payout</u>, Law360 (Sept. 26, 2019); and (ii) the undersigned's collateral appeal of the Vacatur Opinion and the Magistrate Judge's opinion, see, Emma Cueto, <u>Ex-King & Spalding Atty To Appeal Order On Counsel Payout</u>, Law360 (Oct. 25, 2019).  If this Court finds that, as set forth above, the undersigned's continuing <u>pro se</u> status and effective stipulation to a mitigation offset in the <u>Pro Se</u> Period mean that Ms. Sweeney's previously-admitted testimony on the effects of the media coverage surrounding former counsel and the Magistrate Judge's opinion is no longer relevant and should be excluded at trial, then, for the same reason, publicity surrounding the aforementioned subsequent developments would not be relevant either.   However, if—and only if—this Court finds that Ms. Sweeney's testimony on media coverage surrounding former counsel and the Magistrate Judge's opinion nevertheless remains admissible, then testimony concerning media coverage surrounding these subsequent developments would come into play as well: (i) the undersigned would seek to introduce supplemental testimony from Mr. Kamisar concerning the extent to which media coverage surrounding the undersigned's collateral appeal may affect employers' perceptions of the media coverage surrounding the Magistrate Judge's opinion; while (ii) K&S potentially would seek to introduce (and the undersigned would oppose) Ms. Sweeney's supplemental testimony on employers' perceptions of media coverage surrounding this Court's Vacatur Opinion upholding the Magistrate Judge.

The undersigned respectfully submits that consideration by this Court of the admissibility and evidentiary weight of media coverage surrounding the undersigned's collateral appeal and (to the extent proffered by Defendant) this Court's own Vacatur Opinion raise colorable issues of partial recusal pursuant to 28 U.S.C. § 455.  Accordingly, the undersigned respectfully requests

17

that—if this Court finds that testimony concerning media coverage surrounding former counsel and the Magistrate Judge's opinion remains admissible notwithstanding the arguments set forth supra—the Court schedule briefing on the issue of partial recusal sufficiently in advance of the final pre-trial conference, in order to permit the parties to raise evidentiary issues concerning the admissibility of media coverage surrounding the collateral appeal of the Vacatur Opinion and/or the Vacatur Opinion itself only after the issue of partial recusal is resolved first.[10]

      In raising the topic of judicial disqualification, the undersigned wishes to be maximally clear that he does <u>not</u> assert—and, with full candor, does not believe—that this Court has any bias with respect to the undersigned, or any other party, or any issue previously decided in this case.  Rather, the undersigned respectfully submits that, ***<u>only</u>*** in the narrow circumstance where—contingent upon finding that Ms. Sweeney's testimony concerning the job-search effects of media coverage surrounding former counsel and the Magistrate Judge's opinion remains admissible notwithstanding its loss of relevance—this Court would be tasked with deciding the relevance to potential employers and the evidentiary value to the jury of publicity surrounding (i) one party's ongoing appeal of an opinion in a collateral matter that this Court upheld, as well as, potentially, (ii) this Court's own opinion in that collateral matter, then, specifically and only with

---

[10] The Second Circuit has "made clear that recusal motions are to be made at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim," in order to "afford[] the district judge an opportunity to assess the merits of the application before taking any further steps … [and to] avoid[] the risk that a party is holding back a recusal application as a fall-back position."  <u>Gil Enters. v. Delvy</u>, 79 F.3d 241, 247 (2d Cir. 1996) (quotation omitted).  Here, the facts demonstrating a colorable basis for recusal would arise only in the event that the Court finds that Ms. Sweeney's testimony about the effects of the Magistrate Judge's opinion remains admissible.  In such a case, in accordance with the Second Circuit's guidance in <u>Gil Enterprises</u>, permitting briefing sufficiently in advance of the pretrial conference would ensure that this Court considers the issue of partial recusal <u>before</u> it considers the admissibility of the collateral appeal of the Vacatur Opinion and/or the Vacatur Opinion itself.

respect to those questions,[11] colorable issues of partial recusal meriting further briefing would be raised:

