```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/24/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
DAVID A. JOFFE,                                                :
                                                               :      17-CV-3392 (VEC)
                                        Plaintiff,             :
             -against-                                         :      MEMORANDUM
                                                               :      OPINION AND ORDER
KING & SPALDING LLP,                                           :
                                                               :
                                        Defendant.             :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Plaintiff David Joffe, a licensed attorney, is representing himself. Although he is entitled to some indulgence due to his *pro se* status, the level of his litigiousness is generally not seen in this Court. Joffe's current motion for reconsideration is obtuse and reflects a complete lack of any sense of proportionality.

      Amidst a historic and ongoing pandemic that has killed over 120,000 Americans within the span of a few months and continues to spread like wildfire, Joffe demands that non-party witnesses be deposed in-person rather than via video conference, even though their testimony is unlikely to be central to the case. According to his motion for reconsideration, Joffe's powers of observation allow him to detect lies based on a witness's eye movements—but not if the witness's face is "beamed" through a camera. *See* Joffe Br. (Dkt. 240) at 21. In fact, direct eye contact is purportedly so paramount that Joffe would prefer to interrogate masked and socially distanced witnesses in-person than to observe each witness's unobstructed facial expressions up-close via video conference. As detailed below, the Court sees no reason to increase the danger to the health of the non-party witnesses by requiring in-person depositions and rejects this latest tomfoolery.

**BACKGROUND**

This action concerns Joffe's claim that he was terminated in retaliation for raising ethical concerns while an associate at Defendant King & Spalding LLP ("K&S"); K&S maintains that Joffe was fired for poor performance. The facts pertinent to Joffe's pending motion are not in dispute.

According to their joint pre-trial submissions, the parties contemplate calling a total of 10 current or former K&S partners to testify, primarily concerning Joffe's performance, the firm's employment practices and policies, and the decision to terminate Joffe. Dkt. 224 at 4–8. Two of the former partners are Meredith Moss and David Fine; like the other K&S witnesses, they are expected to testify about Joffe's performance at K&S, his removal from partnership track, or his eventual termination.[1]  *Id.* at 7–8; Dkt. 235 at 1.

On March 4, 2020, Joffe sought leave to file a motion *in limine* (after the original deadline) to preclude Moss and Fine from testifying because K&S had failed to disclose them as potential witnesses as required by Rule 26 of the Federal Rules of Civil Procedure. Dkt. 222. The Court denied that motion because, in contrast to K&S's thorough explanation, Joffe had not provided any reason to believe that the non-disclosure was prejudicial, given that Joffe had worked with both Moss and Fine and therefore knew that both could have relevant testimony about his performance. Dkt. 223. Additionally, Moss and Fine had both been mentioned as persons with relevant knowledge at various points during discovery, including in K&S's interrogatory responses. *Id*.

---

[1]  Given the lengthy list of K&S partners proposed as trial witnesses, neither Moss nor Fine is certain to testify at trial, as the Court will determine during the final pretrial conference whether Moss or Fine have non-cumulative testimony. During the scheduled discovery period in this case, Joffe did not depose either.

After the Court's denial, Joffe filed a second motion for the same relief, which was an improper motion for reconsideration after failing to raise his arguments in the original submission. *See* Dkt. 226. The Court would have denied Joffe's motion but for the COVID-19 pandemic, which prompted the Court to hold a teleconference to reset the trial schedule. Hearing Tr. (Mar. 17, 2020) (Dkt. 231). Because the trial was adjourned from April 20 to July 20, 2020, there was ample time for Joffe to depose Moss and Fine, which would eliminate any possibility of prejudice from K&S's late disclosure. Dkt. 230. The Court ordered that the depositions be completed by May 15, 2020. *Id.* Due to continuing pandemic conditions, the parties requested an extension to May 29, 2020, which the Court granted with the caveat that, should the pandemic conditions persist, the parties should consider remote depositions.[2] Dkt. 233.

