PROSKAUER ROSE LLP
Joseph Baumgarten
Pinchos Goldberg
Eleven Times Square
New York, New York 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
jbaumgarten@proskauer.com
pgoldberg@proskauer.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X
DAVID A. JOFFE,
                Plaintiff,

        -- against --

KING & SPALDING LLP,
                Defendant.
------------------------------------------------------------ X

Civil Action No.: 17-cv-03392
(VEC)(SDA)

**DEFENDANT'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**REGARDING PLAINTIFF'S ERISA CLAIM**

Pursuant to Section 8(C)(ii) of this Court's Individual Practices in Civil Cases, Defendant King & Spalding LLP ("K&S," "the Firm" or "Defendant") respectfully submits the following Proposed Findings of Fact and Conclusions of Law regarding Plaintiff David A. Joffe's ("Joffe") claim under Section 510 of the Employment Retirement Income Security Act, 29 U.S.C. § 1140 ("ERISA").

## [PROPOSED] FINDINGS OF FACT

1. On April 12, 2016, Joffe received a memorandum regarding his 2016 compensation. J-12; *see* Defendant's Reply to Plaintiff's Response To Defendant's Statement Of Material Facts And Statement Of Additional Material Facts Pursuant To Local Civil Rule 56.1 (Dkt. No. 64) ("56.1 Stmt.") ¶¶ 176-177.

2. The memorandum stated that Joffe would receive profit-sharing contributions to his 401(k) retirement account worth approximately $20,000, which would vest on January 1, 2017, "subject to normal vesting rules." *Id*.

3. Pursuant to those rules, Joffe's profit sharing contribution would only vest if he was still employed on January 1, 2017. P-55 at K&S_0000409-10.

4. As of September 2016, the Firm had decided to terminate Joffe's employment. 56.1 Stmt. ¶ 204.

5. On December 7, 2016, K&S partners David Tetrick and Richard Marooney met with Joffe and informed him that his employment was being terminated. 56.1 Stmt. ¶ 206.

6. At the termination meeting, Tetrick informed Joffe that, as a result of his failure to submit a business plan for three years in a row, his failure to complete a 2016 self-evaluation, and in light of the fact that enough partners would either refuse to staff Joffe or would staff him

only in limited circumstances, he did not have a future at the Firm and he would be terminated. J-23; 56.1 Stmt. ¶ 208.

7. During the December 7, 2016 termination meeting, Joffe was presented with a proposed separation agreement offering him $132,500 of severance (six months' salary) paid during an accelerated three-month period in exchange for a general release of claims. J-24; 56.1 Stmt. ¶ 209.

8. Joffe did not have any preexisting right to receive the severance payments offered in the proposed separation agreement. 56.1 Stmt. ¶ 210.

## [PROPOSED] CONCLUSIONS OF LAW

9. Section 510 of ERISA provides that "[i]t shall be unlawful for any person to discharge … a participant or beneficiary [of an employee benefit plan] … for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan … ." 29 U.S.C. § 1140.

10. "To succeed on a Section 510 claim, a plaintiff must demonstrate the employer specifically intended to interfere with benefits." *Berube v. Great Atl. & Pac. Tea Co.*, 348 F. App'x 684, 687 (2d Cir. 2009) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990)).

11. The intent to interfere with benefits must have been *the* motivating factor, as opposed to *a* motivating factor. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-77 (2009) (holding that "but-for" causation is the appropriate standard for claims made under statutes that contain words like "because of" or "by reason of"); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (same); *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1017 (2020) (same); *Perez v. Brain*, No. 11-cv-14039, 2016 WL 4059689, at *29 n.9

(C.D. Cal. July 25, 2016), *aff'd in part, vacated in part, rev'd in part sub nom. Acosta v. Brain*, 910 F.3d 502 (9th Cir. 2018) (applying "but-for" test to section Section 510 claim); *Nauman v. Abbott Labs.*, No. 04 C 7199, 2010 WL 3423132, at *2 (N.D. Ill. Apr. 22, 2010) (holding that Section 510 requires but-for causation), *aff'd*, 669 F.3d 854 (7th Cir. 2012) (finding no need to decide the issue but observing that "but-for causation is probably required" for Section 510 claims); *cf. Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 168 (2d Cir. 2017) (declining to apply "but-for" causation standard to Family and Medical Leave Act ("FMLA") retaliation claim where governing statute "is silent as to any test for causation … [and] lacks any indicia of Congress's intent to create 'but for' causation—words like 'because' or 'by reason of'").

12. The Second Circuit applies the *McDonnell Douglas* burden-shifting framework to determine intent in Section 510 cases. *See Krause v. Eihab Human Servs., Inc.*, No. 10-cv-898, 2015 WL 4645210, at *15 (E.D.N.Y. Aug. 4, 2015) (citing *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1112 (2d Cir. 1988)).

13. Under this framework, Joffe must first establish a *prima facie* case by showing that he was terminated under circumstances giving rise to an inference of discrimination. *See Dister*, 859 F.2d at 1114-15.

