PROSKAUER ROSE LLP
Joseph Baumgarten
Pinchos Goldberg
Eleven Times Square
New York, New York 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
jbaumgarten@proskauer.com
pgoldberg@proskauer.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X
                                                           :
DAVID A. JOFFE,                                            :     Civil Action No.: 17-cv-03392 (VEC)
                                                           :
                              Plaintiff,                   :
                                                           :
            -- against --                                  :
                                                           :
KING & SPALDING LLP,                                       :
                                                           :
                              Defendant.                   :
                                                           X
---------------------------------------------------------- 

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MEMORANDUM ON DAMAGES**

## PRELIMINARY STATEMENT

Despite the Court's clear admonition not to do so, Joffe again argues that he should be permitted to ask the jury to award damages based on calculations prepared by Kristin Kucsma, and seeks to reopen the record to allow Kucsma to testify. In doing so, he disregards the following:

(1)     The Court has already precluded Kucsma's testimony;[1]

(2)     Kucsma's calculations (P-197) were not admitted into evidence;[2] and

(3)     The Court informed the parties during the November 23, 2021 telephonic conference that "the only issue" to brief "is what is the evidence in the record."[3] The Court could not have been more clear that it would not reopen the record: "I'm not reopening the factual record for you to call more witnesses, so it is solely what is in the record and whatever legal basis you have for an argument that arguing whatever it is you want to argue is not totally speculative."[4] Joffe assented to that admonition with a simple "OK."[5] Nevertheless, on the eve of the closing argument, Joffe again[6] seeks to reopen the record.

Joffe cannot make argument to the jury based on Kucsma's calculations and he has not identified any other basis to argue that he can recover damages based on partner or counsel compensation at K&S or any other firm. Indeed, he has completely failed to take the Court up on its

---

[1] Trial Tr. 1397:4 – 1398:16.

[2] Trial Tr. 1594:25 – 1595:3.

[3] Trial Tr. 1614:22-23.

[4] Trial Tr. 1614:23 – 1615:2; *see also* 1586:2-3 ("THE COURT: It would not be for new testimony. It would just be for what you're permitted to argue.").

[5] Trial Tr. 1615:3.

[6] Trial Tr. 1477:15-16 ("THE COURT: You're rearguing. I'm not doing it any more.").

invitation to make an argument (based on evidence in the record) that would support such a damages theory.

The record supports only one measure of damages.  In the event he obtains a favorable verdict on liability, Joffe should be permitted to argue to the jury only that he should be awarded damages calculated based on his compensation as an associate prior to his termination, minus interim earnings.[7]  This measure is typical in employment cases (including breach of contract cases) – and it has been recognized as the appropriate measure of damages in the only available *Wieder* decision discussing the issue.  In <u>this</u> case, moreover, any measure that goes beyond that formulation (*i.e.*, any measure of damages that assumes that Joffe would have been promoted to partner or counsel but for his termination and then been paid compensation on some basis not discernable from the record) would be speculative for multiple reasons, including the reasons that formed the basis of the decision to exclude Kucsma's testimony.  While using associate compensation may produce a damages figure that Joffe considers modest, it is the only appropriate basis, based on the evidence in the record, on which a jury could award damages that are not speculative.

## ARGUMENT

### I.    LEGAL STANDARD.

Under New York law, damages for breach of an employment contract "may not be merely speculative, possible or imaginary, but must be reasonably certain."  *Adler v. SPI Solar, Inc.*, 391 F. Supp. 3d 303, 307 (S.D.N.Y. 2019) (quoting *Kenford Co. v. Erie Cty.*, 67 N.Y.2d 257, 261 (1986)).

---

[7] K&S will argue that Joffe failed to take reasonable steps to mitigate his damages and that the termination ceased to be the proximate cause of Joffe's damages by virtue of his own behavior and his decision to remove himself from the job market for full-time employment for two years.

