USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/10/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
DAVID A. JOFFE, :
:
                      Plaintiff, :
: 17-CV-3392 (VEC)
          -against- :
: OPINION
KING & SPALDING LLP, :
:
                  Defendant. :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

      Jury service is a civic duty and, while it can be inconvenient, it need not increase the risk of being exposed to a deadly disease.[1] Beginning in fall 2020, the U.S. District Court for the Southern District of New York implemented a number of safety protocols so that jury trials could resume, even before a vaccine was widely available. Those protocols were highly effective,[2] but they came at the cost of limitations on the number of trials that could be held simultaneously. In advance of a recent civil jury trial that had been designated as a pilot to test some new protocols, the Court proposed to the parties that unvaccinated potential jurors be excluded for cause. *See* Final Pretrial Conf. Tr., Dkt. 312 at 10. Plaintiff objected, and the Court overruled his objection. *Id.* at 43–45. This Opinion more fully explains the rationale for the Court's decision.

---

[1]     Judge Kuntz of the Eastern District of New York expressed a similar sentiment in a criminal matter. *See United States v. Elder*, 18-CR-92, 2021 WL 4137533 at *1 (E.D.N.Y. Sept. 3, 2021) ("The Constitution accords defendants many a right: the right to infect 16 innocent jurors with COVID-19, however, is not among them.") (denying defense counsel's request that the Court empanel both vaccinated and unvaccinated jurors in a criminal trial).

[2]     To the knowledge of the Undersigned, there have been no COVID-19 infections that have been traced back to participation in a jury trial in the Southern District of New York.

## BACKGROUND

On May 8, 2017, David Joffe sued his former law firm, King & Spalding LLP ("King & Spalding"), contending that King & Spalding unlawfully retaliated against him for reporting suspected unethical conduct by partners of the firm. After many adjournments necessitated by the COVID-19 pandemic, a jury trial on Joffe's state law claims[3] was scheduled to begin with jury selection on November 9, 2021.[4] The Southern District of New York has been conducting jury trials since September 29, 2020, but only in courtrooms that have been modified to provide six feet of social distance for all participants, including all jurors. In an effort to pilot changes in protocols in order to accommodate more trials, the *Joffe* trial was slated to be held in a regular courtroom, unmodified other than to provide jurors and other participants with at least three feet of social distance.[5] If an unvaccinated juror were to be selected, that juror's social distance would have been expanded to six feet; the Undersigned's courtroom could not have accommodated more than two unvaccinated jurors.

New York City was an early epicenter of the pandemic in the United States[6] and continues to have a high incidence of COVID-19 cases.[7] The virus has taken a devastating toll

---

[3] Joffe brought two claims: a New York state common law claim under *Wieder v. Skala*, 80 N.Y.2d 628 (1992), and a claim for wrongful discharge under Section 510 of ERISA, 29 U.S.C. § 1140. Compl., Dkt. 1. The *Wieder* claim was heard by a jury, and the parties stipulated that the ERISA claim would be decided by the Court. *See* Letter, Dkt. 258.

[4] *See* Orders, Dkts. 230, 238, 260, 273.

[5] Additionally, based on air flow tests of the courtroom, a plexiglass shield was erected between the witness stand and the bench.

[6] Ctrs. for Disease Control and Prevention, *COVID-19 Outbreak — New York City, February 29–June 1, 2020* (Nov. 20, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6946a2.htm.

[7] *See* N.Y. Times, *Tracking Coronavirus in New York City, N.Y.*, https://www.nytimes.com/interactive/2021/us/new-york-city-new-york-covid-cases.html (lasted visited Dec. 10, 2021) (reporting a "very high risk level [of contracting COVID-19] for unvaccinated people," including a 7-day average of over 2,400 cases per day at the time of writing).

on the City — since February 2020, the City has seen over 125,000 hospitalizations and 29,000 deaths related to COVID-19.[8]  The CDC reports that all counties from which the SDNY draws its jurors continue to have a high level of community transmission.[9]

Vaccines have, however, ushered in a new era.  Vaccines are highly effective at protecting individuals from infection, hospitalization, and death from COVID-19.[10]  According to the New York State Department of Health, as compared to those who are unvaccinated, fully-vaccinated individuals are at least 78% less likely to contract the virus, and are at least 89% less likely to be hospitalized from an infection.[11]  Vaccines are now widely available to everyone over the age of 5 at no cost.[12]  As of December 10, 2021, 82% of New York City residents aged 18 and over are fully vaccinated.[13]

While fully vaccinated people have experienced so-called "breakthrough" infections, unvaccinated individuals are significantly more likely to contract COVID-19 and to spread it to others.  *See* Ctrs. for Disease Control and Prevention, *Delta Variant: What We Know About the Science*, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html/ (last visited Dec. 10, 2021) ("The Delta variant is highly contagious, more than 2x as contagious as previous

---

[8]  N.Y.C. Dep't of Health and Mental Hygiene, *COVID-19: Data*, https://www1.nyc.gov/site/doh/covid/covid-19-data.page (last visited Dec. 10, 2021).

