UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID A. JOFFE,<br><br>    Plaintiff,<br><br>v.<br><br>KING & SPALDING LLP,<br><br>    Defendant. | Case No. 17-cv-3392 (VEC) (SDA) |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO THE NOVEMBER 30, 2021 ORDER TO SHOW CAUSE CONCERNING PLAINTIFF'S ERISA CLAIM**

David A. Joffe, Esq. (pro se)
155 Christopher Columbus Drive
Jersey City, NJ 07302
516-695-7086
davidajoffe@gmail.com

The undersigned submits this response to the Court's November 30, 2021 Order to Show Cause (Doc. No. 335) why judgment should not be entered in King & Spalding's favor on the undersigned's ERISA claim given the jury's verdict in favor of King & Spalding on the Wieder claim and the record developed at trial.

## PRELIMINARY STATEMENT

The undersigned respectfully submits that judgment should not be entered in King & Spalding's favor on the ERISA claim because such judgment is not required by the jury's verdict as a matter of collateral estoppel and would be inconsistent with the trial record concerning the date chosen by K&S for the undersigned's formal removal from the Firm's employment rolls.

## ARGUMENT

**I.  The ERISA Claim Should be Adjudged Separately Under the Lower "Motivating Factor" Standard**

As a threshold matter, judgment in King & Spalding's favor on the ERISA claim does not follow automatically from the jury's verdict on the Wieder claim because the ERISA claim presents distinct factual issues under a less demanding causation standard.

While, generally, "principles of collateral estoppel prevent the judge from making findings of fact contrary to those of the jury," LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 432 (2d Cir. 1995) (citations omitted), the Second Circuit has recognized that "a difference in the burdens of proof in two proceedings can make the application of collateral estoppel improper ... [including] where presumptions or standards of proof vary between two civil actions," Cobb v. Pozzi, 363 F.3d 89, 114 (2d Cir. 2003) (citing 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4422 at 590-91 (2002) ("The differences in gradations of civil standards of proof are more subtle than the shift from the reasonable-doubt standard to the preponderance standard, but the same basic principle continues to apply.")). Thus, as

specifically relevant here, "a litigant's failure to meet a higher burden of proof on an issue in a prior proceeding does not bar him from raising the same issue in a subsequent proceeding in which his burden will be lighter." Purdy v. Zeldes, 337 F.3d 253, 259 (2d Cir. 2003) (citing Torrington Extend-A-Care Employee Ass'n v. NLRB, 17 F.3d 580, 594 (2d Cir. 1994)).

Here, collateral estoppel does not bar separate consideration of the ERISA claim because a finding in the undersigned's favor on that claim would not be contrary to the findings of the jury. The elements of a claim under § 510 of ERISA are that **(i)** the employee was qualified for the position, **(ii)** the employee was protected by ERISA, and **(iii)** the employer took an adverse action purposefully to interfere with the employee's pension rights. See Joffe v. King & Spalding LLP, No. 17-CV-3392 (VEC), 2018 WL 2768645, at *11 (S.D.N.Y. June 8, 2018) (citations omitted); see also 29 U.S.C. § 1140 (prohibiting actions taken "for the purpose of interfering with the attainment of any right to which [a] participant may become entitled under the [employee benefit] plan"). Here, elements **(i)** and **(ii)**—qualification and ERISA protection—were not before the jury, and in any case were not contested by Defendant.

With respect to element **(iii)**, the jury's verdict on the Wieder claim does not preclude separate consideration under ERISA because the Wieder claim involved a higher standard of causation. At trial, this Court instructed the jury that the Wieder claim required the undersigned to prove that his reporting was "the but-for cause" of K&S's adverse actions. See Trial Tr. 1751:8-12 ("Mr. Joffe must prove ... that his report was the but-for cause of the adverse action K&S took."); id. at 1752:6-8 ("Mr. Joffe must establish by a preponderance of the evidence that the adverse action you are considering would not have occurred if Mr. Joffe had not made the report"). Under § 510 of ERISA, however, the plaintiff's burden is "to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510."

