USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/26/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
DAVID A. JOFFE,                                              :
                                                             :
                              Plaintiff,                     :      17-CV-3392 (VEC)
              -against-                                      :
                                                             :      OPINION AND ORDER
KING & SPALDING LLP,                                         :
                                                             :
                              Defendant.                     :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

      Plaintiff David A. Joffe was formerly a litigation associate at the law firm King & Spalding LLP ("K&S"). Joffe contends that K&S unlawfully retaliated against him for reporting suspected unethical conduct by partners of the firm. Joffe brought two claims against K&S: (1) a common-law claim for breach of contract under *Wieder v. Skala*, 80 N.Y.2d 628 (1992), premised on his alleged retaliatory termination from the law firm (the "*Wieder* claim"); and (2) a claim for wrongful discharge under Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, related to K&S's alleged unlawful interference with the vesting of the firm's contribution to his 401(k) account (the "ERISA claim").

      On November 29, 2021, following an eight-day jury trial, a jury returned a verdict for K&S on the *Wieder* claim, finding that Joffe had not proven that claim by a preponderance of the evidence. *See* Verdict, Dkt. 334. Although the *Wieder* claim was heard by a jury, the parties stipulated to a nonjury trial on the ERISA claim. *See* Joint Letter, Dkt. 258. Without objection from the parties, the Court determined that it would decide the ERISA claim based on the trial record after the jury returned a verdict on the *Wieder* claim. *See* Endorsement, Dkt. 259. Following the verdict, the Court ordered Joffe to show cause why judgment should not be entered in K&S's favor on the ERISA claim given the record developed at trial. *See* Order to

Show Cause, Dkt. 335.[1]  For the reasons discussed below, the Court finds that Joffe has not met his burden of proving by a preponderance of the evidence that K&S unlawfully interfered with his rights under ERISA.  Therefore, the Court finds in favor of K&S on the ERISA claim, and that claim is dismissed.

Based on its observations of the witnesses, examination of the evidence, and the parties' briefing, the Court makes the following findings of fact and conclusions of law.  *See* Fed. R. Civ. P. 52(a).

## FINDINGS OF FACT[2]

Joffe was employed as a litigation associate at K&S from January 2012 until his termination in December 2016.  Trial Tr., Dkt. 336 at 64:2-5, 65:7-9.  Approximately eight months before he was terminated, Joffe received a memorandum from K&S with information about his 2016 salary and the firm's contribution to his 401(k) account.  The memorandum stated that he would receive "profit-sharing contributions to [his] retirement account totaling approximately $20,000," which would "vest on January 1, 2017, subject to the normal vesting rules."  Memo., Ex. J-12.  The memorandum further informed Joffe that if he had questions regarding his salary, he should contact David Tetrick.  *Id.*  At the time, Tetrick was the K&S partner who headed the Business Litigation Associates Committee, a committee in charge of evaluating associates in the business litigation practice group.  Trial Tr., Dkt. 340 at 745:1-21.  On April 15, 2016, Joffe asked Tetrick whether the "normal vesting rules" referenced in the memorandum "impose[d] any conditions on receipt of the contribution, beyond [his] continued

---

[1]  The parties fully briefed the issue.  *See* Opening Br., Dkt. 355; Resp., Dkt. 369; Reply, Dkt. 370.

[2]  These findings of fact are limited to those that are germane to the Court's consideration of Joffe's ERISA claim.  The Court assumes familiarity with the basic facts of this long running dispute.  For a detailed factual background, see *Joffe v. King & Spalding LLP*, No. 17-CV-3392, 2018 WL 2768645, at *1–7 (S.D.N.Y. June 8, 2018).

2

employment through January 1, [2017]." Apr. 15, 2016 E-mail, Ex. J-14. On May 4, 2016, Tetrick emailed Joffe a document titled "Profit Sharing – 401(k) Plan Summary Plan Description." May 4, 2016 Email, Ex. J-14; Summary Plan Desc., Ex. P-55. Pursuant to that document, Joffe's profit-sharing contribution would vest only if he remained employed at K&S through January 1, 2017. *See* Summary Plan Desc., Ex. P-55 at 6–7.