First, in considering whether to admit testimony about the effect of media coverage of the undersigned's collateral appeal on employers' view of media coverage surrounding the Magistrate Judge's opinion after itself having affirmed that very opinion, this Court would, in effect, be collaterally adjudicating the validity and strength of an appeal of its own decision. While this circumstance does not fall within the literal scope of the prohibition on judges sitting for their own appeals—set forth in 28 U.S.C. § 47—courts have found that a judge's "impartiality might reasonably be questioned," 28 U.S.C. § 455(a), in other instances where, as here, "[l]iterally[] § 47 has no application … but [t]he same principle is involved"—specifically, that "a reasonable person has a reasonable basis to question the impartiality of a judge who … review[s] his own decision as a trial judge." Rice v. McKenzie, 581 F.2d 1114, 1117 (4th Cir. 1978). Thus, in Russell v. Lane, 890 F.2d 947, 949 (7th Cir. 1989), Judge Posner found that the appearance-of-partiality prong of § 455(a) is triggered when a federal judge is (i) asked to pass on their own previous opinion (ii) in any context other than reconsideration.[12] Like in those cases, a reasonable person would have a reasonable basis to question whether, in deciding the relevance to employers and evidentiary weight of media coverage surrounding the undersigned's

---

[11] In the Second Circuit, "in an appropriate case, a judge may recuse himself or herself as to some issues and retain authority to decide other issues." 12 Alan W. Perry & Martin H. Redish, Moore's Federal Practice - Civil § 63.63 (3d ed. & 2019 supp.) (citing, inter alia, Pashaian v. Eccelston Props., Ltd., 88 F.3d 77, 84–85 (2d Cir. 1996)).

[12] Rice and Russel involved federal habeas corpus petitions in which the presiding judge had been involved in the petitioner's proceedings in state court, while the undersigned is presently unaware of any cases in which a court, as here, would consider the admissibility as evidence in one pending matter the appeal of that court's own opinion (or that court's own opinion itself) in a separate pending matter. However, "[r]ecusal decisions … are extremely fact driven and 'must be judged on their unique facts and circumstances more than by comparison to situations considered in prior jurisprudence.'" In re Moody, 755 F.3d 891, 895 (11th Cir. 2014) (quoting Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995) (quoting United States v. Jordan, 49 F.3d 152, 157 (5th Cir. 1995))).

collateral appeal, this Court would have an inherent "emotional commitment" to the correctness of its own prior findings which this Court is not being asked to reconsider.  See Russell, 890 F.2d at 949.

Second, § 455(b)(1) covers recusal where a judge has "personal knowledge of disputed evidentiary facts"—the disputed facts here being whether and to what extent potential employers' views of media coverage surrounding the Magistrate Judge's opinion would be affected by media coverage surrounding the undersigned's collateral appeal of the Magistrate Judge's opinion.  Having itself carefully considered the Magistrate Judge's opinion and the underlying evidence and having personally drafted a subsequent opinion affirming the Magistrate Judge's findings, this Court has unique knowledge relating to these disputed facts that any other judge considering the same issues would not have.

Finally, to the extent that K&S will seek to admit into evidence Ms. Sweeney's testimony concerning employers' view of media coverage surrounding this Court's Vacatur Opinion, the above issues would be further magnified.  In considering the admissibility of media coverage surrounding the Vacatur Opinion, this Court would directly judging the effect on potential employers, the helpfulness to the jury, and the potential to prejudice, mislead, or confuse the jury of coverage of its own written opinion which this Court took the time, energy, and thought to craft, which it is not being asked to reconsider, but which is pending appeal by one of the parties. The undersigned would argue that, here too, a reasonable person would have a reasonable basis to question whether this Court, in deciding these evidentiary issues, would—naturally but not impartially—"favor its own children."

For these reasons, the undersigned respectfully submits that, if this Court finds that testimony concerning publicity surrounding the Magistrate Judge's opinion remains admissible,

then inevitable evidentiary issues concerning publicity surrounding the Vacatur Opinion and publicity surrounding the undersigned's collateral appeal raise issues of partial recusal for which briefing sufficiently in advance of the final pre-trial conference should be set.

## CONCLUSION

For the reasons set forth herein, the undersigned respectfully requests that this Court exclude testimony concerning media coverage surrounding the undersigned's former counsel and the October 2, 2018 Opinion and Order of Magistrate Judge Stewart D. Aaron, or, in the alternative, schedule briefing on the issue of this Court's partial recusal from deciding evidentiary questions concerning media coverage surrounding the September 25, 2019 Opinion and Order of this Court and the undersigned's related collateral appeal.

Dated: January 10, 2020                                  Respectfully submitted,

By:    _/s/ David A. Joffe_
David A. Joffe, Esq. (pro se)
155 Christopher Columbus Drive
Jersey City, NJ 07302
516-695-7086
davidajoffe@gmail.com

21