On May 7, 2020, Joffe and defense counsel informed the Court that they had reached an impasse on whether the depositions should be taken remotely. Dkt. 235. In that same letter, counsel for K&S, Proskauer Rose LLP ("Proskauer"), indicated that although neither Moss nor Fine is currently affiliated with K&S, it was now representing both witnesses and had agreed to accept service as their counsel. *Id.* According to Proskauer's letter, Moss now resides in Salt Lake City, Utah, while Fine resides in New York City. *Id.* Joffe had noticed Moss's deposition for Salt Lake City, while Fine's was to occur in Tarrytown, New York. *Id.* The Court convened a teleconference on the same day to hear argument on the appropriate format of the depositions. *Id.*

---

[2] The Court did so mindful that most attorneys would prefer in-person depositions, all other things being equal. Of course, pandemic circumstances render all other things not equal, and many cases are proceeding through discovery despite these conditions, aided by the ability to conduct remote depositions through video conferencing. Mr. Joffe is the sole litigant before this Court who has insisted on the ability to take in-person depositions, despite the health risks to all involved.

At the hearing, Joffe argued that he would like "to be able to observe the witnesses' manner and demeanor and all the things that determine credibility in the same way that the jury would at trial." Hearing Tr. (May 7, 2020) (Dkt. 236) at 3. The Court inquired into the safety precautions that Joffe had purportedly taken to protect the witnesses; he indicated that he had located conference rooms that normally could accommodate 12 people, and that the facilities were in suburban locations that had adopted cleaning and social distancing policies. *Id.* at 4–5. The size of the conference table, according to Joffe, would allow six feet of separation for only three people—that is, one person at each end of the table with one person in the middle. *Id.* The Court noted that such conference space may be inadequate, given that there were likely to be at least five individuals in attendance. *Id.* at 6. The Court further noted that, once Joffe is six feet away from the witness, the deposition might as well be taken via video. *Id.* at 7. Proskauer argued that public health guidelines discouraged unnecessary personal contact and that the maintenance of six feet of separation was insufficient to protect the witnesses' health and safety; the depositions would still require Moss and Fine to travel to and spend time inside public facilities, including public restrooms and elevators. *Id.* at 8–9. Counsel for the witnesses also noted that attendees would likely be wearing masks, which would frustrate Joffe's alleged ability to assess credibility. *Id.*

The Court, however, tabled the concerns about Joffe's proposed deposition format because the July jury trial was unlikely to occur as scheduled due to the persistent pandemic conditions. *Id.* at 10. The parties were given until July 15, 2020, to complete the depositions, in hopes that conditions might sufficiently improve over the summer as to render the dispute moot. *Id.* That proposed course of action, to which Joffe did not object, was to wait and see if the health risks eased by July—and if they did not, then Joffe would proceed via video conference

without complaint.  *Id.*  The Court, as a matter of case management, preferred then and continues to prefer now that this case be trial-ready as soon as jury trials resume in the district.  *Id.* at 12.

On June 4, the parties and the witnesses reached another impasse and filed a joint letter with the Court, reiterating their positions on remote versus in-person depositions.  Dkt. 239.  Consistent with prior practice during the pandemic and the Court's preference for resolving discovery dispute, Joffe and Proskauer submitted a letter to request a teleconference.  Moss's deposition remained noticed for Salt Lake City, although Fine's had been relocated to Bethlehem, Pennsylvania, where Plaintiff had identified a larger conferencing facility 90 miles outside of New York City.  *Id.* at 1–2.  Moss and Fine reiterated their reluctance, due to the ongoing pandemic, to spend "hours testifying in an enclosed indoor space with non-family members."  *Id.* at 1–2.  Joffe meanwhile argued that the pandemic had, in fact, eased, noting that Utah and NY are moving into the early stages of reopening.  *Id.* at 4–5.  Joffe also raised the new procedural argument that Moss and Fine should be required to file a formal motion with evidentiary support in order to object to the in-person deposition—even though the Court and all interested parties previously agreed that the only relevant question at this stage would be whether the pandemic had eased.  *Id.* at 5.