14. If Joffe can state a *prima facie* case, the burden shifts to K&S "to articulate—but not prove—a legitimate, non-discriminatory reason" for his termination. *Id*., 859 at 1115.

15. If K&S is able to articulate such a reason, it is then Joffe's burden to prove, by a preponderance of the evidence, that the legitimate reasons advanced by K&S are simply a pretext for discrimination. *Id*.

3

16. "It is well established in the Second Circuit that 'it is not the function of the fact-finder to second guess business decisions or to question a[n employer's] means to achieve a legitimate goal." *Bianchi v. Pratt & Whitney*, No. 09-cv-1129, 2013 WL 160352, at *7 (D. Conn. Jan. 15, 2013) (*citing Dister*, 859 F.2d at 1116) (entering judgment as a matter of law dismissing Section 510 claim after bench trial).

17. Joffe has neither established a *prima facie* case that K&S specifically intended to interfere with his ERISA benefits nor proved that the legitimate basis for the termination decision was a pretext masking a discriminatory decision.

18. First, Joffe has not offered any facts suggesting that anyone at K&S acted with the specific intent to deprive him of benefits. The fact that Tetrick was aware that Joffe's termination would result in the forfeiture of a contribution made earlier that year is not sufficient to imply specific intent to claw back that contribution as the motivating factor for Joffe's termination. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997) (no cause of action under Section 510 where the loss of benefits "was a mere consequence of, but not a motivating factor behind, a termination of employment") (citing *Dister* 859 F.2d at 1111); *Ghorpade v. MetLife, Inc.*, No. 14-cv-4379 (JPO), 2016 WL 3951183, at *8 (S.D.N.Y. July 20, 2016) (granting summary judgment for employer where plaintiff did "little more than posit that his loss of benefits was a consequence of his termination, rather than a motiving factor behind it").

19. Second, the fact that on December 7, 2016 K&S voluntarily offered Joffe $132,500 of severance pay to which he had no entitlement negates any inference that Joffe's termination prior to the January 1, 2017 vesting date was intended to save $20,000. *See Mohamed v. Sanofi-Aventis Pharm.*, No. 06-cv-1504, 2009 WL 4975260, at *19 (S.D.N.Y. Dec.

4

22, 2009) (finding no inference of intent to interfere with pension benefits where defendant "did not stand to reap substantial cost savings" by terminating the plaintiff); *Miller v. Nat'l Ass'n of Sec. Dealers, Inc.*, 703 F. Supp. 2d 230, 250 (E.D.N.Y. 2010) (holding that plaintiff failed to establish a *prima facie* case under Section 510 even though "there would have been some savings to the pension plan" where he could not show "'substantial cost savings' evincing an incentive for plaintiff's termination"); *Burger v. Litton Indus., Inc.*, No. 91-cv-0918 (WK)(AJP), 1996 WL 421449, at *18 n.15 (S.D.N.Y. Apr. 25, 1996) (granting summary judgment in favor of employer where plaintiff presented no evidence that it "was motivated to terminate her because of [the employer's] cost savings"); *Sweet v. Elec. Data Sys., Inc.*, No. 95-cv-3987 (MBM), 1996 WL 204471, at *11 (S.D.N.Y. Apr. 26, 1996) ("Plaintiff has offered nothing about … the amount EDS may have saved by letting him go … to suggest that the decision to fire him was motivated by a desire to avoid pension [] responsibilities."); *cf. Dister*, 859 F.2d at 1108 (a *prima facie* case was established where, *inter alia*, the plaintiff's discharge resulted in "substantial cost savings" of $550,000).

20.     Finally, the more than three-month gap in time between Tetrick's decision to terminate Joffe's employment in September 2016 and the vesting date for the contribution on January 1, 2017 is not sufficient to support an inference of discriminatory motive. *See Fraser v. Fiduciary Tr. Co. Int'l*, No. 04-cv-6958 (PAC), 2009 WL 2601389, at *7 (S.D.N.Y. Aug. 25, 2009), *aff'd*, 396 F. App'x 734 (2d Cir. 2010) (no inference of discrimination where plaintiff was fired one month before vesting date); *Burger*, 1996 WL 421449, at *17 (no inference of discrimination where plaintiff was terminated four months before vesting date); *Dister*, 859 F.2d at 1117 n. 1 (holding that temporal proximity alone was insufficient "to create a genuine issue of fact requiring a trial").

5

21.     Joffe has failed to meet his burden to prove by a preponderance of the evidence that K&S terminated his employment with the specific intent to deprive him of his $20,000 profit-sharing contribution or that the legitimate non-discriminatory reasons articulated by K&S for its decision were pretextual.  Accordingly, judgment should be entered in favor of K&S dismissing Joffe's claim under Section 510 of ERISA.

Dated: March 5, 2021  
      New York, New York

PROSKAUER ROSE LLP

By: */s/ Joseph Baumgarten*

Joseph Baumgarten  
Pinchos Goldberg  
Eleven Times Square  
New York, New York 10036  
(212) 969-3000  
jbaumgarten@proskauer.com  
pgoldberg@proskauer.com

*Attorneys for Defendant*