## II.   JOFFE'S PROPOSED DAMAGES LACK ANY EVIDENTIARY SUPPORT.

### A.   The Measure of Joffe's Damages Must Be Based on His Compensation As An Associate.

Joffe has not even attempted to articulate a basis <u>in the record</u> that would permit the jury to award damages as if he had become a partner or counsel.  While that is reason enough to limit what he can argue to the jury, we again note that, as a matter of law, he would not be permitted to pursue any such theory.

This is a breach of contract case.  *See Wieder v. Skala*, 80 N.Y.2d 628, 638 (1992) (recognizing "claim for **breach of contract** based on an implied-in-law obligation") (emphasis added); *see also Wieder v. Skala*, 272 A.D.2d 58, 59 (1st Dep't 2000) (holding that punitive damages are not available on a *Wieder* claim because such a claim arises in contract rather than tort).  To recover contract damages based on partner compensation, therefore, Joffe would have to establish that he had entered into an agreement with K&S to become a partner.  However, the Court of Appeals did not recognize any such contract in *Wieder*.  Rather, the terms of Joffe's implied-in-law contract with K&S provide only that K&S would not prevent him from complying with the "ethical standards of the profession."  *Wieder*, 80 N.Y.2d at 638.

In *Connolly v. Napoli, Kaiser & Bern, LLP*, No. 105224/05, 2013 WL 180933 (Sup. Ct. N.Y. Cty. Jan. 07, 2013)—the only case of which we are aware that discussed the measure of damages in a *Wieder* case—the court confirmed that "[t]he measure of damages for such a claim would be akin to that applied to cases for termination of a contract of employment for a definite term."  The court held that under this standard, a *Wieder* plaintiff "is potentially entitled to recover the difference between his salary had he continued at the defendant law firm less the amount he earned after the termination of his employment."  *Id.  See also Ohanian v. Avis Rent A Car Sys., Inc.*, 779 F.2d 101, 110 (2d Cir. 1985) (measuring contract damages for wrongful discharge by the

amount employee would have received through "natural end" of term of employment minus earnings from other employment).

Accordingly, the appropriate measure of Joffe's damages is the compensation he would have continued to be paid during the remainder of his expected tenure as an associate at K&S, reduced by the income he has earned, or could have earned with reasonable diligence. The evidence shows that Joffe's salary at the time of his termination was $265,000,[8] and, as an eighth year associate, the expected term of his employment at K&S was unlikely to continue for an indefinite period.[9] In fact, Joffe himself correctly acknowledges in his memorandum (at p. 8) that "the record contains no evidence that 'a permanent senior associate position even exists at K&S.'" (citation omitted.) Thus, allowing Joffe to claim back pay for the period 2017 through the date of trial is (indeed, it probably exceeds) the outer limit of what period is appropriate. The jury should be instructed that it cannot award "front pay" damages. *See Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 577 (S.D.N.Y. 2011) ("[A]n award of front pay cannot be unduly speculative.") (quoting *Dunlap–McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992)); *Press v. Concord Mortg. Corp.*, No. 08 CIV. 09497 KTD, 2010 WL 3199684, at *2 (S.D.N.Y. Aug. 11, 2010) (denying any award of front pay as "unduly speculative").

Joffe may be disappointed that he cannot ask the jury to award him tens of millions of dollars, but Joffe's own unrealistic expectations cannot provide the basis to allow him to seek damages that the law – and the record – will not support.

---

[8] *See* Joint Exhibit 12 (April 12, 2016 memorandum).

[9] *See* Trial Tr. 1159:13-21 (Lisa Keyes testimony that associates are typically "considered for [promotion to] partner after nine or ten years of experience); 1160:24-1161:6 (Lisa Keyes testimony that K&S does not have a practice of employing "career associates" except in "very rare" situations where an associate was "super specialized"); 1170:21-24 (Lisa Keyes testimony that associates who are not promoted "mostly depart the firm"); *see also* Trial Tr. 1413:9-10 ("THE COURT: I think you have damages for the year or two that you would have had left at King & Spalding.").