[9]  *See* Ctrs. for Disease Control and Prevention, *COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker/ (last visited Dec. 10, 2021).

[10]  *See* Ctrs. for Disease Control and Prevention, *Science Brief: COVID-19 Vaccines and Vaccination*, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html (last visited Dec. 10, 2021).

[11]  N.Y. State Dep't of Health, *COVID-19 Breakthrough Data*, https://coronavirus.health.ny.gov/covid-19-breakthrough-data (last visited Dec. 10, 2021).

[12]  Ctrs. for Disease Control and Prevention, *Key Things to Know About COVID-19 Vaccines*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html (last visited Dec. 10, 2021).

[13]  N.Y.C. Dep't of Health and Mental Hygiene, *COVID-19: Data*, https://www1.nyc.gov/site/doh/covid/covid-19-data.page (last visited Dec. 10, 2021).

variants . . . . The greatest risk of transmission is among unvaccinated people who are much more likely to get infected, and therefore transmit the virus."). The unvaccinated are at a particularly acute risk given the emergence of new, more contagious variants in the United States, including the Delta variant.[14]

To accommodate the unique health risks posed by the pandemic, SDNY Courthouses, including the Thurgood Marshall Courthouse where the trial in this case took place, have implemented protocols to vet those who enter based on current symptoms and possible exposure to COVID-19. Chief among those protocols is that all persons who enter the Courthouse must fill out a questionnaire and have their temperatures checked in order to receive permission to enter. The only persons who can by-pass those checks are Courthouse staff who have been fully vaccinated.[15]

Despite the robust procedures in place at SDNY Courthouses, the Court concluded that excluding unvaccinated persons as jurors would increase the likelihood that all trial participants (including the jury) would be safe and would minimize the probability that the trial would be interrupted by a juror testing positive for COVID-19 during the trial. Accordingly, on November 2, 2021, at the final pretrial conference, the Court proposed to the parties that unvaccinated potential jurors be excluded from serving pursuant to 28 U.S.C. § 1866(c). Final Pretrial Conf.

---

[14] The Delta variant is currently the predominant variant in the United States. *See* Ctrs. for Disease Control and Prevention, *Delta Variant: What We Know About the Science*, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html/ (last visited Dec. 10, 2021). Although unknown to the Court at the time of the *Joffe* trial, the Omicron variant has also been reported in New York and across the United States. *See* Ctrs. for Disease Control and Prevention, *Omicron Variant: What You Need to Know*, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last visited Dec. 10, 2021). Although health officials are continuing to monitor the Omicron variant, the science is clear — vaccines and masks remain the best public health measures to protect individuals against COVID-19. *Id.*

[15] For additional information about Courthouse entry rules and COVID procedures, *see* U.S. District Court for the Southern District of New York, *Response to COVID-19 (Coronavirus)*, https://www.nysd.uscourts.gov/covid-19-coronavirus.

Tr. at 10. After providing the parties with a break to consider the proposal, the Court gave the parties the opportunity to be heard. *Id.* at 11. Joffe objected;[16] King & Spalding did not. *Id.* at 43–45. The Court overruled Joffe's objection. *See id.* at 44–45 ("I think for interest of justice, all of this is going to go smoother if we only have a vaccinated jury. It's safer for the other jurors if everybody is vaccinated. And therefore your objection is overruled.").

Jury selection was held on November 9, 2021.[17] Only one potential juror stated that she was unvaccinated and was excused on that basis.[18] The trial was held from November 15 to 29, 2021, and the jury ultimately returned a verdict for King & Spalding on Joffe's state law claim.[19] *See* Verdict Sheet, Dkt. 334.