2

Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1111 (2d Cir. 1988) (emphasis added) (citation omitted); see also Wickes v. Westfair Electric Co., No. 19-CV-10673 (PMH), 2021 WL 217318, at *9 (S.D.N.Y. Jan. 20, 2021) (quoting Dister, 859 F.2d at 1111) ("An 'essential' element of a § 510 claim is 'to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510.'"); Foley v. Bethlehem Steel Corp., No. 87-CV-1489A, 1998 WL 34313090, at *12 (W.D.N.Y. Jan. 27, 1998) (applying "motivating factor" standard to § 510 claim). And it is well established that "motivating factor is a lower hurdle than but-for causation." Greene v. Cook Cnty. Sheriff's Office, 79 F. Supp. 3d 790, 810 (N.D. Ill. 2015) (citing Massey v. Johnson, 457 F.3d 711, 717 (7th Cir. 2006)); see also Genco v. Starpoint Cent. Sch. Dist. Bd. of Educ., No. 17-CV-01168-LJV-MJR, 2018 WL 3827740, at *7 n.7 (W.D.N.Y. June 4, 2018) (contrasting "the lower motivating factor standard and the higher showing of but-for causation"); Philip v. Gtech Corp., No. 14 CIV. 9261 (PAE), 2016 WL 3959729, at *11 (S.D.N.Y. July 20, 2016) (same). Accordingly, the jury's finding that the undersigned failed to prove that his reporting efforts were the but-for cause of K&S's adverse actions does not preclude this Court from finding that the date chosen by K&S to remove the undersigned from its employment rolls was "at least in part motivated" by an intent to interfere with ERISA benefits, since on this latter question the undersigned bears a "lighter" burden. See Purdy, 337 F.3d at 259.

Under similar circumstances, the court in Shortt v. Dick Clark's AB Theatre, LLC, No. 09-3203-CV-S-RED, 2010 WL 11508964, at *2 (W.D. Mo. June 24, 2010) found that collateral estoppel does not bar a subsequent employment claim that factually overlaps with a prior claim but has a lower standard of causation. In Shortt, after an administrative hearing offer had determined that the plaintiff failed to prove retaliation under the "but-for cause" standard, the

3

plaintiff brought a state-law claim for wrongful discharge for which the standard was "motivating factor." Applying principles of issue preclusion, the court held that:

> [T]he issues are not identical as to [plaintiff's state-law] wrongful discharge claim. Most notably, the causation standard before this Court is "contributing factor," whereas the causation standard before the [hearing officer] was "causal connection." Therefore, collateral estoppel is not appropriate on [plaintiff's state-law] wrongful discharge claim

Id. at *2.

This Court should similarly find that collateral estoppel is not appropriate here.

The finding that K&S acted at least in part with the intent of interfering with pension benefits is also not inconsistent with the jury's verdict because the ERISA claim addresses the separate and distinct question of the Firm's purpose in choosing the date when the undersigned was formally removed from its employee roster. As the evidence at trial confirmed, K&S chose one date (December 7, 2016) for the undersigned's discharge—in the sense of last day in the office and surrender of access card—but separately chose a different date (initially December 14, 2016) for the formal end of the undersigned's employment. See Joint Ex. J-23 (December 7, 2016 Talking Points stating, "Your employment with the Firm will end on December 14, 2016 ... Today, however, will be your last day in the office."). Moreover, King & Spalding's testimony at trial established that the Firm treated this latter, December 14, 2016 official-end-of-employment date differently—unlike the December 7, 2016 date of discharge, the end-of-employment date initially set for December 14, 2016 was subject to extension for up to six months if the undersigned's signed the Firm's offered separation agreement. See Trial Tr. 742:4-6 (testimony of K&S HR Chief Chris Jackson that, "[u]nder the separation agreement you would continue to be an employee through the six-month period of time that we offered"). And it is only this latter date that is relevant to the § 510 claim, since it was the undersigned's official-

4

end-of-employment date, not whether the undersigned was actually in the office, that determined whether his ERISA-protected 401(k) contribution would vest or would instead be clawed back. Accordingly, there is nothing logically incompatible between the jury's verdict and a determination that, even if the but-for cause of K&S's termination decision was a non-prohibited reason, the Firm's separate decision about when the undersigned would be formally removed from its employment rolls was motivated at least in part by the intent to interfere with pension benefits.

## II. Defendant Improperly Used Its 401(k) Contribution as a Bargaining Chip in Severance

The Court should not enter judgment for King & Spalding on the ERISA claim because the record at trial—including King & Spalding's testimony explaining how the Firm intended to treat the undersigned's formal end-of-employment date—establishes the elements of a claim under ERISA § 510.

With respect to the first two elements of § 510, there was no dispute at trial that the undersigned was an attorney in good standing during the relevant time period, and that K&S's $20,000 contribution to the undersigned's 401(k) account that was due to vest on January 1, 2017, see Joint Ex. J-12, was protected by ERISA.

With respect to the third element—"motivating factor"—the evidence at trial showed that K&S's treatment of the undersigned's official end-of-employment date was at least in part with a view to the vesting vel non of the Firm's pension contribution in the undersigned's 401(k) account:

First, the separate date K&S initially chose for the undersigned's formal removal from its employment rolls—December 14, 2016—was just two weeks before the January 1, 2017 vesting date of its pension contribution. Courts have recognized that such close temporal proximity is by

5

itself sufficient to establish a causal nexus.  See Quinby v. WestLB AG, No. 04-CV-7406 (WHP), 2007 WL 1153994, at *15 (S.D.N.Y. April 19, 2007) (inference of discrimination established where employee was terminated two weeks before pension was to vest); see also Bonura v. Chiarlitti, No. 08-CV-10190 (CS), 2010 WL 11712789, at *11 (S.D.N.Y. Mar. 31, 2010) ("There is no bright line regarding temporal proximity, but two weeks is certainly sufficient temporal proximity to infer causation.").