On December 7, 2016, Joffe met in person with David Tetrick and Richard Marooney, another K&S partner. Trial Tr., Dkt. 338 at 354:5-24; Trial Tr., Dkt. 342 at 1018:20-1019:4. At the meeting, Joffe was told that he was being terminated from K&S. Trial Tr., Dkt. 338 at 358:12-19; Trial Tr., Dkt. 342 at 967:16-19. He was further told that, although December 7, 2016, would be his last day in the office, his employment would officially end on December 14, 2016. Trial Tr., Dkt. 338 at 358:14-19; Tetrick Talking Points, Ex. J-23 at 3. Tetrick testified that he had made the decision to terminate Joffe in September 2016, *see* Trial Tr., Dkt. 342 at 913:18-20, but that he had delayed actually terminating Joffe at the request of a partner for whom Joffe was completing some work, *see* Tetrick Decl., Ex. P-129 ¶¶ 6–9; Trial Tr. at 966:11-967:19. Tetrick further testified that the termination meeting was ultimately scheduled for December 7, 2016 because he was scheduled to be in New York at that time and preferred to have the conversation in person. Trial Tr., Dkt. 342 at 971:20-24.

Tetrick testified that he closely followed prepared talking points which, among other topics, laid out the reasons for Joffe's termination. *Id.* at 1005:22-1006:17; Talking Points, Ex. J-23. Those reasons included that Joffe had acted inconsistently with the firm's expectations by failing to participate meaningfully in his own career development, including by failing to submit a business practice plan for three years in a row, and that the firm did not foresee any realistic possibility that he would be staffed on new matters. Talking Points, Ex. J-23 at 1–2.

3

Joffe testified that at the termination meeting, Tetrick described the firm's proposal for his separation, including that he would receive six months' pay over three months and outplacement services, that his name would remain on the firm's website, and that he would retain access to his work e-mail account. Trial Tr., Dkt. 338 at 360:16-361:2. Joffe further testified that Tetrick explained that the offer required Joffe to keep its terms confidential and to waive any legal claims that he may have against the firm. *Id.* at 361:21-362:5. Joffe additionally recalled that he asked Tetrick about his 401(k) account and that Tetrick responded that because Joffe's last day would be December 14, 2016, he would not be employed through January 1, 2017, and, therefore, the 401(k) contribution would not vest. *Id.* at 364:22-366:13.

At the conclusion of the termination meeting, Jody Schoolcraft, a representative from the Human Resources department, gave Joffe a written separation agreement. *Id.* at 368:2-6; Separation Agreement, Ex. J-24. The separation agreement stated that the firm would pay Joffe on December 29, 2016 for any accrued but unused vacation time accumulated as of the separation date. *See* Separation Agreement, Ex. J-24 at 2–3. The separation agreement did not include some of the terms discussed at the termination meeting, including that Joffe's bio would remain on the firm's website or that he would retain access to his work e-mail account. *See generally* Separation Agreement, Ex. J-24. At trial, Chris Jackson, the head of the Human Resources department, testified that "[u]nder the separation agreement [Joffe] would continue to be an employee through the six-month period of time that [K&S] offered him," and that the firm "would have reactivated [Joffe's] bio [on the website] based on the separation agreement." Trial Tr., Dkt. 340 at 741:21-742:17. Recognizing that those terms were not in the separation agreement itself, Jackson explained that those terms were part of the offer and that the written

4

agreement could have been revised "very quickly" to incorporate those terms expressly. *Id*. at 739:8-20, 740:3-20.

The parties do not dispute that on December 29, 2016, K&S clawed back the $20,000 contribution to Joffe's 401(k) account. *See* Compl., Dkt. 1 ¶ 68 (setting forth this allegation); Am. Ans., Dkt. 18 ¶ 68 (admitting the allegation); Pl. Resp. 56.1 Stmt., Dkt. 54 ¶ 403 (setting forth this statement); Def. Reply 56.1 Stmt., Dkt. 64 ¶ 403 (admitting the statement).

## CONCLUSIONS OF LAW

### I.     Applicable Law

Section 510 of ERISA prohibits the discharge of employees "for the purpose of interfering with the attainment of any right to which such participant may become entitled to under [an employee benefit plan]." 29 U.S.C. § 1140.