The Court declined to hold another teleconference because the letter already detailed all interested parties' respective arguments, and the Court had already heard oral argument on the relative merits of in-person and remote depositions.  *Id.* at 6.  The Court rejected Joffe's argument as to Utah's and New York's reopening efforts—the burden on witnesses is the risk of exposure and infection, which undoubtedly remains significant, notwithstanding various local and state government's decisions to loosen restrictions.  *Id.*  The Court commended Joffe's efforts to find a large conference room but explained that the maintenance of six feet of distance

5

is not the end-all-and-be-all of COVID-19 risk; depending on the environmental conditions, such as during prolonged periods of indoor exposure, six feet of distance may not be sufficient to prevent transmission. *Id.*

Joffe now moves for reconsideration on several grounds. He claims that this Court lacks subject-matter jurisdiction over the dispute because any motion to quash or modify a third-party subpoena must, pursuant to Rule 45, be filed in the district of compliance, which would be the District of Utah and the Eastern District of Pennsylvania for Moss and Fine, respectively. Joffe Br. at 12. Joffe also reiterates his argument that Moss and Fine should be required to file a formal motion with supporting affidavits in order to quash or modify the subpoena. *Id.* at 15. Joffe then argues that Moss and Fine failed to carry their burden of showing that in-person depositions would be unduly burdensome, in part because the Court erred in presuming that the attendees at the depositions would not be wearing facemasks. *Id.* at 20. Similarly, Joffe contends that this Court should not take judicial notice of COVID-19's infectiousness because the Court's conclusion is inconsistent with guidance from the Centers for Disease Control and Prevention ("CDC"); Joffe then proposes a hearing on CDC's recommendation that individuals remain six-feet apart. *Id.* at 22–23.

## DISCUSSION

A motion for "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) ("A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the

availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (citation omitted)). Reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

### 1. Subject-Matter Jurisdiction

Joffe's argument that Rule 45 deprives this Court of subject-matter jurisdiction is frivolous. Apparently recognizing that he had waived his procedural argument, Joffe claims that Rule 45's instruction that a motion to quash or modify a subpoena be filed in the district of compliance is a non-waivable jurisdictional requirement. He cites, however, no relevant authority to that effect.

As a general matter, the Federal Rules of Civil Procedure do not (and cannot) alter the subject-matter jurisdiction of the federal courts. Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts."). Subject-matter jurisdiction flows from Article III of the United States Constitution and is constrained by congressional legislation; the Federal Rules neither expand nor contract jurisdiction.[3] *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978) ("[I]t is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction."); *see also Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714, (2019) ("Because Rule 23(f)'s time limitation is found in a procedural rule, not a statute, it is properly classified as a nonjurisdictional claim-processing rule."); *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017) ("Only Congress may determine a lower

---

[3] Even in the context of congressional legislation, any intent to limit a federal court's jurisdiction must be clearly expressed—Rule 45 plainly contains no mention of subject-matter jurisdiction. *See Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1850 (2019) ("The Court has therefore stressed the distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules, which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." (citation omitted)); *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) ("We inquire whether Congress has clearly stated that the rule is jurisdictional; absent such a clear statement, we have cautioned, courts should treat the restriction as nonjurisdictional in character." (cleaned up)).

federal court's subject-matter jurisdiction."). Joffe's theory therefore rests on an elementary error.