**B.    Any Damages Based On Average Partner or Counsel Compensation Would Be Unduly Speculative.**

The record contains no evidence from which a reasonable jury could conclude that Joffe would have been promoted by K&S.  Nonetheless, Joffe seeks (at p. 4 of his memorandum) to resurrect the argument that a Supreme Court decision creates an entitlement to wildly speculative damages based on average partner compensation at K&S.  *See Hishon v. King & Spalding*, 467 U.S. 69 (1984).  *Hishon* concerned a Title VII discrimination claim which shares little in common with the instant breach of contract case other than the name of the defendant.  There, the plaintiff alleged—unlike Joffe's allegations in this case—that she was <u>promised</u> that she would advance to the partnership within five or six years of her hire "as a matter of course," provided that she received satisfactory evaluations, and that she "relied on th[o]se representations when she accepted employment" with the firm.  *Id.*, 467 U.S. at 72.  Accordingly, the Court held that the plaintiff's allegation "that respondent made a contract to consider her for partnership" was sufficient to survive a motion to dismiss her gender discrimination claim under Title VII.  *Id.*, 467 U.S. at 74.  The Court said nothing, however, about the measure of damages available to the plaintiff or about the quantum of evidence that would be required to support a damages claim based on partnership compensation.

*Hishon* has no bearing here because Joffe—unlike the plaintiff in *Hishon*—has never alleged that he was promised that he would eventually make partner as a matter of course.  On the contrary, Joffe testified that he understood that there was no guarantee that he would make partner and that "[i]t's very competitive and it is not easy to get."  Trial Tr. 59:15-16.

In any event, even if damages based on an assumption of promotion to partner or counsel in the "but for" world were theoretically available under *Wieder*—which they are not—any such damages award here would be riddled with speculation and guesswork about the future, including:

(i) <u>whether</u> Joffe would have been promoted; (ii) <u>which job</u> Joffe would have been promoted to (*i.e.*, counsel, non-equity partner, or eventually equity partner); (iii) <u>when</u> Joffe would have been promoted to any of those positions; (iv) <u>how much</u> Joffe would have earned in each such position; and (v) <u>how long</u> Joffe would have remained in each such position. Joffe's memorandum offers no explanation as to how those gaps in the record could appropriately be filled.

Indeed, as Joffe acknowledged, even if he had remained on the partnership track and been considered for partnership, there were "no guarantees" that he ultimately would have been promoted. Trial Tr. 59:13-16. The fact that an associate is eligible for promotion is only the first prerequisite in a multi-step promotion process. To be promoted to non-equity partner, an attorney must first be recommended by the Firm's Associate Evaluation Committee and Policy Committee.[10] Then, the equity partners in the Firm must vote on whether to elect that attorney as a non-equity partner.[11] A non-equity partner must then serve in that role for at least two years to be considered for election as an equity partner, and on average non-equity partners usually wait at least five years before they are promoted to equity partner.[12] To be promoted to equity partner, the Firm's Partners Committee must first recommend the attorney to the Policy Committee, and the Policy Committee must then recommend the attorney to the equity partnership, which then votes on whether to promote the candidate.[13] Some non-equity partners remain in that position for

---

[10] *See* Joint Exhibit 1 ("Criteria for Equity Partners, Partners, and Counsel").

[11] *Id.*

[12] *Id.*; Trial Tr. 1169:4-11 (Lisa Keyes testimony).

[13] *See* Joint Exhibit 1

their entire career, without ever becoming an equity partner.[14]  Moreover, partners sometimes leave the firm.[15]

Thus, even if Joffe had remained eligible for promotion, he had multiple hurdles to overcome before becoming a K&S partner.  The hurdles faced by Joffe would have been even more pronounced given that there is no dispute that Joffe failed to submit a practice plan in each of his final three years at Firm—a prerequisite for promotion.[16]  Given that Joffe had no existing book of business[17] and failed to submit a plan showing how he intended to generate future business, any calculation of damages based on an assumption he would have become a partner would be impermissibly speculative.