---

[16] The basis of Joffe's objection is unclear. At the final pre-trial conference, Joffe initially stated that he did not have an objection, in principle, to the Court's proposal. *See* Final Pretrial Conf. Tr., Dkt. 312 at 10; *id.* ("[O]n first impression that sounds perfectly fine to me."). After being given time to think about it, Joffe objected to the exclusion of unvaccinated potential jurors. He explained that one of the Defense exhibits was a media article from June 2020, covering the Court's denial of Joffe's request to conduct in person depositions of two former King & Spalding employees at a time when COVID-19 was running rampant and there was neither a vaccine nor widely-available effective therapeutics. *See* Def. Ex. 117, Lauren Berg, *Ex-BigLaw Atty's In-Person Depo Bid Tossed as 'Tomfoolery,'* Law360 (June 24, 2020, 9:35 PM), https://www.law360.com/articles/1286550 (quoting Order, Dkt. 243 ("[T]he Court sees no reason to increase the danger to the health of the non-party witnesses by requiring in-person depositions and rejects this latest tomfoolery.")). At the final pretrial conference, Joffe explained: "[i]f it's an all-vaccinated jury, I could see it would have a stronger opinion about Your Honor's opinion calling me out on tomfoolery . . ." Final Pretrial Conf. Tr. at 44. Unrelated to the issue of vaccination, the Court excluded that exhibit the next day pursuant to Rule 403 of the Federal Rules of Evidence. *See* Order, Dkt. 291 at 1–2.

Despite the fact that Joffe's purported basis for his objection had become moot, Joffe renewed his objection to excluding unvaccinated potential jurors the morning of jury selection. *See* Pretrial Conf. Tr., Dkt. 352 at 5 ("I would like to respectfully renew my objection to striking unvaccinated jurors for cause. I believe that doesn't constitute cause, and if a fair-minded — if a juror is unvaccinated but willing to be — serve and be impartial, I believe they should serve on the jury. I would like to renew that for the record.").

[17] Jury selection was conducted by Magistrate Judge Aaron. *See* Order of Reference, Dkt. 290.

[18] As part of *voir dire*, all potential jurors were asked whether they were fully vaccinated against COVID-19. As discussed with the parties in advance of jury selection, the process used was as follows: when a potential juror stated that he or she was unvaccinated, the juror was not immediately excused (as is the norm when a potential juror is struck for cause), but was not considered a "qualified juror" for purposes of peremptory strikes. After the attorneys exercised their peremptory strikes, the unvaccinated potential juror and the qualified jurors against whom peremptory strikes were exercised were all excused. Through the use of that procedure, neither the unvaccinated potential juror nor the rest of the venire knew that being unvaccinated was grounds to be excused. *See* Final Pretrial Conf. Tr. at 13–14; Pretrial Conf. Tr., Dkt. 352 at 4.

[19] Joffe's ERISA claim remains pending. *See* Order, Dkt. 335 (ordering Joffe to show cause why judgment should not be entered in King & Spalding's favor on his ERISA claim given the record developed at trial).

## DISCUSSION

### I.   Unvaccinated Jurors Are Likely to Disrupt the Proceedings

Pursuant to the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 *et seq.* (the "JSSA"), any person summoned for jury service may be "excluded by the court on the ground that . . . his service as a juror would be likely to disrupt the proceedings." 28 U.S.C. § 1866(c).[20] In October 2021, Chief Judge Wolford of the Western District of New York held that she would exclude for cause any unvaccinated potential juror when selecting a jury for a criminal trial.[21] *United States v. Moses*, 19-CR-6074, 2021 WL 4739789, at *4–5 (W.D.N.Y. Oct. 12, 2021). Judge Wolford cited high community transmission within the counties from which prospective

---

[20]   28 U.S.C. § 1866(c) provides in relevant part:

> [A]ny person summoned for jury service may be (1) excused by the court . . . upon a showing of undue hardship or extreme inconvenience . . ., or (2) excluded by the court on the ground that such person may be unable to render impartial jury service or that his service as a juror would be likely to disrupt the proceedings, or (3) excluded upon peremptory challenge as provided by law, or (4) excluded pursuant to the procedure specified by law upon a challenge by any party for good cause shown, or (5) excluded upon determination by the court that his service as a juror would be likely to threaten the secrecy of the proceedings, or otherwise adversely affect the integrity of jury deliberations.