*Second*, as set forth above, King & Spalding's HR Chief Chris Jackson testified at trial that the end-of-formal-employment date that was initially set by the Firm for December 14, 2016 would have been extended for six months if the undersigned signed the Firm's offered severance agreement, with the undersigned's bio being reactivated on K&S's website based on the undersigned's still-currently-employed status.  See Trial Tr. 741:21-742:17 ("Q.  Does the firm place people's bios on its website when those people aren't currently employed?  A.  If they're not employed, they don't—their bios are not on the website. ...  Q.  So how could my bio have continued to appear on the firm's website after I was no longer currently employed?  A.  Under the separation agreement you would continue to be an employee through the six-month period of time that we offered you. ... We would have reactivated your bio based on the separation agreement.").[1]  Thus, and as K&S must have been aware, the vesting of the undersigned's ERISA-protected pension benefits was directly conditioned on the undersigned accepting K&S's offer: if the undersigned accepted the severance package, then he would formally have remained a current employee of the Firm as of January 1, 2017, and the $20,000 pension contribution

---

[1] While these terms concerning continued employment and reactivation of the undersigned's bio were not in the Firm's written severance offer given to the undersigned, Mr. Jackson explained that, "[W]e could have revised that very quickly.  It may have been a clerical error..." Trial Tr. 739:9-10.

6

would have vested in the undersigned's 401(k) account; but, if the undersigned did not accept this offer, then the undersigned's employment would formally terminate on the initially-set date of December 14, 2016, and K&S's $20,000 contribution would have been (and was) clawed back.  These circumstances strongly suggest that, in initially selecting a formal end-of-employment date, at least part of King & Spalding's motivation was to set a date that fell just short of the pension-vesting date—but that would be extended past the pension-vesting date upon the undersigned's signing its settlement offer—in order to induce the undersigned's acceptance of that offer.  The Firm's use of its pension contribution as a lever in severance negotiations constitutes improper interference with ERISA-protected benefits.

The notion that the Firm used its 401(k) contribution as a bargaining chip in order to induce acceptance of its severance offer is further buttressed by Defendant's similar treatment of other aspects of the undersigned's compensation.  Thus, the Firm's severance offer stated that payment for the undersigned's accrued but unused vacation time was conditioned on the undersigned's signature.  See Joint Ex. J-24 at 1-2.[2]  Similarly, Mr. Tetrick testified that the Firm also considered the undersigned's prior bonus as part of the severance package K&S offered in exchange for a waiver of claims.  See Trial Tr. 936:8-10 ("I'm saying that I'm evaluating your 2015 bonus, and my evaluation at that point was whether or not we should provide you something for 2015 in your severance package.").  The most straightforward inference from these circumstances is that, just like the Firm intended to withhold the undersigned's vacation

---

[2] The Firm has previously argued that it had no financial incentive to save on a $20,000 pension contribution at the same time that it offered the undersigned $132,500 in severance compensation. But the same would be true of the undersigned's accrued but unused vacation time, which worked out to less than $20,000. (More precisely, at the time the undersigned had seventeen unused vacation days, which, at a salary of $265,000, totaled $17,326.)  If $17,326 in vacation pay was a sufficiently significant sum for K&S to withhold unless the undersigned's accepted its severance offer, then a $20,000 pension contribution would have been sufficiently significant a fortiori.

pay and prior bonus unless the undersigned accepted the Firm's severance offer, the Firm intended to claw back its $20,000 401(k) contribution as well, and it chose an initial end-of-employment date—i.e., one that fell just short of the January 1, 2017 vesting date—accordingly.

*Finally*, Defendant offered no explanation at trial for why it chose December 14, 2016 as the date when the undersigned would be formally removed from its employment rolls. While Mr. Tetrick testified that December 7, 2016 was the date chosen for the undersigned's termination meeting "[b]ecause that was the earliest date after November 15 in which I would otherwise be in New York, and I wanted to discuss this with you in person," Trial Tr. 971:20-24, this does not explain why the Firm selected an official end-of-employment date that post-dated December 7, 2016 by only one week—rather than, e.g., by three weeks, when the pension contribution would have already vested—especially given K&S's expressed willingness to have the undersigned "continue to be an employee through the six-month period of time [after December 7, 2016]" upon acceptance of the Firm's severance offer.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully submits that judgment should not be entered in King & Spalding's favor on the undersigned's ERISA claim given the record developed at trial.

Dated: December 17, 2021           By:     */s/ David A. Joffe*
                                           David A. Joffe, Esq. (pro se)
                                           155 Christopher Columbus Drive
                                           Jersey City, NJ 07302
                                           516-695-7086
                                           davidajoffe@gmail.com

8