The familiar *McDonnell Douglas* burden-shifting framework applies to Section 510 claims.³ *See Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1112 (2d Cir. 2008). To prevail, Joffe must establish a *prima facie* case by showing that he was qualified for his position, that he was protected by ERISA, and that he was terminated under circumstances giving rise to an inference of intentional interference with his ERISA rights. *Quinby v. WestLB AG*, No. 04-CV-7406, 2007 WL 1153994, at *15 (S.D.N.Y. April 19, 2007) (citing *Dister*, 859 F.2d at 1114–15). If Joffe can establish a *prima facie* case, the burden shifts to K&S to articulate a legitimate reason for his termination unrelated to the interference with his ERISA rights. *Dister*, 859 F.2d at 1111. If K&S does so, it is then Joffe's burden to show that the legitimate reason is pretextual. *Id*.

---

³        The parties agree that the *McDonnell Douglas* burden-shifting framework applies to Section 510 ERISA cases. *See* Pl. Prop. Findings, Dkt. 268 ¶ 25; Def. Prof. Findings, Dkt. 225 ¶ 12. Moreover, although courts avoid incorporating the *McDonnell Douglas* framework in jury charges, *see Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 154 (2d Cir. 2010) (collecting cases), the "framework fits comfortably in a bench trial setting," *see Bucalo v. Shelter Island Union Free Sch. Dist.*, 778 F. Supp. 2d 271, 277 (E.D.N.Y. 2011), *aff'd*, 691 F.3d 119 (2d Cir. 2012).

5

In addition, Joffe must show that K&S terminated him "for the purpose" of interfering with his ERISA rights. *See* 29 U.S.C. § 1140. The parties disagree about the proper causation standard: Joffe contends that he need only prove that interference with his ERISA rights was a "motivating factor" for his termination, *see* Pl. Prop. Findings, Dkt. 268 ¶¶ 24, 24 n.1; Opening Br., Dkt. 355 at 3; Reply, Dkt. 370 at 4–6, while K&S argues that the more stringent "but for" causation standard applies, Def. Prop. Findings, Dkt. 225 ¶ 11; Resp., Dkt. 369 at 3–4. Although both sides make compelling arguments, the Court declines to wade into this thorny legal issue. For the reasons discussed below, because Joffe fails to meet the less stringent "motivating factor" causation standard, whether that standard or the but for standard applies is irrelevant to the Court's ultimate conclusion that K&S did not violate Joffe's ERISA rights.

## II. Joffe Has Established a *Prima Facie* Case

The parties do not dispute that Joffe has established the first two elements of his *prima facie* case: he was qualified for his position, and he was protected by ERISA. The parties do contest whether Joffe has proven the third element: whether he was terminated under circumstances giving rise to an inference of intentional interference with his ERISA rights.

Close temporal proximity between an employee's discharge and the pension vesting date is sufficient to support an inference of intentional interference. *See Quinby*, 2007 WL 1153994, at *15 (finding that an inference of interference with ERISA rights was established where employee was terminated two weeks before pension was to vest and collecting cases); *see also Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) ("A plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'" (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d

Cir. 1996))).  Here, Joffe was terminated on December 14, 2016, two weeks before the contribution to his 401(k) account was due to vest on January 1, 2017.  Such temporal proximity is sufficient to support an inference of intentional interference.

K&S argues that the proper timeframe is not two weeks, but rather the three months between Tetrick's September 2016 decision to terminate Joffe and the January 1, 2017 vesting date.  Resp. at 5.  But K&S does not cite any authority to support its contention that the pertinent date is the date a decision to take an adverse action is made and not the date of the adverse action itself.  In considering temporal proximity, courts consistently look to the date of the adverse employment action.  *See, e.g.*, *Gorman-Bakos*, 252 F.3d at 554; *Bang v. IBM Corp.*, 600 F. Supp. 2d 430, 436 (E.D.N.Y. 2009); *Quinby*, 2007 WL 1153994, at *15.  That makes sense — the date an employer decides to terminate an employee is often much harder to pin down than the actual date of termination.[4]  Accordingly, the Court considers the pertinent time frame to be the two-week period between the termination itself and the vesting date.  Given the close temporal proximity between the two dates, Joffe has proven a *prima facie* case of unlawful interference with his ERISA rights.