Joffe's argument also makes little sense even within the specific context of Rule 45. Under Rule 45, which was amended in 2013, a subpoena to a non-party "must issue from the court where the action is pending." Fed. R. Civ. P. 45(a)(2). To conclude that this Court lacks authority to modify a subpoena issued in its name—when all interested parties have submitted—is, quite frankly, absurd.[4] Unsurprisingly, none of Joffe's citations supports his argument. In *Wartluft v. Protect the Hersheys' Children, Inc.*, the district court concluded that it lacked subject-matter jurisdiction over a subpoena dispute because it was neither the issuing court nor the forum of compliance. 2017 U.S. Dist. LEXIS 108128, *2 (S.D.N.Y. July 11, 2017). The remaining two cases cited by Joffe each concerned a district court's lack of jurisdiction over subpoenas issued by other courts prior to the 2013 amendment. *See In re Digital Equip. Corp.*, 949 F.2d 228, 229 (8th Cir. 1991) (appeal of District of South Dakota's ruling on subpoenas issued by District of Oregon); *KGK Jewelry LLC v. ESDNetwork*, No. 11-CV-9236, 2014 WL 1199326, at *1–2 (S.D.N.Y. Mar. 21, 2014) (finding lack of jurisdiction in the Southern District of New York over subpoenas originally issued by the Districts of Rhode Island and New Hampshire).[5]

---

[4] It may well be the case that the Court would have been required to deny any request to quash or modify the subpoena had Joffe timely raised his objection that any such motion must be filed in the district of compliance, but a mandatory dismissal does not connote a lack of subject-matter jurisdiction. *See Davis*, 139 S. Ct. at 1850 ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it. But an objection based on a mandatory claim-processing rule may be forfeited 'if the party asserting the rule waits too long to raise the point.'" (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005))).

[5] To be sure, the magistrate judge in *KGK Jewelry* appears to describe Rule 45 as conferring exclusive jurisdiction on the court for the district of compliance; the Court disagrees with that interpretation for the reasons already stated.

8

In sum, the Court is satisfied that it has subject-matter jurisdiction over this subpoena dispute, regardless of Rule 45's procedural requirements, and Joffe has failed to identify any controlling law overlooked by this Court.

### 2. Non-Party Witnesses' Lack of Formal Motion

Joffe's subject-matter jurisdiction argument notwithstanding, he does not otherwise appear to dispute that he has waived any argument that Moss and Fine were required to file a formal motion, particularly in the District of Utah or the Eastern District of Pennsylvania. *See* Joffe Br. at 11. That argument was waived once Joffe and Moss's and Fine's counsel jointly requested—on multiple occasions no less—that the Court resolve their dispute via teleconference. There is no doubt that, had the Court ruled during either of the teleconferences on this issue in Joffe's favor and directed that Moss and Fine appear for in-person depositions, Joffe would have accepted the Court's ruling, rather than demand more briefing and additional suits in other districts. That Joffe insists on formal briefing in another district only after receiving an adverse ruling from this Court smacks of forum-shopping and gamesmanship. District courts, including the undersigned on prior occasions in this case, routinely resolve discovery disputes orally or via summary orders without formal briefing when the issue is straightforward and does not warrant further time, expense, and delay. Accordingly, Moss's and Fine's failure to commence a formal petition to quash or modify Joffe's subpoenas, whether in this district or elsewhere, is not a basis to grant reconsideration.[6]

---

[6] The Court further notes that nothing in Rule 45 requires a formal motion. *See* Fed. R. Civ. P. 45(d) (allowing subpoenaed party to serve written objection as alternative to motion to quash); *Bounkhoun v. Barnes*, No. 15-CV-631A, 2019 WL 3927263, at *1 (W.D.N.Y. Aug. 20, 2019). Construing Rule 45's requirement that a motion be commenced in the district of compliance as waivable is also consistent with the procedural requirement's purpose, which is to protect the non-party's interest "in obtaining local resolution" of any subpoena-related motions. *See* Fed. R. Civ. P. 45, 2013 amend., subdiv. (f). In the context of this case, requiring Moss and Fine to commence an action to challenge Joffe's subpoenas in Pennsylvania or Utah, only to have the opportunity to consent to a transfer back to this Court under Rule 45(f) for a ruling on the merits, creates unnecessary expense and delay for everyone with no conceivable benefit. Finally, the Court notes that district courts retain "inherent power . . . to

### 3.     Undue Burden

The record before the Court adequately demonstrates that requiring Moss and Fine to appear for in-person depositions would constitute an undue burden.  To determine whether Joffe's demand for in-person testimony is unduly burdensome, the Court must weigh the importance and utility of the in-person format against the hardship imposed.  *See Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009) (describing a balancing test to determine whether undue burden exists).  Courts in this circuit are particularly sensitive to burdens imposed on non-parties.  *SEC v. Archer*, No. 16-CV-3505, 2018 WL 3424449, at *2 (S.D.N.Y. July 2, 2018) ("Within this Circuit, courts have held nonparty status to be a 'significant' factor in determining whether discovery is unduly burdensome." (citation omitted)).