Finally, the speculative nature of such an argument is compounded by the fact that the only evidence in the record concerning partner compensation at King & Spalding is an *American Lawyer* article about <u>average</u> compensation for all (equity and non-equity) partners in 2017.[18]  The article was admitted during Kamisar's testimony to show the law firms to which Kamisar referred as the "Am Law 100."[19]  Kamisar himself did not testify that he relied on the partner compensation figures in the article informing his "expert" opinion.  Thus, as to the subject of compensation, the article consists of inadmissible hearsay.  *See Levin v. D'Ancona & Pflaum*, No. 88 C 4084, 1991

---

[14] Trial Tr. 1169:11-18 (Lisa Keyes testimony).

[15] Trial Tr. 1169:25-1170:6 (Lisa Keyes testimony regarding what partners who leave the firm tend to do).  Joffe's memorandum observes (at p. 7) that David Tetrick, Paul Straus and Lisa Keyes are long-term partners of K&S, while conveniently ignoring that two other witnesses (David Fine and Meredith Moss) are former K&S partners who left the Firm to take in-house positions.  Trial Tr. 1309:18-1310:8 (David Fine joined KPMG after serving as a K&S partner for about nine and a half years); Meredith Moss Deposition Designation 9:20-25, 12:13

[16] Trial Tr. 1177:10-13 (Lisa Keyes testimony:  "Q. Has the firm ever promoted an associate who had not submitted a practice plan during the year in which they were eligible for promotion?  A. No, we would not.").

[17] Trial Tr. 632:15-16 (Joffe testimony:  "when I was fired from King & Spalding I did not have a portable book of business").

[18] *See* P-131.

[19] Trial Tr. 804:9-805:16 (Gordon Kamisar testimony).

WL 134186, at *3 (N.D. Ill. July 16, 1991 (excluding "The American Lawyer Survey of the Top 100 Law Firms'…[because] [t]he exhibit constitutes hearsay evidence").

Even assuming this article were admissible, there is no evidence from which a jury could reasonably determine when, if ever, Joffe would begin earning average compensation as a partner. Moreover, the record contains no evidence at all as to K&S compensation (average or otherwise) paid to counsel.[20]

## III.    EXHIBITS THAT SHOULD BE EXCLUDED FROM JURY DELIBERATIONS ON LIABILITY.

Pursuant to the Court's November 23, 2021 Order (Dkt. 329), K&S submits that the following exhibits should be excluded from jury deliberations on liability:

- P-65
- P-131
- P-133
- P-187

Joffe did not include any list of exhibits in his memorandum. Instead, he emailed the following list to us earlier today:

- D-75
- D-87
- D-100
- D-106
- D-110
- D-111
- D-112

---

[20] Joffe's contention that K&S "stonewalled" his attempt to obtain discovery has already been rejected by the Court. *See* Trial Tr. 1395:16 – 1396:16, 1398:5-12. Even assuming Joffe's document requests were broad enough to cover partner and counsel compensation information, Joffe (who has not otherwise hesitated to litigate the same issues over and over) never moved to compel the production of such information. Indeed, he never even sent defendant a deficiency letter or otherwise made any attempt to pursue discovery on this subject.

- D-113
- D-114
- D-115
- D-119
- D-121
- D-143
- D-144
- J-25
- J-26
- J-27

K&S does not object to excluding from jury deliberations on liability any of the exhibits identified by Joffe.

## **CONCLUSION**

For the foregoing reasons, the Court should reject Joffe's request to reopen the record.

Dated: November 28, 2021          PROSKAUER ROSE LLP
        New York, New York

                                  By: /s/ Joseph Baumgarten

                                  Joseph Baumgarten
                                  Pinchos Goldberg
                                  Eleven Times Square
                                  New York, New York 10036
                                  (212) 969-3000
                                  jbaumgarten@proskauer.com
                                  pgoldberg@proskauer.com

                                  *Attorneys for Defendant*