Only the second criterion is relevant to the matter at hand. Undue hardship is not applicable because it relates only to hardship on a particular juror, and not on the rest of the panel. *See* 28 U.S.C. § 1869 (defining undue hardship as "great distance, either in miles or travel time, from the place of holding court, grave illness in the family or any other emergency . . . or any other factor which the court determines to constitute an undue hardship or to create an extreme inconvenience to the juror . . . [or] severe economic hardship to [that juror's] employer."). Good cause does not apply as it relates to a juror's partiality and bias. *See United States v. Wilson*, 04-CR-1016, 2013 WL 1934071, at *2 (E.D.N.Y. May 9, 2013) ("A prospective juror may be excused for cause based on many forms of bias.") (citing *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997)); *see also United States v. Salamone*, 800 F.2d 1216, 1226 (3d Cir. 1986) ("The central inquiry in the determination whether a juror should be excused for cause is whether the juror holds a particular belief or opinion that will 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" (quoting *Wainwright v. Witt*, 469 U.S. 412 (1985)).

[21]   Courts in other districts have similarly excluded unvaccinated potential jurors. *See, e.g.*, *United States v. Holmes*, 18-CR-258 (N.D. Cal. 2021), Final Jury Questionnaire, Dkt. 928 at 3 (excusing nine unvaccinated potential jurors with the consent of both parties); *Benaron v. Simic*, 19-CV-1653 (D. Or. 2021), Opinion and Order, Dkt. 54 at 39 n.13 ("The Court intends to require that everyone who appears in the courtroom for trial (including parties, witnesses, counsel, and jurors) are fully vaccinated against COVID-19 at the time of trial (and will allow any unvaccinated witnesses to testify via video), which the Court understands may impact the trial date.").

jurors would be drawn, the fact that unvaccinated individuals are substantially more likely to contract COVID-19 and to transmit it, and the possibility of quarantine requirements for unvaccinated jurors exposed to COVID-19.  *Id.*  Judge Wolford concluded that, taken together, those factors supported her conclusion that including unvaccinated persons on the jury would likely disrupt the proceedings.

So too here.  Having unvaccinated individuals on the jury would pose a considerable and unnecessary risk of disruption of the proceedings.  An unvaccinated juror would be considerably more likely to contract COVID-19 and to spread it to other jurors.  Many jurors may therefore understandably feel unsafe or uncomfortable serving on a jury with unvaccinated individuals.  Such anxiety may impair a juror's ability to perform his or her duty by being a distraction from the proceedings, both during trial and during deliberations.  Further, if a juror were to be infected with COVID-19, not only would the juror jeopardize the safety of everyone around them, the juror and other jurors with whom the infected juror came into contact might have been required to quarantine, which could have disrupted the trial or otherwise caused scheduling and other logistical issues.

Additionally, requiring jurors to be vaccinated enabled the Court to guarantee that the trial could proceed in the Undersigned's Courtroom, rather than dealing with the uncertainty of needing to wait for a courtroom to become available that was large enough to accommodate jurors that required six feet of social distance.  According to updated SDNY trial protocols, unvaccinated jurors must be given six feet of social distance while vaccinated jurors require only three feet.  Given the relatively small size of the jury box in the Undersigned's Courtroom, were more than two jurors to have been unvaccinated, the trial could not have been held in the Undersigned's Courtroom; a larger courtroom would have been required.  From a logistical

perspective, absent the decision to strike for cause unvaccinated potential jurors, the need *vel non* for a larger courtroom would not have been known until the conclusion of jury selection, creating uncertainty about where the trial would be held and when, exactly, it could commence. That uncertainty would create follow-on uncertainty for the parties, who needed to install electronic equipment they planned to use during the trial and to become familiar with the particular set up they would be using.[22]

This trial, which was originally scheduled to take place in April 2020, had already been postponed several times due to the pandemic and the backlog of other jury trials in the district. *See* Orders, Dkts. 230, 238, 260, 273. Accordingly, the Court concluded that excusing unvaccinated jurors was the best way to reduce the risk of any further disruption to the proceedings.

## II. Excluding Unvaccinated Jurors Does Not Violate the JSSA

The JSSA provides that "all litigants in Federal courts entitled to trial by jury shall have the right to . . . juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Although Joffe did not expressly argue that excluding unvaccinated jurors violates that statutory requirement, given the lack of clarity regarding the actual basis for his objection, the Court will consider whether such an objection would have had merit.