### III. K&S Has Articulated Legitimate Reasons for Joffe's Termination

Once an employee has proven a *prima facie* case, the employer must "produc[e] evidence of a legitimate, nondiscriminatory reason for its actions toward the plaintiff, though at this stage the employer 'need not persuade the court that it was actually motivated by the proffered reasons.'"  *Dister*, 859 F.2d at 1112 (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981)).  K&S has produced those reasons: namely, Joffe's failure to participate in his

---

[4]  To some extent, that appears to be the case here.  Although Tetrick testified that he had made the decision to terminate Joffe's employment in late September 2016, *see* Trial. Tr., Dkt. 342 at 913:18-20, he later testified that he thinks he made the decision sometime between September 21, 2016 and October 5, 2016, *see id.* at 924:4-8. What remains uncontroverted is that Joffe was terminated from K&S on December 14, 2016.

own career development by repeatedly failing to submit business practice plans and that the firm did not foresee any realistic possibility that he would be staffed on new matters. Trial Tr., Dkt. 342 at 1005:22-1006:17, 1007:25-1008:2; Talking Points, Ex. J-23 at 1–2.

Joffe argues that K&S has failed to meet its burden to produce a legitimate, non-prohibited reason because the firm failed to explain why it chose December 14, 2016 as the effective date of his termination. Reply at 7–8; *see also* Opening Br. at 8.[5] Joffe is correct that Tetrick's explanation for the timing of Joffe's termination — that he wanted to have the conversation in person and he planned to be in New York on December 7, 2016, *see* Trial Tr., Dkt. 342 at 971:20-24 — concerned the date of the termination meeting and not the date on which the termination would become effective. But that fact is of no moment. K&S's burden is to put forth a legitimate reason for the adverse employment action, in this case the termination, not for the date that decision became effective. *See Dister*, 859 F.2d at 1115 ("To dispel the inference of discrimination arising from the establishment of a prima facie case, [the employer] is required to articulate — but not prove — a legitimate, nondiscriminatory reason *for the discharge*." (emphasis added)). The focus on the adverse action itself flows from the text of the statute, which prohibits the "discharge" of the employee for the purpose of interfering with his or her ERISA rights. *See* 29 U.S.C. § 1140. Through credible testimony at trial, K&S has clearly articulated its reasons for terminating Joffe, satisfying its burden at this stage of the *McDonnell Douglas* framework.

---

[5]   Although not impermissible, this argument is new. In his proposed findings of fact and conclusions of law submitted before trial, Joffe conceded that K&S has met its burden at this stage of the *McDonnell Douglas* framework. *See* Pl. Prop. Findings, Dkt. 268 ¶ 33 ("These explanations satisfy Defendant's burden of articulating a legitimate, nondiscriminatory basis for its adverse employment action.").

### IV. Joffe Has Not Established that K&S's Reasons Are Pretextual or that the Purported Interference with his ERISA Rights Was a "Motivating Factor" for his Termination

At the final stage of the *McDonnell Douglas* framework, Joffe must prove that K&S's proffered reasons for his termination were pretextual. As explained by the Second Circuit:

> The plaintiff's ultimate burden of persuading the trier of fact that he or she was the victim of intentional discrimination then merges with the plaintiff's burden of proving that the employer's reason is pretextual. This may be accomplished either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Dister*, 859 F.2d at 1112.

In Joffe's proposed findings of fact and conclusions of law filed in advance of trial, he argued that K&S's proffered reasons for his termination are unworthy of credence. *See* Pl. Prop. Findings ¶¶ 34–37 (asserting that K&S's reasons concerning his failure to submit practice plans and the low likelihood that he would be fully utilized by partners moving forward were pretextual). Joffe abandoned those arguments in his legal briefs in response to the Court's order to show cause why judgment should not be entered in K&S's favor on the ERISA claim given the record developed at trial. The Court understands why Joffe abandoned those arguments: several K&S attorneys, including David Tetrick, Lisa Keyes, Phyllis Sumner, and Michael Fine, credibly testified that the reasons given by Tetrick for Joffe's termination were, in fact, the reasons he was terminated. Accordingly, given the record developed at trial and the abandonment of those arguments in his post-trial briefing, Joffe has not shown that the proffered reasons were pretextual by proving that they are unworthy of credence.