As a starting point, the Court reiterates that Moss's and Fine's testimony is not likely to be central to the trial.  Hearing Tr. (Mar. 17, 2020) (Dkt. 231) ("Having gone through summary judgment briefing, I don't recall any of these people being major players in any way, shape, or form in this case.").  Joffe was also aware of both Moss and Fine from his working relationship, and he chose not to depose either one before the original close of fact discovery, despite deposing multiple other K&S partners.  The Court also cannot ignore that Moss and Fine are merely two out of ten K&S partners who may testify at trial on substantially the same topics—the possibility of cumulative testimony is therefore significant.  To the extent that their perceptions of Joffe were central to the firm's decision to remove Joffe from partnership track

---

protect anyone from oppressive use of process."  *See Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, 606 (D.D.C 1969); *see also Newmark v. Abeel*, 106 F. Supp. 758, 759 (S.D.N.Y. 1952) (explaining that district court "has inherent power to take appropriate steps to protect against" misuse of subpoena process).

and ultimately terminate him, that fact almost certainly would have emerged from the depositions of the other partners at K&S.

The likely marginal utility of Moss's and Fine's testimony is further eroded by the limitations created by Joffe's proposed deposition format. Joffe has made two arguments as to why an in-person deposition is critical: he wants to observe the witnesses' demeanor to assess credibility, and he wants to question them in a setting similar to trial. In the Court's prior order, the Court assumed—in Joffe's favor—that the witnesses would not be wearing masks during their depositions, due to his professed desire to be able to observe their demeanor. Joffe now says that the witnesses may wear masks during the depositions, which would literally obstruct Joffe's view of their demeanor. Compounding the mask-wearing is the fact that the witnesses would be sitting at least six feet away from Joffe, which further interferes with his opportunity for careful observation. While the Court does accord some deference to Joffe's personal experience and preferred method of examination (and his professed interest in monitoring eye-contact with the witnesses), there can be no question that mask-wearing and distancing significantly diminish the value of in-person testimony and substantially close the gap between in-person and video depositions. Moreover, if the witnesses were to wear masks during the depositions, Joffe would lose the ability to approximate the trial experience; the Court is highly unlikely to allow trial witnesses to testify in court with a face covering.

Given the minimal utility of the in-person format, the non-party witnesses' obligation to show undue burden is accordingly reduced. *See Kirschner v. Klemons*, No. 99-CV-4828, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) ("A subpoena that pursues material with little apparent or likely relevance to the subject matter, however, is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." (citation omitted)).

While an affidavit as to burden is generally required and could provide further support for a modification of Joffe's subpoenas, the undisputed facts before the Court make further inquiry unnecessary.