Fair cross-section challenges in civil cases brought under the JSSA are analyzed using the *Duren* test, which was developed to consider whether juries in criminal cases represent a cross-section of the community. *See Duren v. Missouri*, 439 U.S. 357 (1979); *Timmel v. Phillips*, 799

---

[22] Even with only one unvaccinated juror, jury deliberations, lunch breaks, and recesses would have been more complicated because of the distancing requirements, introducing more opportunities for the proceedings to be disrupted.

8

F.2d 1083, 1086 (5th Cir. 1986) (applying *Duren* to fair cross-section challenge in a civil action); *United States v. Schulte*, 17-CR-548, 2021 WL 1146094, at *2–3 (S.D.N.Y. Mar. 24, 2021) (citing *United States v. LaChance*, 788 F.2d 856, 864 (2d Cir. 1986)) (applying the *Duren* test to cross-section challenges brought under the JSSA). Under *Duren*, the movant must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the group's representation in the source from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation results from systematic exclusion of the group in the jury-selection process." *Duren*, 439 U.S. at 364.

At least one court in this circuit has found that unvaccinated individuals are not a "distinctive group" for the purposes of *Duren*. *Moses*, 2021 WL 4739789, at *3. Because there are a multitude of reasons why an individual might be unvaccinated,[23] the group lacks "a basic similarity in attitudes or ideas or experience" that "defines and limits the group." *Id.* (quoting *United States v. Guzman*, 337 F. Supp. 140, 143–44 (S.D.N.Y. 1972), *aff'd*, 468 F.2d 1245 (2d Cir. 1972)). Moreover, "membership in the unvaccinated group changes on a daily basis." *Moses*, 2021 WL 4739789, at *3. The claim that vaccination status is a "proxy" for individuals who hold a particular point of view is speculative at best. *Id*. at *4. Simply put, unvaccinated individuals are not a distinctive group identifiable "on the basis of some immutable

---

[23] Based on anecdotal experience, press reports and litigation in this and other Courts, among the reasons people have given for not being vaccinated are: religious objections; fear of medical allergies or side effects; concern that the vaccine may affect fertility; concern that the vaccine may have unknown adverse side effects in the future; uncertainty about the location of available vaccine clinics; procrastination; fear of needles; suspicion of Big Pharma; and concern that the side effects may cause the person to miss work and not be paid.

9

characteristic." *Lockhart v. McCree*, 476 U.S. 162, 175 (1986). There is nothing to suggest that the viewpoints held by the unvaccinated will not be adequately represented by the vaccinated.[24]

Any JSSA challenge would also have failed under the third element of the *Duren* test: systematic exclusion. Systematic exclusion requires a showing that "the underrepresentation is due to the system of jury selection itself, rather than external forces." *Schulte*, 2021 WL 1146094, at *7 (S.D.N.Y. Mar. 24, 2021) (quoting *United States v. Rioux*, 97 F.3d 648, 658 (2d Cir. 1996)). The COVID-19 pandemic and the effects that it has had on in-person proceedings are external forces for the purposes of *Duren*. *See, e.g., Schulte*, 2021 WL 1146094 at *8 (finding that "the COVID-19 pandemic and its substantial curtailment of in-person proceedings throughout the [Southern] District [of New York]" was an external force on the Government's decision to indict the defendant in White Plains); *United States v. Charles*, 20-CR-41, 2021 WL 2457139, at *4 (S.D.N.Y. June 16, 2021) (holding that the Government's decision to indict the defendant in White Plains "arose as a result of the COVID-19 pandemic — *not* an inherent problem with the SDNY Jury Plan"); *United States v. Tagliaferro*, 19-CR-472, 2021 WL 1172502, at *5 (S.D.N.Y. Mar. 29, 2021) ("[U]nfortunate as these effects may be, one cannot seriously dispute the fact that the COVID-19 pandemic is an external force."). In short, the exclusion for cause of unvaccinated persons does not violate the statutory requirement that civil juries comprise a cross-section of the community.

---

[24] The Court notes that conclusion *may* be different if the issue on trial were different and somehow implicated issues as to which there could be sharp differences of opinion between the class of persons who, in the face of a pandemic and highly effective vaccines chooses not to be vaccinated, and the class of persons who have become vaccinated. There was nothing about the issues to be tried in this case, however, that seemed likely to implicate such differences in public opinion.

## CONCLUSION

For the reasons discussed above, Joffe's objection to the Court's exclusion of unvaccinated jurors was OVERRULED.

**SO ORDERED.**

Date: **December 10, 2021**  
      **New York, New York**

                                                **VALERIE CAPRONI**  
                                          **United States District Judge**