Joffe instead appears to rely on his other option: direct evidence of the alleged unlawful interference. But Joffe's evidence is anything but direct. He argues that K&S's choice of December 14, 2016 as the effective date of his termination, and the possibility that the date

would have been extended into 2017 were he to accept the separation agreement, which in turn would have meant the pension contribution would have vested, demonstrate that K&S unlawfully interfered with his ERISA rights by using the pension contribution "as a lever in severance negotiations" "to induce" Joffe's acceptance of the separation agreement.[6] Opening Br. at 6–7; *see also* Reply at 1–2.[7] Although that convoluted set of inferences is technically correct — had Joffe accepted the separation agreement, he likely would have remained on the payroll into 2017, which would have meant the pension contribution would have vested — Joffe fails to offer even a scintilla of evidence that anyone at K&S ever considered the pension contribution as part of the severance negotiations or in crafting the terms of the separation agreement more generally.[8] Put another way, the lack of *any* direct evidence that K&S developed this very specific plan so that it could interfere with Joffe's ERISA rights means that Joffe has failed to meet his burden of proof at the third stage of the *McDonnell Douglas* framework.

---

[6]     Joffe cites no authority — and the Court is aware of none — to support his contention that the use of ERISA benefits to induce an employee to sign a separation agreement constitutes unlawful interference with ERISA rights under the statute. *Cf.* Reply at 2 n.1 (noting that K&S "does not dispute, as a legal matter, that an employer using the vesting *vel non* of its 401k contribution as an inducement for the employee to accept its severance offer constitutes improper interference within the meaning of ERISA § 510" (cleaned up)). But the burden of proof at this stage of the inquiry lies with Joffe and not with K&S. Although Joffe's lack of citation to authority represents yet another fundamental flaw in his argument, even if such authority were to exist, Joffe cannot prevail because he lacks any evidence to prove his perplexing theory.

[7]     K&S points out that "[i]f, as Joffe claims, K&S timed his termination to avoid benefits costs and save $20,000, K&S obviously would not have voluntarily offered him [$132,500 in severance,] more than six times [the $20,000] amount at the exact same time." Resp. at 6–7. But Joffe is not contending that K&S was motivated by a desire to save money; rather, his argument is that K&S used the $20,000 in pension contribution as an unlawful inducement to persuade him to sign the separation agreement. *See* Reply at 9–10 (comparing the $20,000 pension contribution to the $17,327 in vacation pay that K&S would have paid Joffe were he to accept the separation agreement). Although K&S's argument is logically appealing — financially the true inducement to sign the severance agreement was the severance payment, with the 401(k) and vacation pay being, at most, sweeteners. Regardless, Joffe's larger problem is his failure to present *any* evidence that K&S unlawfully terminated him to interfere with his ERISA rights rather than because he had no future at the firm.

[8]     In fact, it was Joffe who asked Tetrick about the implications of his discharge on his 401(k) account at the termination meeting. Trial Tr., Dkt. 338 at 364:22-366:13.

The lack of evidence that Joffe's pension contribution played any role in his discharge not only means that Joffe has failed to demonstrate pretext, it also means that Joffe has failed to meet the "motivating factor" causation standard.[9]  As Joffe himself explains, "an essential element of a § 510 claim is to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510."  Opening Br. at 3 (quoting *Wickes v. Westfair Electric Co.*, No. 19-CV-10673, 2021 WL 217318, at *9 (S.D.N.Y. Jan. 20, 2021) (cleaned up)); *see also* Reply at 9–10 ("[T]he ERISA § 510 inquiry looks to the employer's subjective intent . . . .").  But without *any* evidence to support the notion that K&S chose the December 14, 2016 date with the specific intent to interfere unlawfully with his ERISA rights, Joffe cannot meet even the lower causation standard that he urges applies to his claim.

In short, Joffe's ERISA claim fails on both pretext and causation.

## CONCLUSION

For the foregoing reasons, the Court finds in favor of K&S on Joffe's ERISA claim and that claim is DISMISSED.

**SO ORDERED.**

**Date:  May 26, 2022**
**      New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**

---

[9]  As discussed *supra*, the Court does not take a position on whether the "motivating factor" or more stringent "but for" causation standard applies in Section 510 ERISA cases.