Based on the record before the Court, in-person depositions pose a significantly greater risk of COVID-19 transmission than a remote deposition.[7]  Here, the in-person depositions would require multiple individuals residing in different parts of the country to travel—including by air—and to then congregate and converse in an indoor setting for several hours before dispersing back to their homes and families.  Joffe is based in New Jersey, while the attorneys who will be defending the depositions are based in New York.  The depositions are noticed for Salt Lake City, Utah and Bethlehem, Pennsylvania.  While Joffe may be willing to risk infection aboard a domestic flight to Utah or travel 90 miles to Bethlehem during these pandemic conditions, the non-party witnesses are understandably wary of being exposed to COVID-19 by Joffe, their attorneys, the court reporter, or others with whom they may have contact during the process of going to or from the deposition.  Joffe contends that Proskauer need not be in physical attendance if Moss and Fine are genuinely concerned about their health.  Joffe Br. at 25.  With due respect to Joffe's proposed solution, forcing witnesses to choose between their health and their attorney being on an equal footing with Joffe is itself a burden.

As explained in the Court's memo endorsement, the Court disagrees with Joffe's suggestion that the partial reopening of the economy means that the witnesses no longer face

---

[7]  Courts in this circuit have been cognizant of the risks of in-person testimony and have encouraged remote depositions as a matter of course.  *See Astor Chocolate Corp. v. Elite Gold Ltd.*, No. 18-CV-11913, 2020 WL 2130680, at *12 n.8 (S.D.N.Y. May 5, 2020) ("The Court expects that, given the challenges presented by the current COVID-19 pandemic, such deposition likely will be conducted remotely; and that counsel will collegially agree on the mechanics of a deposition without the need for Court intervention."); *see also City of Almaty, Kazakhstan v. Sater*, No. 19-CV-2645, 2020 WL 2765084, at *3 (S.D.N.Y. May 28, 2020) ("To the extent there are concerns about safety amid the COVID-19 pandemic, this Court already has encouraged the taking of depositions remotely by video.").

health risks. Whether to reopen the economy and to loosen the related public health restrictions is a complex policy decision that is not guided solely by health and safety considerations. The Court does not purport to judge the wisdom of state and local governments' reopening decisions. What remains clear is that the unique health risks posed by COVID-19 are as present today as they were in May: it is a potentially fatal illness with the ability to spread through asymptomatic or pre-symptomatic carriers, with no approved cure, treatment, or vaccine, and unlike in other countries, new cases here are plateauing (or, in some areas, rising) rather than plummeting.[8] While the Court acknowledges that cases in New York have declined significantly, both of the proposed depositions contemplate interstate travel, and the Court is not aware of any suggestion from New York authorities that residents should not continue to minimize in-person, indoor contact and unnecessary travel.

Joffe's argument that the Court erred in taking judicial notice of basic facts about COVID-19's spread is misplaced. Since the onset of the pandemic, courts in this circuit have routinely taken judicial notice of the likely risks and severity of COVID-19 and the potential efficacy of mitigation measures.[9] In its memo endorsement, the Court cited to an academic article for the uncontroversial proposition that the minimum distance to prevent transmission of COVID-19 may vary depending on environmental conditions—and that the oft-repeated six-feet

---

[8] Joffe contends that the Court should allow further inquiry into Moss's and Fine's individualized circumstances, perhaps by examining their health conditions and social distancing practices or that of their families. Such an inquiry is unnecessary because, even if the witnesses or their families are neither elderly nor have comorbidities, the Court would nonetheless conclude that the increased risk of contracting COVID-19 from an in-person deposition is sufficient to outweigh the limited utility that Joffe would derive from his proposed in-person questioning. There is no doubt that COVID-19 is potentially a serious illness even for young people without underlying conditions. Probing Moss's and Fine's daily habits also bears little relation to the increased risk of COVID-19 transmission posed by in-person depositions.

[9] *See, e.g.*, *United States v. Williams-Bethea*, No. 18-CR-78, 2020 WL 2848098, at *4 (S.D.N.Y. June 2, 2020); *Graham v. Decker*, No. 20-CV-2423, 2020 WL 1847568, at *4 (S.D.N.Y. Apr. 13, 2020); *Basank v. Decker*, No. 20-CV-2518, 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2020); *United States v. Gileno*, No. 19-CR-161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020).

rule may not be sufficient in a high-risk environment, such as an indoor setting with prolonged exposure.[10] Joffe claims that the proposition is not suitable for judicial notice because it contradicts the CDC, whose "gold-standard" publications *are* appropriate for judicial notice. Joffe Br. at 22. The critical flaw in his argument is that the Court's observation is consistent with and follows from CDC guidelines. CDC guidelines do not suggest that the coronavirus magically decomposes or hits an invisible wall after traveling six feet in the air. Rather, the CDC has made clear that a distance of six feet is the *minimum* requirement, that greater separation reduces risk of transmission further, and that risk of infection increases with prolonged indoor interaction.[11] In other words, even if the Court agreed not to take judicial notice of the *Science* article and instead relied purely on CDC guidance (to which Joffe has no objection), the Court would reach the same conclusion: Joffe's proposed social distancing does not guarantee a safe deposition environment.[12]

In sum, the Court concludes that the record adequately demonstrates that in-person depositions of Moss and Fine—deposition which would not have been allowed at all but for the pandemic-related adjournment of trial—would impose an undue burden during these

---

[10] Dkt. 239 (citing Kimberly A. Prather et al., *Reducing transmission of SARS-CoV-2*, Science (May 27, 2020) ("Increasing evidence for SARS-CoV-2 suggests the 6 ft CDC recommendation is likely not enough under many indoor conditions where aerosols can remain airborne for hours, accumulate over time, and follow air flows over distances further than 6 ft."), https://science.sciencemag.org/content/early/2020/06/02/science.abc6197.1.).

[11] "To practice social or physical distancing stay *at least* 6 feet (about 2 arms' length) from other people." *Social Distancing*, Ctrs. for Disease Control and Prevention (May 6, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (emphasis added). "In general, the more closely you interact with others and the longer that interaction, the higher the risk of COVID-19 spread . . . . Indoor spaces are more risky than outdoor spaces where it might be harder to keep people apart and there's less ventilation." *Deciding to Go Out*, Ctrs. for Disease Control and Prevention (June 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/deciding-to-go-out.html.

[12] The Court further notes that it need not accept the truth of the *Science* article in order to judicially notice the fact that public health guidelines are rapidly shifting in response to the new virus, and that the efficacy of Joffe's preventative measures is far from certain. *See Gileno*, 2020 WL 1307108, at *4 ("The Court takes judicial notice of the fact that public health recommendations are rapidly changing.").

extraordinary times.[13] The Court finds no legal or factual error or new evidence that would compel a different conclusion on reconsideration.

## CONCLUSION

For the foregoing reasons, Joffe's motion for reconsideration is denied. The Clerk of Court is respectfully directed to terminate the pending motions at docket entries 226 and 240. All interested parties are directed to proceed with the depositions of Moss and Fine via video conference no later than July 15, 2020.

**SO ORDERED.**

**Date: June 24, 2020**  **VALERIE CAPRONI**
**New York, New York**  **United States District Judge**

---

[13] Joffe also makes the perplexing argument that in-person testimony is appropriate because Rod Rosenstein testified in person before Congress and because Chief Judge McMahon is willing to preside over a bench trial in July. Joffe Br. at 19–20. As should be obvious from the above discussion, the Court does not view these depositions as having comparable importance to Senate oversight of the Department of Justice. Similarly, Judge McMahon's magnanimity and willingness to undertake a risk in order to ensure the efficient functioning of her courtroom do not mean that non-party witnesses are to be held to the same standard. Joffe Br. at 19. Indeed, Joffe's discussion of Judge McMahon's trial procedures is misleading and omits that Judge McMahon's bench trial is "all remote"—in that all witnesses are testifying virtually and counsel's presence is entirely optional. *See* Trial Procedures, *Ferring Pharmaceuticals Inc. v. Serenity Pharmaceuticals, LLC*, No. 17-CV-9922, Dkt. 690 (S.D.N.Y. May 27, 2020).